THE HONORABLE_____

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SEA MAR COMMUNITY HEALTH CENTERS,

        Plaintiff,

   v.

ACCREDITATION COUNCIL FOR GRADUATE MEDICAL EDUCATION,

        Defendant.

Case No. 2:24-cv-00896

**PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

NOTE ON MOTION CALENDAR (Temporary Restraining Order): JUNE 21, 2024

ORAL ARGUMENT REQUESTED

PL.'S MOT. FOR TRO & PRELIM. INJ. – i
(No. 2:24-cv-00896)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

## **TABLE OF CONTENTS**

2   INTRODUCTION ............................................................................................................ 1

3   BACKGROUND ............................................................................................................. 3

4       I.    Sea Mar provides medical and social services to underserved
5           communities. ....................................................................................... 3

6       II.   The Program's eligibility for state and federal funds is conditioned on
        ACGME accreditation. ......................................................................... 5

7       III.  ACGME has withdrawn the Program's accreditation on spurious grounds
        and without a meaningful opportunity to be heard. ............................. 6

8       IV.  The accreditation withdrawal has caused, and will continue to cause,
9           irreparable injury to Sea Mar and the Program. ................................ 10

10  LEGAL STANDARD ................................................................................................... 11

11  ARGUMENT ................................................................................................................ 12

12      I.    Sea Mar is like to succeed on the merits of its common-law and statutory
        claims. ................................................................................................ 12

13          A.     ACGME has violated Sea Mar's due-process rights. ............... 12

14          B.     ACGME has engaged in unfair practices in violation of the CPA. .......... 18

15      II.   Sea Mar is at imminent risk of irreparable harm. ................................. 20

16      III.  ACGME will not be harmed if immediate injunctive relief is granted ................ 21

17      IV.  The public interest favors emergency relief that will save the Program ............... 22
    V.   Sea Mar requests waiver of bond. ......................................................... 23

18  CONCLUSION .............................................................................................................. 23

19

20

21

22

23

24

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

<u>**INTRODUCTION**</u>

2

3

4

5

6

7

8

9

For more than forty years, Plaintiff Sea Mar Community Health Centers ("Sea Mar"), a federally qualified health center, has provided medical, dental, and social services to some of Washington's most marginalized communities. To further this mission, and to help remedy the persistent shortage of practitioners in rural and underserved areas, Sea Mar created a Family Medicine Residency Program ("Program") to train the next generation of community-focused family medicine doctors. Over the past decade, Sea Mar has built its Program to the point where it trains up to twelve physician-residents in each of three classes. All graduates have passed their family medicine specialty boards.[1]

10

11

12

13

14

15

16

17

18

19

20

21

22

This critically important work is threatened by Defendant Accreditation Council for Graduate Medical Education ("ACGME"), which exercises monopoly control over graduate medical accreditation and, because of authority delegated to it by state and federal statutes, serves as a gatekeeper for public funding needed to keep the Program viable. In April 2024, ACGME informed Sea Mar that the Program's accreditation would be withdrawn effective June 30, 2024—notwithstanding that it had consistently received continued accreditation since 2015. Making matters worse, Sea Mar will have no opportunity to contest the decision until weeks *after* accreditation is withdrawn. Loss of accreditation, even only temporarily, effectively destroys the Program. ACGME will thus irreparably injure Sea Mar and the patients it serves while denying Sea Mar basic due process rights that quasi-public accrediting bodies like ACGME owe to entities they oversee: "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

23

24

Federal courts recognize that "accreditation agencies are [not] wholly free of judicial oversight" because "[t]hey, like all other bureaucratic entities, can run off the rails." *Pro. Massage*

25

26

---

[1] Medical residency is a part of post-medical school graduate medical education in which physicians are trained in a specialty that qualifies them for licensure or board certification in that specialty. *See e.g.*, WAC 246-919-330(2)(a).

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   *Training Ctr., Inc. v. Accreditation All. of Career Schs. & Colls.*, 781 F.3d 161, 169 (4th Cir.

2   2015). Judicial scrutiny is especially warranted here because "accreditors wield enormous power

3   over institutions—life and death power, some might say." *Id.* at 170. Accordingly, to "operate as

4   a 'check on organizations that exercise significant authority in areas of public concern such as

5   accreditation and professional licensing,'" there is a common law duty on organizations like

6   ACGME "to employ fair procedures when making decisions affecting their members.'" *Id.* at 169–

7   70 (first quoting *Thomas M. Cooley L. Sch. v. ABA*, 459 F.3d 705, 712 (6th Cir. 2006); and then

8   quoting *McKeesport Hosp. v. ACGME*, 24 F.3d 519, 534–35 (3d Cir. 1994) (Becker, J.,

9   concurring)).

10       Because ACGME has violated that common-law duty and denied Sea Mar basic due-

11   process rights, judicial intervention is warranted. If the Program's accreditation is withdrawn on

12   June 30, then it will, for all practical purposes, be terminated—imposing significant, irreparable,

13   and avoidable harm on Sea Mar, its staff, its resident physicians and, most importantly, the patients

14   it serves. Given this risk, the public interest in remedying the shortage of family medicine

15   practitioners, and Sea Mar's likelihood of success on the merits of its underlying claims, Sea Mar

16   respectfully requests that the Court enter a temporary restraining order and preliminary injunction

17   to prevent ACGME from withdrawing the Program's accreditation on June 30 until such time as

18   its due process rights are accorded.[2],[3]

19

20

---

21     [2] Specifically, Sea Mar seeks a temporary restraining order and preliminary injunction
prohibiting ACGME from withdrawing the Program's accreditation until the conclusion of the

22   2024–2025 academic year, so that, should Sea Mar not succeed in its appeal, accreditation is not
withdrawn in the middle of the academic year to the detriment of the Program's residents and

23   patients. Alternatively, Sea Mar seeks to enjoin the accreditation withdrawal until the appeal
process completes and Sea Mar has been afforded its due-process rights. Sea Mar also seeks a

24   preliminary injunction ordering ACGME to provide Sea Mar with all documents relevant to the

25   inspection and review committee deliberation that led to accreditation withdrawal.

    [3] The undersigned certifies that on June 21, 2024, I spoke telephonically with counsel for

26   ACGME, Doug Carlson, and notified him of this impending filing.

PL.'S MOT. FOR TRO & PRELIM. INJ. – 2
(No. 2:24-cv-00896)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

167620086.8

1

# BACKGROUND

2

**I.    Sea Mar provides medical and social services to underserved communities.**

3     Sea Mar "is a community-based organization committed to providing quality,

4   comprehensive health, human, housing, educational and cultural services to diverse communities,

5   specializing in service to Latinos in Washington state. Sea Mar proudly serves all persons without

6   regard to race, ethnicity, immigration status, gender, or sexual orientation, regardless of ability to

7   pay for services." Ex. 1.[4] In 1978, with $300,000 in government funding, Sea Mar purchased its

8   first clinic, in the South Park neighborhood of Seattle, from a retiring physician. The clinic offered

9   primary medical care and nutrition services focused on the needs of the Spanish-speaking

10   community in western Washington. Ex. 2. Sea Mar expanded over the next four decades and now

11   provides services in thirteen counties throughout Washington through thirty-three medical clinics,

12   twenty-eight outpatient behavioral health clinics, and four inpatient substance-abuse treatment

13   centers. Decl. of Tyler Lawrence ("Lawrence Decl.") ¶¶ 1–5. In 2023, Sea Mar provided 1,840,337

14   services to 290,556 people across Washington, approximately 96% of whom had incomes below

15   the federal poverty level, 85% had public insurance (Medicare or Medicaid) or were uninsured,

16   and 41% were Latino. *Id.* ¶ 5.

17     Sea Mar is a Federally Qualified Health Center under Section 330 of the Public Health

18   Service Act and serves as a "safety net provider[]" that offers comprehensive healthcare services

19   to medically underserved populations, including migratory and seasonal agricultural workers, the

20   homeless, and residents of public housing. Ex. 3 at 4–5; *see also* 42 U.S.C. § 254b.

21     The Program, based out of Sea Mar's Marysville clinic, is a cornerstone of Sea Mar's

22   healthcare services. It trains residents in family medicine who are committed to the underserved

23   and vulnerable and, Sea Mar hopes, will serve in those communities throughout their careers.

24   Lawrence Decl. ¶ 6. The Program welcomed its first class of residents in 2017 and has since

25   expanded to around twelve residents in each three-year class. *Id.* ¶ 7. Its residents see patients in

26

---

[4] Exhibits are attached to the declaration of Adrianna Simonelli, filed concurrently.

PL.'S MOT. FOR TRO & PRELIM. INJ. – 3
(No. 2:24-cv-00896)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

167620086.8

1    the outpatient setting at three of Sea Mar's clinics, with inpatient training rotations in obstetrics,

2    surgery, family medicine, intensive care, and emergency medicine at Providence Regional Medical

3    Center Everett. *Id.* ¶ 9.

4    　　　In recent years, the Program has transitioned towards the Teaching Health Center Graduate

5    Medical Education ("THCGME") model established by the federal Health Resources and Services

6    Administration ("HRSA"), to further align with Sea Mar's overall mission. *Id.* ¶ 10. Unlike most

7    residency programs that focus on hospital training, the THCGME model emphasizes community-

8    based training in outpatient settings. *Id.*

9    　　　Notably, the Program has a demonstrated record of providing high-quality medical

10   education and training: During the most recent five-year period for which there is data (2019–

11   2023), its residents had a 100% passage rate on family medicine board examinations. *Id.* ¶ 11.

12   ACGME recognizes this metric as indicative of the program's effectiveness. *Id.* Sea Mar also

13   received the Joy in Medicine Recognition Program's silver recognition in 2023 for supporting

14   resident well-being and reducing burnout. *Id.*

15   　　　By training future family medicine practitioners in rural and underserved areas, Sea Mar's

16   Program is helping to close a critical gap in the nation's healthcare system. Both state and federal

17   governments have recognized that these communities have inadequate access to basic medical

18   care: HRSA "estimates *a projected shortage of 35,260 primary care physicians*—including family

19   medicine, general internal medicine, geriatrics, and pediatrics—by 2035. These shortages are

20   projected to be particularly acute in rural areas." Ex. 4; *see also, e.g.*, S.S.H.B. 1485 § 1, 64th Leg.,

21   2015 Reg. Sess. (Wash.) (recognizing need "to increase the number of family medicine physicians

22   in shortage areas in the state"). To remedy these shortages, state and federal programs provide

23   funding for community-focused family medicine residency programs—including Sea Mar's.

24

25

26

PL.'S MOT. FOR TRO & PRELIM. INJ. – 4
(No. 2:24-cv-00896)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

167620086.8

**II.      The Program's eligibility for state and federal funds is conditioned on ACGME accreditation.**

ACGME oversees the accreditation of medical residency and fellowship programs in the United States—including Sea Mar's Program, thus exercising significant control over graduate medical education, and, because of statutory deference afforded to its accreditation decisions, serving as the gatekeeper for public funding Sea Mar needs to keep the Program in operation. *See* Ex. 5. For example, in order "to increase the number of family medicine physicians in shortage areas in the state," the Washington State Legislature "provid[ed] a fiscal incentive for hospitals and clinics to develop or expand residency programs." S.S.H.B. 1485 § 1; *see also* RCW 70.112.060. Qualifying residency programs are "community-based residency educational programs in family medicine . . . *that are certified by the [ACGME]* or by the American osteopathic association." RCW 70.112.010(4) (emphasis added).[5] In other words, the Program's eligibility for this funding is conditioned on ACGME certification. Sea Mar has consistently received the funding, including an allocation of $674,301 for fiscal year 2024 and $531,181 for fiscal-year 2023 and relies on it to support the Program. Lawrence Decl. ¶ 14.

Similarly, HRSA oversees a federal THCGME program that also aims to assist "qualified teaching health centers" that serve "medically underserved communit[ies]" and "rural area[s]." 42 U.S.C. § 256h(a)(3). HRSA's program provides funding for "maintenance of filled positions at existing approved graduate medical residency training programs," "expansion of existing approved graduate medical residency training programs," and "establishment of new approved graduate medical residency training programs," 42 U.S.C. § 256h(a)(1)(A)–(C). As with Washington's program, to qualify as an "approved graduate medical residency training program[]"

---

[5] In 2020, ACGME and AOA completed a "successful transition to a single accreditation system for graduate medical education [] in the U.S." and that, "[u]nder the single accreditation system, the ACGME serves as the nation's sole accreditor for both osteopathic (DO) and allopathic (MD) residencies and fellowships." Ex. 6.

PL.'S MOT. FOR TRO & PRELIM. INJ. – 5
(No. 2:24-cv-00896)

1   and thus be eligible for funding, a program like Sea Mar's must "meet[] criteria for accreditation

2   []as established by" ACGME. *Id.* § 256h(j)(1)(B).

3       Sea Mar is approved for funding through HRSA's THCGME program for two residents

4   beginning July 1, 2023, and four additional residents thereafter. Lawrence Decl. ¶ 13; Ex. 7.

5   HRSA's financial support "is contingent upon . . . maintaining accreditation." 42 U.S.C.

6   § 256h(j)(1)(B). In 2023, Sea Mar received $320,000 from HRSA for two full-time residents in

7   the Family Medicine Residency Program. Lawrence Decl. ¶ 13; Exs. 7–8. Sea Mar relies on

8   THCGME funds for the Program, including the money HRSA allocated for four additional full-

9   time residents. Lawrence Decl. ¶ 13. Both this award and Washington State funding are threatened

10  by the withdrawal of the Program's accreditation.

11  **III.    ACGME has withdrawn the Program's accreditation on spurious grounds and**

12  **without a meaningful opportunity to be heard.**

13      Though the Program has consistently received ACGME accreditation since 2015,

14  Lawrence Decl. ¶ 7; Ex. 9, Sea Mar received a letter from ACGME last October explaining that

15  "a site visit of the [program] must be conducted before [a reaccreditation] decision can be made."

16  Ex. 10. The letter explained that the ACGME review committee "want[ed] more context, in

17  person" about resident and faculty surveys about the Program. *Id.* Two months later, Sea Mar

18  received another letter scheduling a *remote* site visit, despite the earlier letter's assertion that an

19  in-person visit was needed. Ex. 11. This second letter stated that ACGME "ha[d] identified the

20  [FMRP] as due for an accreditation site visit" but provided scant additional information. *Id.*

21      Weeks before the February site visit, on January 23, 2024, ACGME notified Sea Mar that,

22  as a sponsoring institution of graduate medical education programs, it received continued

23  accreditation. Ex. 14. The ACGME review committee expressly "commended [Sea Mar] for its

24  demonstrated substantial compliance with the ACGME's Institutional Requirements without any

25  new citations." *Id.*

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

The February 20 remote site visit lasted less than seven hours. Lawrence Decl. ¶ 15. Residents met with ACGME's two field representatives, either in groups or for five-minute individual sessions, including just 45 minutes for all faculty interviews. *Id.*; Exs. 12–13. At the end, Sea Mar's administration was allowed only a few minutes with the field representatives—even though the schedule allotted thirty minutes for the meeting. The field representatives did not offer information about their visit or ask for input on any issues raised. Lawrence Decl. ¶ 15.

On April 18, 2024, the ACGME review committee decided to withdraw the Program's accreditation effective June 30, 2024, a decision it communicated to Sea Mar by April 21, 2024, email and by letter five days later. Lawrence Decl. ¶¶ 16, 19; Exs. 15–16. ACGME's April 26 thirteen-page letter provided the review committee's ostensible basis for accreditation withdrawal: forty-seven enumerated "citations" that purportedly motivated the decision. Ex. 16. Curiously, although ACGME's policies provide that accreditation can be withdrawn due to "egregious non-compliance with accreditation requirements," Ex. 17 at p. 112, that was not the basis for de-accreditation; instead, ACGME's decision was reportedly based on the sheer number of citations. Lawrence Decl. ¶ 18. Indeed, no citation suggests egregiousness, and many do not hold up under scrutiny, *see generally,* Lawrence Decl. ¶¶ 22–34, including:

- **ACGME cited Sea Mar for alleged deficiencies in sites that are not yet part of the Program.** Several citations were for perceived deficiencies in possible practice sites for a *planned* Rural Pathway program. Ex. 16 at p. 2. But that program and its sites are not yet part of the residency. Sea Mar projected to begin operations in summer 2025 after application to and approval from ACGME. Lawrence Decl. ¶ 23.

- **Several citations manifestly lacked merit or are contradicted by the record.** One citation referenced an ACGME guideline that the program's family medicine practices "have [] mission statement[s]" and claims, "it could not be verified by the program director that [the program] has a mission statement other than the overall institution's mission statement," Ex. 16 at p. 2—without explaining how or why Sea Mar's

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1  mission statement, which is adopted by each of its practices, is insufficient or

2  noncompliant. Lawrence Decl. ¶ 24. Another citation faulted Sea Mar for "ha[ving] had

3  three [program directors] over the last three years," Ex. 16 at p. 3, even though this resulted

4  from the founding director's retirement, followed by an interim director during the search

5  for a permanent replacement and then the current, permanent director, Lawrence Decl.

6  ¶ 26. So, the citable offense apparently was to have a program director retirement and an

7  orderly succession process. Another citation contradicts its own finding, stating that

8  residents do not see patients via telehealth before acknowledging that "the annual data

9  indicates that the residents see patients via telehealth technology" but, without the slightest

10  specification, "it was reported otherwise."  Ex. 16 at p. 5. Other citations faulted the

11  resident evaluation process for not including ACGME milestone metrics and not sharing

12  them with the residents, *id.* at pp. 7–8, despite documents in ACGME's possession

13  reflecting full compliance. Lawrence Decl. ¶ 32. Other citations alleged noncompliance

14  derived from resident and faculty survey results, but still other citations ignored the same

15  surveys when they confirmed compliance. Indeed, the citations ignored or overlooked,

16  without comment or justification, virtually all inconsistent or contrary materials provided

17  to ACGME. *See generally* Ex. 16; Lawrence Decl. ¶ 25. Other citations contradicted the

18  field representatives' finding of compliance or the ACGME's contemporaneous finding of

19  Sea Mar's compliance with identical standards as the sponsoring institution. *See, e.g.*,

20  Lawrence Decl. ¶¶ 27, 29.

21  • **Several citations faulted Sea Mar for activities expressly allowed by**

22  **ACGME's policies.** The Program was cited because residents periodically perform non-

23  physician tasks like patient scheduling, *id.* ¶ 30, Ex. 16 at 4, but ACGME's requirements

24  specify that residents may occasionally perform these functions. Ex. 18 at p. 54. Another

25  citation claimed the program director did not evaluate residents, Ex. 16 at p. 7, even though

26  the applicable ACGME guideline allows the program director "*or their designee*, with

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

167620086.8

input from the Clinical Competency Committee" to perform this function, Ex. 18 at p. 43, and evaluations were performed by site advisors (i.e., the director's designees) and the Clinical Competency Committee, of which the program director was a participating member, Lawrence Decl. ¶ 31.

- **Nearly half of the citations were based on non-quoted, briefly summarized communications by unidentified residents and faculty purportedly made during the site visit.** No contemporaneous notes were provided to the ACGME review committee (or Sea Mar) as they were reportedly destroyed by the field representatives. *Id.* ¶ 33.

- **Only *one* citation makes any reference to a risk of adverse patient outcomes.** Even then, the sole citation does so only suggestively, Ex. 16 at p. 8, and no citation references any proof or credible allegations of adverse patient outcomes. Sea Mar was unaware of any such incidents—and would have been apprised via routine quality assurance mechanisms if they actually occurred. Lawrence Decl. ¶ 34.

In short, to the extent the ACGME review committee's withdrawal decision was premised on the enumerated citations—either individually or aggregated—ACGME lacked a credible or identifiable basis for its decision.

But ACGME has denied Sea Mar a timely opportunity to make its case. ACGME initially set the appeal hearing for July 17, more than two weeks *after* the June 30 withdrawal of accreditation. Ex. 21; *see also* Ex. 20. ACGME later delayed the hearing to August 2, after which the appeals panel will file a report and recommendation for the ACGME board to take final action. Lawrence Decl. ¶ 35; Ex. 27. ACGME has confirmed that it will not provide Sea Mar with the appeals panel report and recommendation. Ex. 23. The board's decision will take place without Sea Mar's presence in late September. *See* Lawrence Decl. ¶ 35.

Timing aside, the appeal process leaves little opportunity for Sea Mar to meaningfully contest the accreditation decision. Per ACGME's policies, "[p]roceedings before an Appeals Panel

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1  are not of an adversarial nature . . . , but rather provide an administrative mechanism for peer

2  review," with "[p]resentations . . . limited to clarifications of the record." Ex. 17 at p. 120. That

3  "record" has been curated by ACGME without Sea Mar's input and without many salient

4  materials. Moreover, despite repeated requests, ACGME has denied Sea Mar critical information

5  regarding the accreditation decision, including the materials underlying the site visit report that

6  ostensibly precipitated the adverse decision, the appeals panel decision, and the materials shared

7  between the ACGME review committee and the appeals panel. Lawrence Decl. ¶¶ 20–21, 36–37;

8  Exs. 23, 25, 27.[6]

9  **IV.    The accreditation withdrawal has caused, and will continue to cause, irreparable**

10  **injury to Sea Mar and the Program.**

11  As the June 30 accreditation withdrawal looms, Sea Mar has already suffered significant

12  injuries to itself and the Program—harms that will compound if ACGME follows through on the

13  accreditation withdrawal.

14  Most notably, residents have begun to leave the Program to finish their residencies

15  elsewhere. As of the date of this filing, 20 of the Program's 22 current first- and second-year

16  residents and 10 of its 12 incoming first-year residents have signed contracts to begin or continue

17  their residencies at other institutions. Lawrence Decl. ¶ 38. Sea Mar has also experienced attrition

18  of its program faculty and non-Sea Mar facilities that are integral to the Program and, because the

---

19

20  [6] The inexplicably deficient citations and precipitous de-accreditation action, along with
the inadequate process afforded in connection with the appeal, leave Sea Mar to guess why it has

21  been so mistreated by ACGME. The information to which Sea Mar currently has access, though,
suggests motivations that might be iniquitous. Sea Mar, a relatively small healthcare provider

22  operates one residency program, and so pays far less to ACGME in annual fees than larger
institutions like academic medical centers that have many residency programs and maintain

23  accreditation despite citations. ACGME has financial incentive to give short shrift to Sea Mar's
accreditation while establishing, at low cost to ACGME, an image of rigorous oversight. *See* Ex.

24  19 (Annual fees are $6,500 per residency program, plus 2.5% of all sponsored programs' fees).
Moreover, in the ACGME site visit report, the field representatives made the puzzling, seemingly

25  irrelevant mention that Sea Mar "was founded by Hispanics," suggesting discriminatory animus.
Ex. 26 at p. 2. Sea Mar is unable to confirm these explanations because ACGME has refused to

26  produce materials and documentation that might shed light on these issues. Exs. 22–25, 28–29.

PL.'S MOT. FOR TRO & PRELIM. INJ. – 10
(No. 2:24-cv-00896)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

167620086.8

1    Program was firmly integrated into its clinical services, has had to contract with other providers to

2    ensure that it has the resources necessary to address the needs of its otherwise medically

3    underserved community. *Id.* Meanwhile, Providence Regional Medical Center Everett has

4    threatened to terminate its affiliation with the Program because of the impending loss of

5    accreditation, which would leave the Program without its site for inpatient-training rotations in

6    obstetrics, surgery, family medicine, intensive care, and emergency medicine. *Id.*

7        Even if Sea Mar prevails in its appeal and the ACGME board chooses to restore the

8    Program's accreditation at its September meeting, it will have been shuttered for over three

9    months. No residents will remain, faculty will be gone, and agreements with hospitals will be

10   terminated. Under these circumstances, a restoration of the Program's accreditation will be too

11   little, too late—the loss of reputational capital alone would make it difficult (if not impossible) to

12   revive it. Lawrence Decl. ¶¶ 38–39.

13       In other words, if June 30 arrives without the judicial intervention Sea Mar now seeks, the

14   Program will be ended—no matter how the appeal or reaccreditation process plays out.

15                                   **LEGAL STANDARD**

16       "The standard for issuing a temporary restraining order is the same as that for the issuance

17   of preliminary injunction" and "requires a party to demonstrate (1) that [it] is likely to succeed on

18   the merits, (2) that [it] is likely to suffer irreparable harm in the absence of preliminary relief,

19   (3) that the balance of equities tips in [its] favor, and (4) that an injunction is in the public interest."

20   *Dahlstrom v. Sauk-Suiattle Indian Tribe of Wash.*, No. C16-0052JLR, 2017 WL 413201, at *2

21   (W.D. Wash. Jan. 31, 2017) (quoting *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir.

22   2009)). "The purpose of a temporary restraining order is to preserve the status quo before a

23   preliminary injunction hearing may be held; its provisional remedial nature is designed merely to

24   prevent irreparable loss of rights prior to judgment." *Gale Force Nine LLC v. Wizards of Coast*

25   *LLC*, No. 2:20-cv-01700-BAT, 2020 WL 7133507, at *3 (W.D. Wash. Nov. 25, 2020).

26

PL.'S MOT. FOR TRO & PRELIM. INJ. – 11
(No. 2:24-cv-00896)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

167620086.8

1

**ARGUMENT**

2        Sea Mar should be given emergency and preliminary injunctive relief by this Court because

3   ACGME has unfairly denied Sea Mar any meaningful opportunity to be heard on the adverse

4   accreditation decision before it takes effect, and Sea Mar will likely succeed on the merits of

5   underlying claims. Sea Mar and its Program will suffer irreparable injury if the accreditation

6   withdrawal takes effect on June 30 without an opportunity for appeal, whereas ACGME will suffer

7   no injury if that decision is delayed. Finally, the public interest would be best served if Sea Mar

8   and its residents are allowed to care for Washington's underprivileged communities without the

9   disruption of ACGME's capricious and untested decision.

10   **I.     Sea Mar is like to succeed on the merits of its common-law and statutory claims.**

11        ACGME's denial of a fair appeal process violates Sea Mar's common-law and statutory

12   rights, and Sea Mar is therefore likely to prevail on its claims.

13        **A.     ACGME has violated Sea Mar's due-process rights.**

14        As a quasi-public entity that exercises significant control over Sea Mar's access to public

15   funding and other government benefits, ACGME owes Sea Mar (and all organizations it accredits

16   and oversees) due-process rights. By failing to give Sea Mar a meaningful opportunity to be heard

17   before taking adverse action—the most basic tenet of procedural due process—ACGME has

18   violated its common-law obligations, and Sea Mar is therefore likely to prevail on the merits of its

19   federal and state due-process claims.

20        **Federal common-law due process.** Although federal courts have recognized that

21   accrediting bodies like ACGME are not necessarily state actors subject to constitutional due-

22   process requirements, *see, e.g.*, *McKeesport Hosp.*, 24 F.3d at 523–26; *Shoemaker v. ACGME*, No.

23   95-55200, 1996 WL 341935, at *1 (9th Cir. June 19, 1996) (unpublished), "[t]his is not to say []

24   that accreditation agencies are wholly free of judicial oversight," *Pro. Massage*, 781 F.3d at 169.

25   Because "[t]hey, like all other bureaucratic entities, can run off the rails," courts across the country

26   have "recognize[d] . . . that there exists a 'common law duty on the part of "quasi-public" private

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

professional organizations or accreditation associations to employ fair procedures when making decisions affecting their members.'" *Id.* (quoting *McKeesport Hosp.*, 24 F.3d at 534–35 (Becker, J., concurring in the judgment)); *see also, e.g.*, *Med. Inst. of Minn. v. Nat'l Ass'n of Trade & Tech. Schs.*, 817 F.2d 1310, 1314 (8th Cir. 1987) ("Although not governed by constitutional guidelines, [accrediting bodies] nevertheless must conform [their] actions to fundamental principles of fairness.").

This is not a novel concept; as the Fourth Circuit has noted, "[c]ourts began to recognize this common law duty as early as 1938," and it is "meant to operate as a 'check on organizations that exercise significant authority in areas of public concern such as accreditation and professional licensing.'" *Pro. Massage*, 781 F.3d at 169–70 (quoting *Cooley L. Sch.*, 459 F.3d at 712); *see Auburn Univ. v. S. Ass'n of Colls. & Schs., Inc.*, 489 F.Supp.2d 1362, 1370 (N.D. Ga. 2002) (applying federal due-process obligations to accrediting bodies "because the agencies have become the gatekeeper to federal financial aid funds without which schools would be unable to function"). While courts exercise some restraint when considering the judgments of accrediting bodies—after all, "it is not realistic to think courts possess either the expertise or the resources to perform the accreditation function *ab initio*"—they nevertheless maintain the authority to determine "whether the accrediting body's internal rules provide[d] a fair and impartial procedure and whether it [followed] its rules in reaching its decision." *Pro. Massage*, 781 F.3d at 172 (quoting *Wilfred Acad. of Hair & Beauty Culture v. S. Ass'n of Colls. & Schs.*, 957 F.2d 210, 214 (5th Cir. 1992)); *see also, e.g.*, *W. State Univ. of S. Cal. v. ABA*, 301 F.Supp.2d 1129, 1135 (C.D. Cal. 2004) ("In the accreditation context, common law due process requires the accrediting body's decision not be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or reached 'without observance of procedure required by law.'" (quoting *Chi. Sch. of Automatic*

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1  *Transmissions, Inc. v. Accreditation All. of Career Schs. & Colls.*, 44 F.3d 447, 449 (7th Cir.

2  1994))).[7]

3      As the U.S. Supreme Court has noted, "[t]he fundamental requirement of due process is

4  the opportunity to be heard 'at a meaningful time and in a meaningful manner,'" *Mathews*, 424

5  U.S. at 333 (quoting *Armstrong*, 380 U.S. at 552), and thus "'[n]otice and opportunity for hearing

6  appropriate to the nature of the case' are indispensable ingredients of due process and thus of

7  common-law due process claims," *Mountain State Univ., Inc. v. Higher Learning Comm'n*, No.

8  5:14-16682, 2017 WL 963043, at *10 (S.D. W. Va. Mar. 10, 2017) (citation omitted) (quoting

9  *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)).

10      Crucially, the opportunity to be heard "is required *before* an [entity] is finally deprived of

11  a property interest." *Mathews*, 424 U.S. at 333 (emphasis added) (citing *Wolff v. McDonnell*, 418

12  U.S. 539, 557–58 (1976)). As Justice Frankfurter explained, "the right to be heard before being

13  condemned to suffer grievous loss of any kind, even though it may not involve the stigma and

14  hardships of a criminal conviction, is a principle basic to our society." *Joint Anti-Fascist Refugee*

15  *Comm. v. McGrath*, 341 U.S. 123, 168 (1951) (Frankfurter, J., concurring).

16      Here, there is little argument that ACGME has denied Sea Mar a fair procedure. It has

17  decided to withdraw the Program's accreditation effective June 30, an adverse action that would

18      ---

19      [7] While the Ninth Circuit has not expressly recognized "the validity of common law due
process claims challenging decisions relating to accreditation," *Nat'l Univ. of Health Scis. v.*

20  *Council on Chiropractic Educ., Inc.*, 980 F.3d 679, 681 (9th Cir. 2020), other circuit and district
courts have routinely recognized this claim, *see, e.g.*, *Marlboro Corp. v. Ass'n of Indep. Colls. &*

21  *Schs., Inc.*, 556 F.2d 78, 82 (1st Cir. 1977); *Escuela de Medicina San Juan Bautista, Inc. v. Liaison
Comm. on Med. Educ.*, 820 F.Supp.2d 317, 319 (D.P.R. 2011); *Transp. Careers, Inc. v. Nat'l Home*

22  *Study Council*, 646 F.Supp. 1474, 1481–85 (N.D. Ind. 1986). Even where courts have limited the
scope of due process review, they have reviewed "whether the process and decision [of an

23  accrediting body] were fundamentally fair." *Paine Coll. v. S. Ass'n of Colls. & Schs. Comm'n on
Colls., Inc.*, 810 F. App'x 852, 857 (11th Cir. 2020); *see also, e.g.*, *Bennett Coll. v. S. Ass'n of*

24  *Colls. & Schs. Comm'n on Colls., Inc.*, 474 F.Supp.3d 1297, 1305–07 (N.D. Ga. 2020); *Wards
Corner Beauty Acad. v. Nat'l Accrediting Comm'n of Career Arts & Scis.*, No. 2:16cv639, 2017

25  WL 5712120, at *2 (E.D. Va. Nov. 24, 2017). Even under this deferential standard of review, Sea

26  Mar is likely to prevail on its claims because ACGME's decision to deprive Sea Mar of a
meaningful opportunity to be heard before taking adverse action is fundamentally *un*fair.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

impose irreparable injury on the program, Sea Mar, and its patients. *See supra* at pp. 10–11. Notwithstanding this "grievous loss," ACGME refused to expedite Sea Mar's hearing and, indeed, delayed it to August 2—more than a month *after* accreditation withdrawal, when the damage will have been done. Even then, the appeal will not be resolved by the ACGME board until its meeting in late September, by which time the Program will have been dismantled, irreparably harming Sea Mar. Lawrence Decl. ¶¶ 35, 38–39.

Moreover, the offered appeal process is so deficient that it doubtfully constitutes an opportunity to be heard in a meaningful manner. As ACGME's policies note, "[p]roceedings before an Appeals Panel are not of an adversarial nature . . . , but rather provide an administrative mechanism for peer review," with "[p]resentations . . . limited to clarifications of the record." Ex. 17 at p. 120. Sea Mar has been further denied critical information bearing on whether the review committee's decision was based upon substantial, credible and relevant evidence or was otherwise justified. Lawrence Decl. ¶¶ 20–21. Sea Mar is also being deprived of an opportunity to supplement with relevant materials the record the appeals panel will review. *Id.* ACGME has designed an appeal process that is limited to a deferential review of a record that it has selectively curated. ACGME has not only written the rules, it has rigged the game.

In short, because ACGME has not given Sea Mar a meaningful opportunity to be heard on the withdrawal of the Program's accreditation, Sea Mar is likely to prevail on its federal common-law due process claim.

**State common-law due process.** It is not just federal common law that requires ACGME to respect Sea Mar's due-process rights: Washington law provides a further basis for Sea Mar's suit and for emergency relief from this Court.

Various states have recognized that "certain private organizations owe a limited common law duty of due process to those subject to disciplinary action," which, like federal common-law due process, requires "fundamental fairness," "notice," and "an opportunity to be heard." *Tulp v. Educ. Comm'n for Foreign Med. Graduates*, 376 F.Supp.3d 531, 543 (E.D. Pa. 2019) (quoting *Psi*

PL.'S MOT. FOR TRO & PRELIM. INJ. – 15
(No. 2:24-cv-00896)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

167620086.8

1    *Upsilon of Phila. v. Univ. of Pa.*, Pa.Super. 604, 610–11 (1991)). Indeed, one federal court charting

2    the history of common-law due process claims against accrediting bodies noted that "the notion of

3    common law due process evolved from the . . . line of [state] cases holding that where membership

4    in private associations is a virtual prerequisite to the practice of a given profession, courts must

5    scrutinize the procedures used by the association to assure that they are reasonable, while giving

6    deference to the specialized competence of the association." *Auburn Univ.*, 489 F.Supp.2d at

7    1367–75 (citing *Falcone v. Middlesex Cnty. Med. Soc'y*, 34 N.J. 582, 598 (1961); *Blende v.*

8    *Maricopa Cnty. Med. Soc'y*, 96 Ariz. 240, 245–46 (1964)).

9         Washington is among the states recognizing this common-law due-process duty in a line

10   of cases concerning membership in private clubs. As the Florida Supreme Court explained, after

11   considering caselaw from around the country, "[f]rom the authorities before us, it appears to be

12   the majority, and we think the better-reasoned, view, that if expulsion of a club member is

13   accomplished without notice and hearing, the denial of these minimum procedural safeguards is

14   violative of the 'principles of natural justice' and judicial intervention is indicated." *La Gorce*

15   *Country Club v. Cerami*, 74 So.2d 95, 96 (Fla. 1954). The Washington Supreme Court recognized

16   the right in this context, noting that "expulsion for crime or misconduct inimical to [an]

17   organization's being" must be preceded by "a hearing after notice." *Schroeder v. Meridian*

18   *Improvement Club*, 36 Wn.2d 925, 933 (1950).

19        Although factually distinct from the accreditation decision at issue, the reasoning of

20   *Schroeder* and other private-club cases is nonetheless applicable. Where membership in or

21   recognition from a given organization is "an economic necessity," and the organization is one

22   "with which the public is highly concerned and which engages in activities vitally affecting the

23   health and welfare of the people," *Falcone*, 34 N.J. at 591, 596–97, adverse decisions must be

24

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

167620086.8

based "on a showing of just cause established . . . under proceedings embodying the elements of due process," *Blende*, 96 Ariz. at 245.[8]

Here, ACGME's appeal process fails basic tenets of due process. As the Washington Court of Appeals explained,

> [a]t a minimum, procedural due process must include notice reasonably calculated to apprise a party of the pendency of proceedings affecting him, and an opportunity to be heard *at a reasonable time and in an effectual manner*. These due process protections not only attach to a permanent deprivation but also the present temporary, nonfinal deprivation of property.

*Reilly v. State*, 18 Wn. App. 245, 250 (1977) (footnote omitted) (emphasis added). Absent extraordinary circumstances, "[d]ue process must be accorded the individual before deprivation of any significant property interest." *Id.* at 250–51. The appeal process ACGME is offering does not constitute an opportunity to be heard at a reasonable time, as the withdrawal will be effectuated *before* the hearing, or in an effectual manner, given its numerous procedural shortcomings. Simply put, due process and basic principles of fairness demand more than what ACGME has afforded. Sea Mar is therefore likely to succeed on the merits of its state common-law due process claim.

*     *     *

Both federal and Washington common law requires ACGME to employ fair procedures and respect Sea Mar's due process rights. Whatever the merits of ACGME's ultimate decision—and the purported bases for the accreditation withdrawal here do not withstand scrutiny, *see infra* at pp. 6–10—ACGME *must* provide Sea Mar with an opportunity to be heard at a meaningful time

---

[8] Although the Washington Court of Appeals once expressed doubt as to the viability of a common-law due-process claim, its decision in *Mayer v. Pierce County Medical Bureau, Inc.*, 80 Wn.App. 416 (1995), was limited to the facts of that case—which are readily distinguishable. In *Mayer*, a physician challenged a nonprofit healthcare provider's decision to withdraw his preferred status. *See id.* at 418–20. The court declined to extend *Schroeder* because the provider's *membership* in the healthcare provider was not at issue, only his preferred status. Here, by contrast, the withdrawal of the FMRP's accreditation is akin to expulsion or the loss of membership described in *Schroeder*—a grievous economic injury.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1  and in a meaningful manner before the decision is effectuated. Because ACGME has thus far failed

2  to provide what basic principles of fairness and due process require, judicial intervention is

3  warranted.

4        **B.      ACGME has engaged in unfair practices in violation of the CPA.**

5        Sea Mar is also likely to succeed on the merits of its CPA claim, as ACGME's

6  fundamentally unfair practices violate Washington's consumer-protection laws.

7        The CPA, RCW 19.86.010–.920, prohibits "[u]nfair methods of competition and unfair or

8  deceptive acts or practices in the conduct of any trade or commerce," RCW 19.86.020. The law

9  "shall be liberally construed that its beneficial purposes may be served." RCW 19.86.920. To

10  prevail on a CPA claim, private litigants must establish five elements: "(1) an unfair or deceptive

11  act or practice; (2) in trade or commerce; (3) which affects the public interest"; (4) "injury to

12  plaintiff in his or her business or property"; and (5) "a causal link be established between the unfair

13  or deceptive act complained of and the injury suffered." *Hangman Ridge Training Stables, Inc. v.*

14  *Safeco Title Ins. Co.*, 105 Wn.2d 778, 784–85 (1986).

15        Here, each element is satisfied based on ACGME's hollow and illusory guarantee of a

16  meaningful appeal process for adverse accreditation decisions.

17        *First*, ACGME's appeal process is an unfair and a deceptive practice. Even if Sea Mar

18  prevails in its appeal, the process offered by ACGME will nonetheless cause irreparable harm to

19  Sea Mar and its Program. This is inherently unfair, as Sea Mar has no alternative to the process,

20  given ACGME's monopoly control of residency program accreditation. *See Klem v. Wash. Mut.*

21  *Bank*, 176 Wn.2d 771, 787–88 (2013) (suggesting that "a practice is unfair if it causes or is likely

22  to cause substantial injury to consumers which is not reasonably avoidable by consumers

23  themselves") ACGME's appeal process is also deceptive because a reasonable consumer would

24  believe that an appeal of adverse action would permit meaningful redress of an erroneous decision.

25  *See Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 47, 49–50 (2009). This deception is not

26  unique to the relationship between Sea Mar and ACGME; instead, it is likely to deceive a

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

substantial portion of accredited residency programs who believe they have access to a fair appeal process should they receive an adverse accreditation decision. *See Behnke v. Ahrens*, 172 Wn. App. 281, 292–93 (2012).

*Second*, the ACGME accreditation process is plainly "in trade or commerce," as ACGME charges the entities it accredits. *In re Breast Cancer Prevention Fund*, 574 B.R. 193, 223 (Bankr. W.D. Wash. 2017). Specifically, ACGME charges annual accreditation fees of $6,050 for programs with more than five residents and 2.5% of total program fees for sponsoring institutions. Ex. 19. Additionally, appellants are assessed a $10,000 fee plus half of the costs of the appeal. *Id.*

*Third*, ensuring a fair accreditation process for residency programs is not only in the public interest generally, but also in the narrower sense intended by the CPA. *See Hangman Ridge*, 105 Wn.2d at 794 (factors under CPA's public-interest inquiry "include (1) whether defendant was acting in the course of his or her business, (2) whether defendant advertised to the general public, (3) whether defendant actively solicited this plaintiff, and (4) whether the parties were unequal bargainers"). Here, each consideration supports Sea Mar's CPA claim: The unfair practice occurred in ACGME's business of accrediting residency programs, which it advertises to the relevant public and solicited Sea Mar to undertake, *see id.* at 790–91, and, given its monopoly control, ACGME holds an unequal bargaining position in the relationship, setting forth terms and procedures that Sea Mar is unable to negotiate. Indeed, ACGME has offered Sea Mar and other sponsoring institutes a "Hobson's choice": Either accept an unfair appeal process or forgo necessary accreditation.

*Fourth* and *fifth*, Sea Mar has been and will be injured both financially and reputationally because ACGME's appeal process has not provided the opportunity to meaningfully challenge the withdrawal of the Program's accreditation before adverse action is taken. *See infra* at pp. 6–10.

Because Sea Mar has demonstrated each element of a CPA claim, it is likely to succeed on the merits and thus satisfies the first requirement for emergency injunctive relief.

PL.'S MOT. FOR TRO & PRELIM. INJ. – 19
(No. 2:24-cv-00896)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

167620086.8

1    **II.      Sea Mar is at imminent risk of irreparable harm.**

2          The Ninth Circuit has recognized that, while "economic injury alone does not support a

3    finding of irreparable harm . . .  intangible injuries, such as damage to ongoing recruitment efforts

4    and goodwill, qualify as irreparable harm." *Rent-A-Ctr., Inc. v. Canyon Television & Appliance*

5    *Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991). Injunctive relief is appropriate in such cases

6    "because of the apparent difficulty in calculating monetary damages." *Pac. Aerospace & Elecs.,*

7    *Inc. v. Taylor*, 295 F.Supp.2d 1205, 1219 (E.D. Wash. 2003). Moreover, "[t]he threat of being

8    driven out of business is sufficient to establish irreparable harm . . . . even when damages may be

9    available and the amount of direct financial harm is ascertainable." *HiQ Labs, Inc. v. LinkedIn*

10   *Corp.*, 938 F.3d 985, 993 (9th Cir. 2019) (quoting *Am. Passage Media Corp. v. Cass Commc'ns,*

11   *Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985)), *vacated on other grounds*, 141 S.Ct. 2752 (2022).

12   "[M]ajor disruption of a business can be as harmful as termination, and a threat to the continued

13   existence of a business can constitute irreparable injury." *TrueEX, LLC v. MarkitSERV Ltd.*, 266

14   F.Supp.3d 705, 727 (S.D.N.Y. 2017) (quoting *Nemer Jeep-Eagle, Inc. v. Jeep-Eagle Sales Corp.*,

15   992 F.2d 430, 435 (2d Cir. 1993)).

16         Here, if the Program's accreditation is withdrawn on June 30, as will occur without judicial

17   intervention, both the Program and Sea Mar in general will suffer significant and irreparable

18   harms. Some of these injuries would be economic; as discussed above, the program receives

19   federal and state funds earmarked for family medicine programs. *See infra* at pp. 5–6. But the

20   injuries extend beyond the remunerative, threatening the very survival of the Program and untold

21   damage to Sea Mar's operations and reputation.

22         **The Family Medicine Residency Program.** Simply put, the Program is unlikely to

23   survive the withdrawal of its accreditation on June 30, even if Sea Mar were to prevail in its appeal.

24   The loss of residents, institutional support, and public funding would be difficult if not impossible

25   to remedy, even if the loss of accreditation were only temporary. These concerns are not merely

26   speculative; harms have already begun. Twenty of the program's twenty-two current first- and

PL.'S MOT. FOR TRO & PRELIM. INJ. – 20
(No. 2:24-cv-00896)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    second-year residents and most incoming first-year residents have signed contracts to pursue their

2    residencies elsewhere. Lawrence Decl. ¶ 38. Moreover, the Program's hospital partner has

3    threatened to terminate the affiliation due to the withdrawal, leaving the Program without

4    inpatient-training rotations. *Id.*

5           If Sea Mar has its accreditation effectively withdrawn, it will suffer irreparable reputational

6    harm, and make resurrection and re-accreditation of the Program difficult or impossible. Lawrence

7    Decl. ¶¶ 38–39. "The harm if accreditation is withdrawn is real and substantial," and Sea Mar

8    "need not wait for the axe to fall before seeking an injunction." *W. State Univ.*, 301 F.Supp.2d at

9    1137–38; *see Bristol Univ. v. Accrediting Council for Indep. Colls. & Schs.*, No. 1:16-cv-307

10   (AJT/MSN), 2016 WL 9223924, at *1 (E.D. Va. Mar. 22, 2016) (enjoining accreditation

11   withdrawal where "plaintiff will suffer irreparable harm in the absence of immediate injunctive

12   relief since without accreditation, it will cease operations and its currently enrolled students will

13   no longer be able to attend classes[.]"); *cf. W. State Univ.*, 301 F.Supp.2d at 1138 ("The loss of

14   reputation and good will resulting from the loss of accreditation could be very damaging to a law

15   school.").

16   **III.    ACGME will not be harmed if immediate injunctive relief is granted.**

17          By contrast, ACGME will not be harmed if the Court enters Sea Mar's requested relief.

18   ACGME's own policies provide that "[t]he effective date of the Withdrawal of Accreditation shall

19   be determined by the Review Committee. ACGME-accredited programs may complete the current

20   academic year, *and, at the discretion of the Review Committee, one additional academic year*."

21   Ex. 17 at p. 111 (emphasis added). Sea Mar seeks an injunction preventing the threatened

22   withdrawal until the end of the 2024–2025 academic year—in other words, "one additional

23   academic year." Sea Mar also seeks a preliminary injunction ordering ACGME to provide it with

24   ACGME's field representatives' notes and communications underlying the site visit report and

25   minutes from ACGME's Review Committee's adverse accreditation decision and communications

26   regarding it. ACGME can hardly be injured by an injunction that reflects its own discretionary

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1  policy, especially where, as here, the citations it has lodged against the Program lack any concrete

2  concerns about patient wellbeing.

3  **IV.     The public interest favors emergency relief that will save the Program.**

4          Finally, the public interest would be well served by Sea Mar's requested injunctive relief.

5  Both Washington state and the federal government recognize the critical lack of family medicine

6  practitioners in rural and underserved areas and the importance of residency programs in

7  remedying that shortage. *See infra* at pp. 3–4. Maintaining the Program's accreditation for another

8  year can produce a new class of graduates who can continue to serve these communities and also

9  ensure that Sea Mar's patient base continues to benefit from their care. *See Doe v. Bd. of Trs. of*

10 *Whitman Coll.*, 670 F.Supp.3d 1155, 1172 (E.D. Wash. 2023) ("The 'public interest' inquiry

11 'mostly concerns the injunction's impact on non-parties rather than parties.'" (quoting *Porretti v.*

12 *Dzurenda*, 11 F.4th 1037, 1050 (9th Cir. 2021))); *cf. Welch v. Brown*, 551 F. App'x 804, 814 (6th

13 Cir. 2014) (affirming preliminary injunction where "the public interest weighed in favor of

14 ensuring continuing health care to members of the public" (cleaned up)); *Leddy v. Becerra*, 617

15 F.Supp.3d 116, 125 (E.D.N.Y. 2022).

16         Moreover, courts regularly recognize the public interest in providing a "check on

17 organizations that exercise significant authority in areas of public concern such as accreditation

18 and professional licensing." *Pro. Massage*, 781 F.3d at 170 (quoting *Cooley L. Sch.*, 459 F.3d at

19 712). Here, ACGME has ignored basic principles of fairness and Sea Mar's due-process rights.

20 Given the monopoly power it wields, the public interest would be best served by ensuring that

21 ACGME and other accrediting bodies play by the rules. *See Cooley L. Sch.*, 459 F.3d at 713

22 ("Courts have made the policy decision to ensure that [accrediting] organizations act in the public

23 interest and do not abuse their power."); *W. State Univ.*, 301 F.Supp.2d at 1138 ("The public's

24 interest in prompt, fair and accurate accrediting information is not served if the accrediting agency

25 does not observe a school's due process rights during the accreditation process.").

26

PL.'S MOT. FOR TRO & PRELIM. INJ. – 22
(No. 2:24-cv-00896)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

167620086.8

**V.      Sea Mar requests waiver of bond.**

Sea Mar requests that the Court waive the bond requirement in Fed. R. Civ. P. 65(c). A "district court is afforded wide discretion in setting the amount of the bond". and may set it at zero "if there is no evidence that the party will suffer damages from the injunction." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003).

The TRO Sea Mar seeks will preserve the status quo among the parties and produce documents ACGME created relating to its decision to withdraw accreditation. Because ACGME will suffer no foreseeable monetary harm from the preservation of the status quo, and the cost to produce the documents should be de minimis, no bond is needed. *E.g., ST Ventures, LLC v. KBA Assets and Acquisitions LLC*, No. 1:12-cv-01058 LJO SMS, 2012 WL 3647656, at *4 (E.D. Cal. Aug. 23, 2012).

## <u>CONCLUSION</u>

Because it exercises "life and death power" over residency programs, ACGME has the duty "to play it straight." *Pro. Massage*, 781 F.3d at 170. At the very least, Sea Mar must be given a meaningful opportunity to heard, but ACGME has chosen to defer the appeal until after the adverse action is effective and Sea Mar's Program is no more. Sea Mar therefore requests a temporary restraining order and preliminary injunction prohibiting ACGME from withdrawing the Program's accreditation until after the 2024–2025 academic year and Sea Mar has been afforded its due-process rights. Sea Mar also asks the Court to order ACGME to produce requested materials related to ACGME's adverse accreditation decision.

Consistent with LCR 7(b)(1) and LCR 65(b)(4), Sea Mar is concurrently filing proposed orders setting forth the relief requested and describing the acts to be restrained, which it will email to the Court in Microsoft Word format.

PL.'S MOT. FOR TRO & PRELIM. INJ. – 23
(No. 2:24-cv-00896)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

167620086.8

1

\*     \*     \*

2      The undersigned certifies that this motion contains 8,046 words, in compliance with

3  the Local Civil Rules.

4  Dated: June 21, 2024                    By:    */s/ Matthew P. Gordon*

5                                          */s/ David B. Robbins*
                                           */s/ Cara V. Wallace*

6                                          */s/ Jonathan P. Hawley*
                                           */s/ Juliana L. Bennington*

7                                          David B. Robbins, WSBA No. 13628
                                           Matthew P. Gordon, WSBA No. 41128

8                                          Cara V. Wallace, WSBA No. 50111
                                           Jonathan P. Hawley, WSBA No. 56297

9                                          Juliana L. Bennington, WSBA No. 60357

10                                         **Perkins Coie LLP**
                                           1201 Third Avenue, Suite 4900

11                                         Seattle, WA  98101-3099
                                           Telephone:  206.359.8000

12                                         Facsimile:  206.359.9000

13                                         Email:    DRobbins@perkinscoie.com
                                                     MGordon@perkinscoie.com

14                                                   CWallace@perkinscoie.com
                                                     JHawley@perkinscoie.com

15                                                   JBennington@perkinscoie.com

16

17                                          */s/ Adrianna M. Simonelli*

                                           Adrianna M. Simonelli, WSBA No. 58472

18                                         **Perkins Coie LLP**
                                           1120 N.W. Couch Street, Tenth Floor

19                                         Portland, Oregon 97209-4128
                                           Telephone: +1.503.727.2000

20                                         Facsimile: +1.503.727.2222
                                           Email:        ASimonelli@perkinscoie.com

21

22                                         *Attorneys for Plaintiff*
                                           *Sea Mar Community Health Centers*

23                                         *Attorneys for Plaintiff*
                                           *Sea Mar Community Health Centers*

24

25

26

PL.'S MOT. FOR TRO & PRELIM. INJ. – 24
(No. 2:24-cv-00896)

167620086.8

1

**CERTIFICATE OF SERVICE**

2        I certify under penalty of perjury that on June 21, 2024, I caused the following to be

3  served the foregoing PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

4  AND PRELIMINARY INJUNCTION by the method(s) indicated:

5

| | |
|---|---|
| Douglas Carlson<br>**DOUGLAS CARLSON LLC**<br>c/o Accreditation Council for Graduate<br>Medical Education<br>401 North Michigan Avenue, Suite 2000<br>Chicago, IL 60611<br>Tel.: (312) 241-1166<br>Email: carlson@dougcarlsonlaw.com<br><br>*Attorney for Accreditation Council for*<br>*Graduate Medical Education* | ___ Via hand delivery<br>___ Via U.S. Mail, 1st Class, Postage Prepaid<br>___ Via Overnight Delivery<br>___ Via Facsimile<br>_X_ Via Email<br>___ Other: _____ |
| Vanessa Soriano Power<br>**STOEL RIVES LLP**<br> 600 University Street, Suite 3600<br>Seattle, WA 98101<br>Email: vanessa.power@stoel.com<br><br>Nathan Shafroth<br>Doug Sprague<br>**Covington & Burling LLP**<br>415 Mission St., Ste. 5400<br>San Francisco, CA 94105<br>Email: nshafroth@cov.com<br>Email: dsprague@cov.com<br><br>*Attorneys for defendant ACGME* | ___ Via hand delivery<br>___ Via U.S. Mail, 1st Class, Postage Prepaid<br>___ Via Overnight Delivery<br>___ Via Facsimile<br>_X_ Via Email<br>___ Other: _____ |

21        DATED this 21st day of June, 2024.

22

23                                          *s/ Matthew P. Gordon*
                                          Matthew P. Gordon
24

25

26

CERTIFICATE OF SERVICE
(No. 2:24-cv-00896)

167620086.8