THE HONORABLE_____

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SEA MAR COMMUNITY HEALTH CENTERS,<br><br>              Plaintiff,<br><br>    v.<br><br>ACCREDITATION COUNCIL FOR GRADUATE MEDICAL EDUCATION,<br><br>              Defendant. | Case No. \_\_2:24-cv-896_____<br><br>**DECLARATION OF TYLER LAWRENCE IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

Pursuant to 28 U.S.C. § 1746, I, Tyler Lawrence, declare as follows:

       1.     My name is Tyler Lawrence. I am over the age of 18, have personal knowledge of the facts stated in this declaration, and can competently testify to their truth.

       2.     I make this declaration in support of the motion for temporary restraining order and preliminary injunction filed by Plaintiff Sea Mar Community Health Centers ("Sea Mar").

       3.     I am employed by Sea Mar and currently hold the title of Medical Education Office and Associate Program Director, in which I participate in administering the Sea Mar Marysville Family Medicine Residency Program as well as provide oversight to other training programs within Sea Mar's medical department. I personally participated, on Sea Mar's behalf, in the Accreditation Council for Graduate Medical Education ("ACGME") site visitation process and the

DECLARATION OF TYLER LAWRENCE – 1
(No. 2:24-cv-896)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

167658983

aftermath of that process, which resulted in ACGME withdrawing the Sea Mar Family Practice Residency Program's accreditation effective June 30, 2024.

4. Sea Mar is a federally qualified health center that provides community health services largely to rural and other medically underserved populations in Washington state. It was founded in 1978. As a community-based organization, it provides comprehensive health, human, housing, educational, and cultural services to diverse communities, with a specialty in providing services to the Latino community.

5. Sea Mar has expanded over the past four decades and now provides services and programs in thirteen counties in Washington. From its beginnings as a single clinic in Seattle in 1978, Sea Mar currently consists of 33 medical clinics that offer primary care, obstetric and gynecological services, minor outpatient surgery, and occupational healthcare. Sea Mar also operates 28 outpatient behavioral health clinics and 4 inpatient substance-abuse treatment centers. In 2023, Sea Mar provided 1,840,337 individual services to 290,556 people across Washington. Approximately 41% of these patients are Latino, 96% had incomes below the federal poverty level, and 85% had either public insurance (Medicare or Medicaid) or were uninsured.

6. Since 2015, Sea Mar has operated a Family Medicine Residency Program based out of its clinic in Marysville, Washington. The three-year program trains medical school graduates who seek graduate medical education and training in family medicine and, consistent with Sea Mar's mission and function, are committed to caring for the underserved and vulnerable. The purpose of this program is to train and prepare these residents to provide high-quality medical care to those communities throughout their careers. In the short-term, the program also fully prepares its residents to take and pass family practice specialty board examinations upon their completion of the residency program, so they may provide those services as recognized specialists in family medicine.

7. Sea Mar's Family Medicine Residency Program was initially accredited by ACGME in 2015 and admitted its first residents in 2017. In the 2023–24 academic year, which

DECLARATION OF TYLER LAWRENCE – 2
(No. 2:24-cv-896)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

runs from July through June, ACGME authorized the program to train 12 physician residents per year or 36 residents at any given time. The program was continuously accredited by ACGME since its initial accreditation. Until the citations this April that ostensibly prompted ACGME to withdraw the program's accreditation, the program had not received any citations from ACGME in the six preceding years.

8. The Family Medicine Residency Program's "Sponsoring Institution" Sea Mar, which oversees the residency program, also has been continuously accredited during this period. On January 23, 2024, ACGME renewed Sea Mar's sponsoring institution accreditation and "commend[ed] the institution for its demonstrated substantial compliance with ACGME's Institutional Requirements without any new citations." *See* Ex. 14 at 1.[1]

9. The Family Medicine Residency Program supervises the training residents' care of patients in an outpatient or ambulatory community setting at three of Sea Mar's clinics. The program's residents train to provide family medicine inpatient services through rotations in obstetrics, surgery, family medicine, intensive care, and emergency medicine at Providence Regional Medical Center Everett ("PRMCE"). Sea Mar contracts with PRMCE to obtain the needed inpatient training facilities.

10. Recently, the Family Medicine Residency Program has transitioned from a more hospital-based training program towards a Teaching Health Center Graduate Medical Education ("THCGME") model established by the federal Health Resources and Services Administration ("HRSA"). This change, which puts a stronger emphasis on training and patient care in community-based and outpatient settings, further aligns the program with Sea Mar's core mission of providing quality, comprehensive health, human, housing, educational, and cultural services to diverse and underserved communities.

---

[1] All exhibits referenced in this declaration are the same as those identified in the Declaration of Adrianna M. Simonelli.

DECLARATION OF TYLER LAWRENCE – 3
(No. 2:24-cv-896)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

11. According to its website, ACGME reviews the "aggregate board pass rates of a program's residents/fellows in its evaluation of program effectiveness." *See* https://www.acgme.org/about/acgme-frequently-asked-questions/ (last accessed June 18, 2024) (Answer 21). During the most recent five-year period for which there is data (2019–2023), Sea Mar's Family Medicine Residency Program residents had a 100% passage rate of the specialty boards administered by the American Board of Family Medicine, the highest possible aggregate score. In 2023, Sea Mar also received the American Medical Association's Joy in Medicine Recognition Program's silver recognition for supporting physician well-being and reducing burnout through its wellness program, which reflects resident feedback.

12. The Family Medicine Residency Program relies on funding from state and federal sources. As ACGME acknowledges, "[t]he federal government is by far the largest contributor to [graduate medical education]" and "[r]esidency programs that are not accredited by the ACGME do not receive Medicare funding from CMS for Direct Graduate Medical Education (DGME) and Indirect Medical Education (IME)." *See* https://www.acgme.org/about/acgme-frequently-asked-questions/ (last accessed June 18, 2024) (Answers 4 & 22). Thus, a critical source of graduate medical education funding to Sea Mar is dependent upon obtaining and maintaining ACGME accreditation.

13. As of December 7, 2022, HRSA approved the Family Medicine Residency Program for THCGME funding for two full-time residents beginning July 1, 2023, and four additional full-time residents that would be added to the program over the following two years, with two added per year, for a total of six THCGME-funded positions. The approval letter noted that HRSA's financial support "is contingent upon programs maintaining accreditation." Ex. 7 at 1. In 2023, Sea Mar received $320,000 in funding from HRSA. Ex. 8. Sea Mar relies on THCGME funds for the program, including the money HRSA already allocated for four additional full-time residents.

14. Sea Mar has consistently received state funding for its Family Medical Residency Program from Washington State. In recent years, this state funding included an allocation of

DECLARATION OF TYLER LAWRENCE – 4
(No. 2:24-cv-896)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

$674,301 for FY2024 and $531,181 for FY2023. In order to receive the funding, Sea Mar is required by law to be accredited by ACGME. *See* RCW 70.112.010, 70.112.060. Sea Mar is relying on this state money in future years to support the Family Medicine Residency Program.

15. On February 20, 2024, ACGME performed a remote site visit at Sea Mar. The visit lasted less than seven hours. Neither of the ACGME field representatives who conducted the inspection are family medicine physicians. One is a surgeon and the other is a non-physician administrator. *See* Ex. 13 at 3–5. They were instructed by the Review Committee to conduct an "in-person" site visit. Ex. 10 at 1. Despite that, the site visit took place remotely via videoconference. The videoconference schedule was provided by ACGME to Sea Mar. Ex. 12. As reflected in the schedule, most interviews lasted a maximum of 5 minutes. The interviews of all faculty collectively lasted at most 45 minutes. And the "concluding meeting," which was presumably an opportunity to discuss and confirm information conveyed during the site visit with the Family Medicine Residency Program's leadership and was scheduled for 30 minutes, lasted only about 5 minutes and was not substantive. The field representatives did not offer program personnel any information about what was conveyed to them in interviews and solicited no feedback.

16. Sea Mar heard nothing further from ACGME about the inspection until, on April 21, 2024, the Associate Executive Director of the ACGME Review Committee for Family Medicine notified Sea Mar via email that, three days earlier, the Review Committee decided to withdraw Sea Mar's Family Medicine Residency Program accreditation effective June 30, 2024. The emailed notice indicated that a formal letter of notification would be issued within 60 days. Ex. 15.

17. Sea Mar was shocked to receive the notification of accreditation withdrawal, particularly because ACGME had just confirmed that Sea Mar was complying with ACGME's sponsoring institution requirements with no citations, the Family Medicine Residency Program had a perfect specialty board passage record, and ACGME policy allowed ACGME to offer

constructive remediation to address any concerns it had with the program. For example, after the Review Committee reviews of a site visit report, the Committee "can then confer an accreditation or recognition status decision; issue, extend, or resolve citations; or issue Area(s) for Improvement. The committee can also request another site visit or additional information from the Sponsoring Institution or program, or take another action, as appropriate to the circumstances." *See* https://www.acgme.org/about/acgme-frequently-asked-questions/ (last visited June 18, 2024) (Answers 17 & 19).

18. In response to the email, Sea Mar asked ACGME for clarification as to the basis of the accreditation decision, relevant documents, clarification as to whether the Family Medicine Residency Program would retain its accreditation until after an appeal was heard and resolved, and an extension to the de-accreditation effective date. *See generally* Exs. 20, 22, 24, 28. On April 22, 2024, ACGME's Executive Director of the Review Committee for Family Medicine told me in a telephone conversation the accreditation decision was based on the sheer number of citations rather than any egregious non-compliance by Sea Mar's Family Medicine Residency Program. In written correspondence, ACGME declined Sea Mar's request to extend the withdrawal's effective date and its later requests to expedite the hearing and decision dates even though ACGME policy affords the discretion to do so. *See generally* Ex. 23, 25, 27, 29; *see* https://www.acgme.org/about/acgme-frequently-asked-questions/ (last accessed June 18, 2024) (Answer #5: "Although rare, . . . a program [can be] reestablished at the institution before the effective date of withdrawal . . . ."). Indeed, later in the process, ACGME unilaterally delayed the appeal hearing date from July 17, 2024 to August 2, 2024. Exs. 21, 27.

19. On April 26, 2024, Sea Mar received a formal letter of notification, which set forth multiple citations, each with a brief and non-specific narrative, along with allegedly supporting references to the field representatives' "Site Visit Report," "annual data," or the 2023 Sea Mar faculty and resident surveys. Ex. 16. Sea Mar was advised that it could not obtain a copy of the field representatives' Site Visit Report unless and until Sea Mar filed an appeal of the withdrawal

DECLARATION OF TYLER LAWRENCE – 6
(No. 2:24-cv-896)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

decision and, if Sea Mar did appeal, it would not receive the "appeal file" which would constitute the record for appeal until some indeterminate time after that. On May 10, 2024, Sea Mar notified ACGME that Sea Mar would appeal the adverse decision. Ex. 20. The Site Visit Report was provided to Sea Mar on May 14, 2024, but the appeal file was not provided until June 4, 2024.

20. The Site Visit Report itself did not provide appreciable additional information to elucidate the factual bases for the citations or identify documents or communications that were inconsistent with the citations and site visit report findings. As a result, between May 17, 2024 and June 14, 2024, Sea Mar renewed and made more specific requests for documents pertaining to the Review Committee's decision and the field representatives' site visit and related report. For instance, Sea Mar sought the field representatives' notes and correspondence related to the site visit and the Review Committee's minutes and notes of the meeting at which the Committee decided upon the citations and the withdrawal of accreditation. Because Sea Mar's attorneys were informally told by ACGME's counsel that the field representatives had destroyed their notes and correspondence per ACGME protocol, they sought confirmation of that apparent fact. *See* Exs. 22, 24, 28. Sea Mar's attorneys also asked whether they could interview the field representatives and Review Committee members. All requests for additional documents and access to the operative ACGME personnel were rejected. Questions posed about destruction of the operative field representative documents were not substantively answered. *See* Exs. 23, 25, 29

21. In denying Sea Mar's request for more documents and information, ACGME misconstrued its own appeals procedures to limit Sea Mar's rights. ACGME's policies say that, on appeal, ACGME's Appeals Panel shall base its recommendation on "[t]he documents comprising the . . . program file and the record of the Review Committee's actions, together with the oral and written presentations [by Sea Mar and ACGME] to the Appeals Panel." Ex. 17 at 119. ACGME's policies and procedures require the Appeals Panel to determine whether the accreditation withdrawal is supported by "substantial, credible, and relevant evidence" and whether "there has been substantial compliance" with ACGME's administrative procedures. *Id.* at

DECLARATION OF TYLER LAWRENCE – 7
(No. 2:24-cv-896)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

21. Without the information underlying the findings in the Site Visit Report or the actual record of the Review Committee's decision-making, Sea Mar is left with no meaningful way to understand or contest what the field representatives were told during the site visit or what information the Review Committee relied upon, much less adequately respond to the Review Committee's findings as to whether they are based upon substantial, credible and relevant information, which is the inquiry that the Appeals Panel is charged, by ACGME policy, with making. Ex. 17 at 143.

22. And there is plenty of reason to believe the field representatives' citations were baseless, meritless, and derived from misconstrued interviews and interpretation rather than specific and credible information provided by the interviewees.

23. By way of example rather than an exhaustive list, ACGME issued multiple citations to Sea Mar for alleged deficiencies in the planned but not fully implemented Rural Pathway program. Ex. 16 at 2. The Rural Pathway program does not yet exist (and did not exist at the time of the site visit), has enrolled no residents and has assigned no residents to its planned sites, and was not to become an active as part of the Family Medicine Residency Program until the summer of 2025, when I understand it would require ACGME's review and approval, which Sea Mar has not yet sought. For instance, in one such citation, the Review Committee faulted us for not yet procuring a so-called "program letter of agreement' with a hospital that served only the planned rural pathway sites. *Id*. But there was no requirement or need for such an agreement yet as the hospital was not being utilized by the Family Medicine Residency Program.

24. A citation references an ACGME guideline that the family medicine practices within a residency program "have [] mission statement[s]" and notes that "it could not be verified by the program director that [the Family Medicine Residency Program] has a mission statement other than the overall institution's mission statement." Ex. 16 at 2. But the citation fails to explain how or why Sea Mar's own mission statement, adopted by all of Sea Mar's practices, is insufficient or noncompliant. *Id*.

DECLARATION OF TYLER LAWRENCE – 8
(No. 2:24-cv-896)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

25. Other citations allege noncompliance based on the results of Sea Mar resident and faculty surveys, while other citations inexplicably failed to account for those very same resident and faculty survey results that confirmed substantial or complete compliance on cited issues. Ex. 16 at 3–4, 6, 8–11. Indeed, all the citations ignored or overlooked virtually any inconsistent or contrary piece of documentary evidence and any communications submitted by Sea Mar to the field representatives and ACGME, without comment or justification. And of course, ACGME has refused to provide Sea Mar with the corresponding notes (which indeed might have already been destroyed) that might address why they discounted those communications or documents.

26. ACGME also cited the Family Medicine Residency Program for "ha[ving] had three [program directors] over the last three years." Ex. 16 at 3. But while the program did have three program directors, that is because the founding director retired during that period and was replaced on an interim basis for the time period during which I understand that a search for a permanent replacement was conducted. Once the search was completed, again in the three-year period, the current, permanent director was appointed. This citation would find apparently fault with any orderly transition of program directors at any time.

27. Other citations directly contradict the findings of the field representatives and cite Sea Mar for noncompliance on issues where the field representatives confirmed Sea Mar was in substantial or full compliance. In one citation, the field representatives found that 73% of residents indicated in the resident survey that they experienced four or more days off per twenty-eight-day period, but the letter of notification inexplicably concluded that the "the recent 2023 Resident Survey reflected, based upon peer judgment, noncompliant responses in this domain." *Compare* Ex. 26 at 36 *with* Ex. 16 at 11.

28. In another citation, the field representatives found that the Family Medicine Residency Program had adequate administrative support, but the letter of notification nonetheless faulted Sea Mar for inadequate support because "it could not be verified" how much time the program coordinator devoted to managing each clinic, without explanation as to if any efforts were

DECLARATION OF TYLER LAWRENCE – 9
(No. 2:24-cv-896)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

made to verify the information and, if so, what was entailed. *Compare* Ex. 26 at 14 *with* Ex. 16 at 4. Yet another citation faulted the program for not having residents see patients via telehealth, even though the citation itself noted that "the annual data indicates that the residents see patients via telehealth technology;" but without the slightest attribution, the field representatives said that during the site visit "it was reported" otherwise. Ex. 16 at 5.

29. ACGME also alleged that the Family Medicine Residency Program is not in compliance with policies that are nearly identical to institutional policies with which ACGME expressly commended Sea Mar for complying just weeks before the site visit. For example, the field representatives confirmed that each resident's panel of patients was large enough, but the program was nonetheless cited because, "based upon peer judgment, the program did not provide a resident panel of sufficient size." *Compare* Ex. 26 at 20 *with* Ex. 16 at 5. The citation is inconsistent not only with the field representatives' express findings but with Sea Mar's institutional reaccreditation, which required ACGME to determine that residents' clinical and educational work panels were consistent with the program requirements.

30. Sea Mar was also cited for activities that are expressly allowed by ACGME's policies. The Family Medicine Residency program was cited because residents periodically perform non-physician tasks like patient scheduling, even though ACGME's family medicine program requirements state that it is acceptable for residents to occasionally perform these types of functions. *Compare* Ex. 16 at 5 *with* Ex. 18 at 54.

31. Another ACGME citation faulted Sea Mar because the program director for the Family Medicine Residency Program allegedly did not routinely evaluate the residents. But the applicable ACGME guideline requires the program director "*or their designee*, with input from the Clinical Competency Committee" to perform this function. Ex. 16 at 6–7. At Sea Mar, resident evaluations were conducted by the site advisors (i.e., the program director's designees) and by the Clinical Competency Committee. The program director is a participating member of the Clinical Competency Committee and fully participated in its evaluation function.

DECLARATION OF TYLER LAWRENCE – 10
(No. 2:24-cv-896)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

32. Four different citations found that Sea Mar failed to assess specialty specific ACGME milestones that reflect development of the resident's skill and progression and share them with the residents. Ex. 16 at 7–8. However, Sea Mar provided ACGME in the ordinary course with its evaluation records that confirmed that the evaluations reflected and used the ACGME-specified milestones and confirmed the residents' review of them.

33. Almost half of the citations were based on non-quoted alleged and briefly summarized communications made ostensibly by unidentified residents and faculty during the site visit. *See generally* Ex. 16. No notes of those interviews were among the materials in the appeal file provided to the ACGME Review Committee or to Sea Mar, and reportedly were destroyed by the field representatives.

34. Only one of the citations made any mention of the possibility of adverse patient outcomes, but it does so only suggestively and without any citation to any supporting or objective indicia or record of adverse patient outcomes presented to the Review Committee or Sea Mar. Ex. 16 at 8. Sea Mar is unaware of any such adverse event and, had it or they been significant, Sea Mar would have been notified in the ordinary course through the standard quality assurance mechanisms of the responsible hospital or clinic. Additionally, the finding related to allegedly inadequate supervision and was founded on the vague, unattributed, and inscrutable statement that "it was suggested by some interviewed that negative outcomes for patients were also a result of concerns about faculty competency." This finding is rebutted by the resident survey, where a majority of the residents confirmed compliance and a level of supervision appropriate to the residents' level of experience. Those survey findings are not mentioned in the letter of notification citation or the underlying Site Visit Report.

35. After Sea Mar's request to expedite the appeal hearing, the ACGME delayed the original appeals panel hearing that was originally scheduled for July 17, 2024, to August 2, 2024. Ex. 27. After the hearing, the appeals panel will have to file a report and recommendation for the ACGME board to take final action. ACGME has informed Sea Mar that such final action will

DECLARATION OF TYLER LAWRENCE – 11
(No. 2:24-cv-896)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

likely not occur until the board's September 28, 2024 meeting—three months after the Family Medicine Residency Program loses its accreditation.

36. The appeal file has been curated by ACGME without Sea Mar's input or contributions, and lacks any minutes or substantive notes of the Review Committee's decision or communications from or among its members or between the members and the field representatives related to the withdrawal of accreditation decision reached at the Review Committee's April 18, 2024 meeting. Sea Mar's request to access those documents was rejected by ACGME on the ostensible basis that it has provided Sea Mar with the only documents it feels it was obligated to provide. Ex. 25 at 1–3.

37. Sea Mar also has been consistently denied critical information about the de-accreditation decision and the appeals process. ACGME refuses to identify which materials have been shared between the Review Committee and the appeals panel, how the appeals panelists have ruled in prior appeals, and the applicable standard of review that the panel will apply. Exs. 23, 25, 27.

38. ACGME's sudden de-accreditation decision has had severe consequences for the Family Medicine Residency Program. Sea Mar had a moral and ACGME-policy obligation to immediately notify all existing residents and applicants to the Family Medicine Residency Program of the accreditation withdrawal. Indeed, ACGME made clear that Sea Mar could not appeal the accreditation decision without first confirming that Sea Mar provided suitable notice of the adverse action to all applying, incoming, and incumbent residents and faculty and would assist residents in outplacement. As of the date of the filing of this declaration, 20 of the program's 22 current first- and second-year residents and 10 of its 12 incoming first-year residents have signed contracts to begin or continue their residencies at other institutions, disrupting and inflicting a discontinuity on their training. If the accreditation withdrawal remains effective on June 30, 2024, the rest of the residents are expected to follow suit as they will need to change programs to finish a residency program that permits them to take their specialty boards. Sea Mar has also experienced

DECLARATION OF TYLER LAWRENCE – 12
(No. 2:24-cv-896)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

attrition of its program faculty and non-Sea Mar facilities like Providence Regional Medical Center Everett because of the accreditation withdrawal, where they were planned to be part of the program over the long term, leaving the program without its site for inpatient-training rotations in obstetrics, surgery, family medicine, intensive care, and emergency medicine. Because the program was firmly integrated into Sea Mar's clinical services, Sea Mar will need to contract with other providers to ensure that we have the resources necessary to address the needs of our otherwise medically underserved patient base without the presence of certain faculty and without residents. Members of the community who came to rely upon the residents and faculty for their medical services will be adversely affected. Although the process to this point has dismantled the program as there are now almost no residents, few faculty, and no hospital partner for the inpatient component of training, Sea Mar will suffer long-term reputational harm if the accreditation withdrawal takes effect on June 30, 2024, without a meaningful opportunity to overturn that decision before it takes effect.

39. There is a tremendous difference between accreditation withdrawal and some lesser sanction such as continued accreditation with warning or probationary accreditation, and, as explained above, that difference in accreditation status is critical to federal and state funding. The differences also adversely affect Sea Mar's ability to marshal its limited resources to maintain and improve the training program while incurring the costs and burdens, of simultaneously re-applying for ACGME accreditation. In short, ACGME's withdrawal of accreditation negatively affects Sea Mar, its Family Medicine Residency Program, the residents, the faculty, the non-Sea Mar facilities and, perhaps most importantly, the communities that have come to rely upon the program and the health care service and training it delivers.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

BY: _____
Tyler Lawrence

DATED: 6-21-2024

DECLARATION OF TYLER LAWRENCE – 13 (No. 2-24-cv-896)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

# CERTIFICATE OF SERVICE

I certify under penalty of perjury that on June 21, 2024, I caused the following to be served the foregoing DECLARATION OF TYLER LAWRENCE IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION by the method(s) indicated:

| | |
|---|---|
| Douglas Carlson<br>**DOUGLAS CARLSON LLC**<br>c/o Accreditation Council for Graduate Medical Education<br>401 North Michigan Avenue, Suite 2000<br>Chicago, IL  60611<br>Tel.: (312) 241-1166<br>Email:  carlson@dougcarlsonlaw.com<br><br>*Attorney for Accreditation Council for Graduate Medical Education* | ___  Via hand delivery<br>___  Via U.S. Mail, 1st Class, Postage Prepaid<br>___  Via Overnight Delivery<br>___  Via Facsimile<br>_X_  Via Email<br>___  Other: _____ |
| Vanessa Soriano Power<br>**STOEL RIVES LLP**<br>600 University Street, Suite 3600<br>Seattle, WA 98101<br>Email: vanessa.power@stoel.com<br><br>Nathan Shafroth<br>Doug Sprague<br>**COVINGTON & BURLING LLP**<br>415 Mission St., Ste. 5400<br>San Francisco, CA 94105<br>Email: nshafroth@cov.com<br>Email: dsprague@cov.com<br><br>*Attorneys for Accreditation Council for Graduate Medical Education* | ___  Via hand delivery<br>___  Via U.S. Mail, 1st Class, Postage Prepaid<br>___  Via Overnight Delivery<br>___  Via Facsimile<br>_X_  Via Email<br>___  Other: _____ |

DATED this 21st day of June, 2024.

*s/ Matthew P. Gordon*
Matthew P. Gordon

CERTIFICATE OF SERVICE
(No. 2:24-cv-896)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000