1

2

THE HONORABLE JAMAL N. WHITEHEAD

3

4

5

6

7                       UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF WASHINGTON
8                                AT SEATTLE

9   SEA MAR COMMUNITY HEALTH                Case No. 2:24-cv-00896
    CENTERS,
10                                           OPPOSITION TO MOTION FOR
                    Plaintiff,               TEMPORARY RESTRAINING ORDER
11                                           AND PRELIMINARY INJUNCTION
          v.
12
    ACCREDITATION COUNCIL FOR
13  GRADUATE MEDICAL EDUCATION,

14                  Defendant.

15

16

17

18

19

20

21

22

23

24

25

26

RESPONSE TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION- i

1

## **TABLE OF CONTENTS**

2

3

INTRODUCTION ............................................................................................................ 1

4

FACTUAL BACKGROUND ........................................................................................... 2

I.   ACGME ................................................................................................................. 2

5

II.   ACGME Accreditation Standards and Policies ................................................... 3

6

III.   Sea Mar's Accreditation History ......................................................................... 4

IV.   February 2024 Site Visit ...................................................................................... 5

7

V.   Committee Review ............................................................................................... 6

8

ARGUMENT ................................................................................................................... 8

I.   Legal Standard ..................................................................................................... 8

9

A.   Likelihood of Success on the Merits .............................................................. 9

10

i.   Sea Mar Is Not Likely to Succeed on Its Common-Law Due Process Claims. ............... 9

ii.   Sea Mar Is Not Likely to Succeed on Its Consumer Protection Claim. ........................ 14

11

B.   Sea Mar Will Not Suffer Irreparable Harm Absent an Injunction ................... 16

12

C.   The Balance of the Equities Does Not Tip in Sea Mar's Favor ....................... 18

D.   An Injunction Is Not in the Public Interest. .................................................... 19

13

II.   Sea Mar's Procedurally Improper Request for Expedited Discovery Should Be Rejected. . 20

14

CONCLUSION ................................................................................................................. 21

15

16

17

18

19

20

21

22

23

24

25

26

RESPONSE TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION- i

**STOEL RIVES** LLP
**ATTORNEYS**
**600 University Street, Suite 3600, Seattle, WA  98101**
*Telephone 206.624.0900*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## INTRODUCTION

The Court should deny Sea Mar's request—made on days' notice—that the Court suspend the Accreditation Council for Graduate Medical Education's ("ACGME") de-accreditation procedures and substitute its own judgment for that of the trained medical professionals who determined it was necessary to withdraw accreditation from Sea Mar's Family Residency Program.[1]

The ACGME's decision was not made lightly, and was taken only after the ACGME had provided Sea Mar—over the course of years—with multiple notices of its deficiencies, encouraged specific improvements, and consistently followed its normal procedures for determining the adequacy (in in this case, gross inadequacy) of training programs for the next generation of doctors. In the course of this process, multiple layers of medical professionals found and confirmed scores of deficiencies in Sea Mar's program, which if allowed to continue past the current academic year would pose significant risks to patient safety and medical resident education. It is manifestly in the public interest for the ACGME's institutional judgment of these imminent dangers not to be reversed by non-medical professionals.

Sea Mar's request that the Court overrule ACGME's judgment on a summary and emergency basis is even less warranted. Sea Mar manufactured this "emergency." It received notice of ACGME's decision in April, but waited until late June, just days before the decision becomes final, to file its lawsuit. And still it faces no imminent risk of irreparable harm. ACGME's withdrawal of accreditation means only that Sea Mar cannot teach medical residents in the next academic year, but Sea Mar admits that all but two of next year's residents have already left the program. ACGME accreditation is not required for Sea Mar to employ practicing physicians to provide care to its patients, so Sea Mar's rhetoric about the delivery of medical services to marginalized communities is misleading and misplaced.

Sea Mar is in any event unlikely to succeed on the merits of its common-law Due Process and consumer protection claims. Neither the Ninth Circuit nor any Washington court has recognized common-law Due Process claims against non-Governmental defendants, and those courts that have recognized such claims agree that a court's due process review is narrow and

---

[1] "Sea Mar" is Plaintiff Sea Mar Community Health Centers, and "ACGME" is Defendant Accreditation Council for Graduate Medical Education.

RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION- 1

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

1  asks only if the defendant followed its own procedures.  The ACGME has done so here, and
2  because its procedures are fair and non-arbitrary—and provided Sea Mar multiple points for
3  input—Sea Mar's consumer protection claim is also unlikely to succeed.

4                              **FACTUAL BACKGROUND**

**I.      ACGME**

5          ACGME is an independent, 501(c)(3), not-for-profit corporation organized under Illinois
6  law, with its sole office in Chicago. Declaration of Eileen Anthony ("Anthony Decl.") ¶ 4.
7  ACGME is not a government entity.

8          The ACGME oversees the accreditation of graduate medical education (residency and
9  fellowship) programs in the United States and its territories.  *Id.* ¶ 5.  It accredits over 13,000
10 residency and fellowship programs, with over 150,000 residents and fellows in the United States
   and its territories.  *Id.* ¶ 9.[2]  The ACGME has no authority or ability to license or de-license
11 medical providers.  *Id.* ¶ 12.  If a residency program lacks ACGME accreditation, its residents
12 would not be eligible for physician training licenses or full physician licenses.  In addition, the
13 residency program's sponsoring institution would not receive government funding specifically
14 earmarked for such education.  *Id.*  But assuming that a medical institution employs fully
15 licensed physicians and meets other requirements over which the ACGME has no oversight, the
16 institution is free to provide medical care to patients, *id.*—as Sea Mar did for decades before first
   applying for ACGME accreditation in 2014, *see* Complaint, ECF 1 ¶¶ 22–24.
17
18         The essence of graduate medical education is the participation by residents in patient care
19 under the supervision of qualified residency program personnel.  Anthony Decl. ¶ 7.  As
   residents become more capable at clinical performance, they are entrusted with greater patient
20 care responsibility.  *Id.*  Effective residency training supports patient safety in the short-term
21 through provision of adequate supervision to residents, and in the long  term by equipping
22 residents to practice independently at the completion of their program.  *See* Declaration of Dr.
   Louito Edje ("Edje Decl.") ¶¶ 24, 38.
23

24 ─────────────────────
   [2] A residency program is a structured educational activity designed to prepare physicians to enter
25 the unsupervised practice of medicine in a primary specialty.  Residency programs last from
   three to seven years, depending on the specialty.  A fellowship program provides advanced
26 education and training in progressive levels of specialization, following the completion of
   training in a primary specialty. Anthony Decl. ¶¶ 6, 8.  Only residency training is at issue here.

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION - 2

## II.     ACGME Accreditation Standards and Policies

The ACGME has extensive policies and procedures regarding the accreditation of residency programs and the institutions that sponsor them.  *See* Compl. Ex. 1, ECF 1-1 ("ACGME Policies").  ACGME accreditation is achieved through a voluntary process of evaluation and review based on publicly program requirements (accreditation standards).  *See* ACGME Policies, 21.00.  The program requirements for family medicine training programs ("Program Requirements") include requirements applicable to all residency programs as well as specialty-specific requirements.  *See* ECF 4-1 at 250, Ex. 18 ("Program Requirements").

Each ACGME-accredited residency program is overseen by a "Sponsoring Institution," typically a hospital or medical school.  Anthony Decl. ¶ 18.  Each Sponsoring Institution must achieve and maintain institutional accreditation before any of its sponsored programs can be accredited by the ACGME.  *Id.*  The accreditation requirements for institutional accreditation are different from those for particular specialty programs.  *Id.* ¶ 20.[3]  ACGME's institutional requirements focus on the operations of the Sponsoring Institution rather than the clinical and didactic activities of its residency programs.  Accreditation of individual specialty programs, on the other hand, addresses issues such as the program's curriculum components, the process for evaluating residents and faculty, clinical education, supervision, and patient safety.  Anthony Decl. ¶ 21.

Applications for accreditation of an individual specialty program (such as Sea Mar's family medicine residency program) are initiated by the designated institutional official of the program's Sponsoring Institution.  *Id.* ¶ 22.  The accreditation process for specialty programs is overseen by specialized Review Committees within ACGME.  Each Review Committee includes physician experts from the applicable specialty, and each Committee sets accreditation standards (subject to ACGME Board approval) and provides peer evaluation of specialty and subspecialty residency and fellowship programs.  *Id.* ¶ 13.  The Review Committee for Family Medicine is

---

[3] As explained by Eileen Anthony, the Executive Director of the Review Committee for Family Medicine, because the accrediting process for Sponsoring Institutions is separate from the accrediting process for specialty programs within those institutions, the withdrawal of the accreditation for Sea Mar's family medicine residency program is not inconsistent with the continued accreditation of Sea Mar as a Sponsoring Institution in early 2024.  Anthony Decl. ¶ 20 & n.2.

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION - 3

comprised of 14 voting members (12 family medicine physicians, one third-year family medicine resident, and one public member—all volunteers).  *Id.* ¶ 14.

Ongoing data collection and analysis of each program's educational outcomes is inherent in ACGME accreditation.  Each specialty review committee performs an annual evaluation of the graduate medical education programs within its specialty, tracking trends in key performance areas through mechanisms such as resident and faculty surveys (results of both are available to the residency program).  *Id.* ¶ 15.  Each Review Committee provides ongoing accreditation oversight with respect to whether programs within the Committee's ambit are complying with ACGME's published standards for quality education and a safe and effective learning environment for residents.  *Id.* ¶ 15.  ACGME's accreditation process emphasizes the responsibility of accredited programs for the quality and safety of the environment for learning and patient care.  The Review Committee for Family Medicine reviews over 700 accredited programs (residency and fellowship) annually.  *Id.* ¶ 16.

**III.    Sea Mar's Accreditation History**

Sea Mar's family medicine residency program first applied for ACGME accreditation in 2014.  ECF 4-1 at 45, Ex. 9 ("Program History Summary"), at 2.  Its application was initially withheld by the Review Committee for Family Medicine for failure to substantially comply with ACGME's Program Requirements.  Anthony Decl. ¶ 40.  After the program addressed its deficiencies and reapplied, it was granted a status of Initial Accreditation effective July 2015.  *Id.* ¶ 41.  Sea Mar's program maintained a status of Continued Accreditation from 2017 through 2023.  *Id.* ¶ 42.

In 2022, however, the annual data from Sea Mar's family medicine program was flagged by the Review Committee for Family Medicine due to concerning downward performance trends made apparent by the results of the program's annual resident survey.  *Id.* ¶ 43.  The resident survey allows residents to share their experiences across eight domains: resources, professionalism, patient safety and teamwork, faculty teaching and supervision, educational content, and diversity and inclusion.  *Id.* ¶ 43.  The Review Committee for Family Medicine identified three concerning trends and areas for program improvement from Sea Mar's 2022 resident survey: patient safety, professionalism, and resources.  *Id.* ¶ 44.  On February 6, 2023, the Review Committee identified these concerns in a letter to Dr. Ramos Jimenez, the director of

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION - 4

**STOEL RIVES** LLP
ATTORNEYS
**600 University Street, Suite 3600, Seattle, WA  98101**
*Telephone 206.624.0900*

Sea Mar's family medicine residency program, so that Dr. Jimenez and Sea Mar could take steps to improve. *Id.* ¶ 44.

Conditions at the program did not improve. Instead, the results of the 2023 resident survey were even worse. The 2023 survey yielded very low scores in patient safety and teamwork, professionalism, and faculty teaching and supervision. The residents' overall opinion of the program was also very low. The deteriorating survey results, and their comparison to the survey results of other family medicine residency programs nationwide, are illustrated below:

## 2022 Resident Survey



## 2023 Resident Survey



*Id.* ¶¶ 45-48. In light of these survey results, the Review Committee for Family Medicine undertook further review of Sea Mar's family medicine residency program. *Id.* ¶ 51.

## IV.   February 2024 Site Visit

As part of this review, and as provided for by ACGME's Policies, two ACGME field representatives conducted a remote site visit of Sea Mar's program on February 20, 2024. Declaration of Dr. Pamela Royston ("Royston Decl.") ¶ 10. The two field representatives who conducted the visit had extensive review experience, including within family medicine: since the start of 2023, these representatives had conducted 16 combined site visits of family medicine programs; and before February 20, 2024, they had conducted more than 300 combined site visits

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION - 5

as ACGME field representatives, *Id.* ¶¶ 5, 35 , and had observed meetings of the Review Committee for Family Medicine.  Moreover, both field representatives had experience working within residency programs: one as a program director, and one as the designated institutional official of a Sponsoring Institution.  *Id.* ¶ 4.

Even the down-trending results from the previous two annual resident surveys did not prepare the field representatives for the conditions they encountered in their Sea Mar site visit. Dr. Royston, one of the field representatives, was "shocked and appalled by what we learned during our site visit," Royston Decl. ¶ 15, and reported that, during the course of her 235 site visits and 34 years in the field of graduate medical education, "[t]he seriousness and number of areas of non-compliance were the worst [she had] experienced," and that Sea Mar's family medicine residency program was "the worst program" she had seen, *id.* ¶¶ 15, 35.

During the site visit, the field representatives randomly selected 21 of the 32 program residents to be interviewed on a confidential basis, individually and in small groups.  Declaration of Dr. Louito Edje ("Edje Decl.") ¶ 20.  The residents consistently reported that the program's learning and working environment was hostile, placing responsibility for this deficiency on the program's director, Dr. Jimenez. Royston Decl. ¶¶ 15, 26, 27, 31.  Several faculty members and almost all residents described Dr. Jimenez as inflexible, harsh, and detached from the program. ECF 4-1 at 349, Ex. 26 ("Site Visit Report), at 4.  Residents and faculty explained that they feared Dr. Jimenez, and were not comfortable voicing concerns about the program to him, because he had engaged in retribution, for example by firing the program's previous coordinator after the coordinator repeatedly raised concerns that the program was out of compliance with ACGME requirements.  *Id.* at 3–4, 32–33.  The residents also reported that they felt inhibited in their conversations with the program's advisors because two of the advisors were Dr. Jimenez's brothers—whom he had hired.  *Id.* at 27; Royston Decl. ¶ 30.

V. **Committee Review**

The first step of the committee review process is a pre-Review Committee meeting, during which two members of the Review Committee independently review the site visit report, the resident and faculty surveys, and other information voluntarily submitted by the program. Anthony Decl. ¶ 53.  Each of the two reviewers then independently assesses whether the program is in substantial compliance with the family medicine Program Requirements.  *Id.*  The two reviewers then come together, reconcile their assessments, and orally present their

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION - 6

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

assessments and recommendations to the full Review Committee.  *Id.* ¶ 54.  The full Review Committee asks questions of the reviewers, deliberates, and then reaches a decision with respect to an accreditation decision, an effective date, and the issuance of any citations (indicating a lack of substantial compliance with specific Program Requirements).  *Id.* ¶ 55.  The Review Committee acts upon a majority vote.  *Id.* ¶ 56.  In this case, however, the vote was unanimous: because Sea Mar's family medicine residency program presented urgent risks to patient health and resident training, the program's accreditation was withdrawn, effective at the close of the current academic year, and the program was issued 47 citations. *Id.* ¶ 56.

Dr. Edje, a family medicine specialist who serves on the Review Committee, identified several citations issued to Sea Mar's family medicine residency program that reflected a lack of substantial compliance with ACGME requirements in a manner that directly undermined patient safety.  Edje Decl. ¶¶ 25–32.  For example, several program faculty members expressed discomfort about leading residents in in-patient rounds (hospitalized patients) because they were inexperienced in in-patient services: this meant that, by their own admission, faculty members were supervising residents in settings in which they felt themselves to be incompetent to practice.  According to Dr. Edje, this was "a direct threat to patient safety" and increased the risk of adverse patient outcomes.  *Id.* ¶ 28.  As another example of the program threatening patient safety, the Review Committee found that residents were conducting rounds only once or twice a week; without at least daily rounds, however, supervising physicians are unable to meet newly-admitted patients, meaning that supervisors may be guiding the treatment of patients they have never examined, and that patients admitted for short hospital stays might not be seen by a supervising physician during their entire stay.  *Id.* ¶ 28.  The Review Committee reasonably concluded that these and other defects in Sea Mar's family medicine residency program directly threatened patient safety.  *Id.* ¶¶ 23–24.

Dr. Edje also identified several citations that seriously undermined resident training and the program's educational environment.  As described above, several faculty members reported that they felt incompetent to practice in the areas they were supposed to be teaching.  *Id.* ¶ 35.  The infrequency of residents conducting rounds also meant that they were denied the opportunity to learn from daily exposure to their supervisors.  *Id.* ¶¶ 36-37.  Another example of noncompliance that affected residency training was the program's policy of scheduling each patent for only a 15-minute visit, regardless of the patient's medical issue, and even for a first

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION - 7

1   appointment.  In addition to the arbitrariness of this scheduling practice, such short visits do not

2   provide adequate time for an educational approach to patient care or for clinical point-of-care

3   learning.  *Id.* ¶¶ 35–36.  Further, the program's hostile learning environment meant that residents

4   were fearful of reporting concerns, including about their own learning, for fear of retribution

    from the program's director, Dr. Jimenez, based on his prior conduct.  *Id.* ¶ 30.

5
    Because the Review Committee found that the program's lack of substantial compliance
6
    with ACGME requirements seriously jeopardized patient safety and resident training, the
7
    Committee unanimously voted to withdraw the program's accreditation.  Given the dire state of
8
    the program, and as authorized by ACGME Policies, Anthony Decl. ¶ 35, the Review Committee
9
    unanimously determined that withdrawal should be effective June 30, 2024, at the end of the
10
    current academic year; any continuation of the program would pose urgent threats to patient

11  safety and resident education, *Id.* ¶ 56, harming the public interest.[4]

12  The Review Committee's decision is not permanent.  ACGME Policies expressly allow a

13  program that loses its accreditation to reapply for accreditation, even within two years of

    withdrawal, so long as the program addresses in its application the citations that led to
14
    withdrawal.  Anthony Decl. ¶ 38.
15
                                        **ARGUMENT**
    **I.    Legal Standard**
16
         "A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter*
17
    *v. NRDC, Inc.*, 555 U.S. 7, 24 (2008).  "A plaintiff seeking a preliminary injunction must
18
    establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in
19
    the absence of preliminary relief, that the balance of equities tips in his favor, and that an
20
    injunction is in the public interest."  *Id.* at 20.  "The standard for issuing a temporary restraining
21
    order is the same as that for the issuance of preliminary injunction."  *Dahlstrom v. Sauk-Suiattle*
    *Indian Tribe of Wash.*, 2017 WL 413201, at *2 (W.D. Wash. Jan. 31, 2017).  Because Sea Mar
22

23  _____

    [4] ACGME Policies provide that a Review Committee has the discretion to withdraw a program's
24  accreditation if the Review Committee determines that a program has failed to demonstrate
    substantial compliance with the applicable Program Requirements.  Anthony Decl. ¶ 35.  Sea
    Mar is correct that accreditation may *also* be withdrawn, under certain circumstances, due to
25  "egregious non-compliance with accreditation requirements," Compl. ¶ 65, but that provision of
    ACGME's Policies (expressly deemed a "special circumstance[]," ACGME Policies, 19.100) is
26  irrelevant here because Sea Mar's accreditation was in fact withdrawn, under standard ACGME
    Policy, *id.* 19.90, as a result of the program's failure to demonstrate substantial compliance with
    the applicable Program Requirements.

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION - 8

can establish none of these factors, the Court should reject Sea Mar's requests that the Court stay the institutional judgment of ACGME's medical experts and allow Sea Mar's dangerous program to continue.

### A.      Likelihood of Success on the Merits

Likelihood of success on the merits "is a threshold inquiry and is the most important factor"; "a court need not consider the other factors if a movant fails to show a likelihood of success on the merits." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal quotations and citation omitted).  Sea Mar's motion fails at this threshold because Sea Mar is not likely to succeed on the merits of any of its claims.

#### i.      *Sea Mar Is Not Likely to Succeed on Its Common-Law Due Process Claims.*

Sea Mar is not likely to succeed on its claim that ACGME violated Sea Mar's due-process rights, ECF 3 at 12-18, because common-law due process claims are not viable under Ninth Circuit or Washington law, and even if they were, the standard of review for such claims is highly deferential and focuses narrowly on whether the accrediting body followed its own procedures.  Here, the withdrawal of accreditation for Sea Mar's program was fully consistent with ACGME's procedures—procedures that provided Sea Mar multiple opportunities to improve its performance in advance of the site visit, afforded Sea Mar several opportunities for input in the accreditation process, and provide the opportunity for reaccreditation in the future.

Sea Mar concedes that, because ACGME is not a state actor, constitutional due process principles are not implicated here.  *See id.* at 12; *McKeesport Hosp. v. Accreditation Council for Graduate Medical Educ.*, 24 F.3d 519, 526 (3d Cir. 1994) (holding that accreditation decisions by ACGME are not state action).  But Sea Mar cites out-of-circuit and out-of-state authority to argue that ACGME is a "quasi-public" organization with a "common law duty . . . to employ fair procedures when making decisions affecting [its] members." ECF 3, at 12-13 (quoting *Prof. Massage Training Ctr., Inc. v. Accreditation Alliance of Career Schools and Colleges*, 781 F.3d 161, 169 (4th Cir. 2015)).

Common-law due process claims have not been recognized by the Ninth Circuit or by Washington state courts.  The Ninth Circuit, in 2020, "express[ed] no opinion on the validity of common law due process claims challenging decisions relating to accreditation."  *Nat'l Univ. of*

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION - 9

*Health Sciences v. Council on Chiropractic Educ.*, 980 F.3d 679, 681 (9th Cir. 2020).  And

although Sea Mar claims that "Washington is among the states recognizing [a] common-law due-

process duty," ECF 3, at 16, that claim finds no support in the two seventy-year old cases on

which Sea Mar purports to rely.  *See La Gorce Country Club v. Cerami*, 74 So.2d 95, 96 (Fla.

1954) (en banc) (observing, ***without mentioning Washington***, that the "majority[] and . . . better-

reasoned [view is that] if expulsion of a club member is accomplished without notice and

hearing, the denial of these minimum procedural safeguards is violative of the principles of

natural justice and judicial intervention is indicated"); *Schroeder v. Meridian Imp. Club*, 36

Wash.2d 925, 933-34 (1950) (explaining that private organizations are entitled to "to make

[their] own rules and by-laws," and that there was nothing improper about the defendant club's

policy of summarily expelling members who failed to pay their dues, but noting **in *dicta*** that a

hearing would have been required for "an expulsion for crime or misconduct inimical to the

organization's being"); *see Mayer v. Pierce County Med. Bureau, Inc.*, 80 Wash. App. 416, 425

(1995) (*Schroeder* is not applicable outside the context of membership expulsion).[5]

But even if a common-law due process claim against a private accrediting body were

cognizable under Ninth Circuit or Washington law, other courts that have permitted such claims

make clear that the Court's review should be "very deferential" and should focus narrowly on

"whether the accrediting body followed its own rules."  *Western State Univ. of Southern Cal. v.

American Bar Ass'n*, 301 F. Supp. 2d 1129, 1135 (C.D. Cal. 2004); *see also Paine College v.

Southern Ass'n of Colleges and Schools Commission on Colleges, Inc.*, 810 F. App'x 852, 857

(11th Cir. 2020) (unpublished) (declining to decide whether a common-law due process right

exists, but concluding that such a claim would be decided under a "deferential standard" asking

only "whether the decision of an accrediting agency . . . is arbitrary and unreasonable or an abuse

of discretion and whether the decision is based on substantial evidence.") (quotation marks

omitted); *Thomas M. Cooley Law School v. American Bar Ass'n*, 459 F.3d 705, 712-13 (6th Cir.

2006) (recognizing common-law due process claims, and observing that "great deference should

be afforded the substantive rules of [accrediting] bodies and courts should focus on whether an

accrediting agency . . . followed a fair procedure in reaching its conclusions"); *Wilfred Academy*

---

[5] Sea Mar's program is not being expelled from any organization: it is free to pursue an internal
appeal of ACGME's accreditation decision and, after June 30, it is free to reapply for
accreditation in accordance with ACGME's Policies.

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION - 10

**STOEL RIVES** LLP
ATTORNEYS
**600 University Street, Suite 3600, Seattle, WA  98101**
*Telephone 206.624.0900*

*of Hair and Beauty Culture v. Southern Ass'n of Colleges and Schools*, 957 F.2d 210, 214 (5th Cir. 1992) ("In reviewing an accrediting association's decision to withdraw a member's accreditation, the courts have accorded the association's determination great deference."); *Auburn Univ. v. Southern Ass'n of Colleges and Schools, Inc.*, 489 F. Supp. 2d 1362, 1369 (N.D. Ga. 2002) (courts ensure that association's procedures are "reasonable, while giving deference to the specialized competence of the association") (quotation marks omitted).[6]

Indeed, courts have "invariably" concluded that ACGME's accreditation determinations in particular are entitled to "great deference[] in light of its special expertise in determining professional competency requirements." *Cruz Berrios v. Accreditation Council for Graduate Med. Educ.*, 218 F. Supp. 2d 140, 143 (D.P.R. 2002); *see also McKeesport*, 24 F.3d at 534 (Becker, J., concurring) ("Courts must pay special deference to a professional accreditation organization's substantive decisions in light of the special expertise required to determine professional competency."); *St. Agnes Hosp. of City of Baltimore, Inc. v. Riddick*, 748 F. Supp. 319, 330 (D. Md. 1990) ("Because the development and maintenance of standards for medical training require specialized medical knowledge and expertise, courts must give great deference to the ACGME'[s] judgments.").

The withdrawal of the accreditation of Sea Mar's family medicine residency program was fully consistent with ACGME Policies.  *See* Anthony Decl. ¶ 60.  The program's accreditation was withdrawn only after (1) ACGME provided Sea Mar notice of concerning trends and areas for program improvement from Sea Mar's 2022 resident survey, (2) the program's 2023 resident and faculty surveys showed regression, rather than improvement, from the concerning 2022 results, (3) the program was notified by letter in February 2023 of the Review Committee's concerns with respect to patient safety, professionalism, and resources, (4) two ACGME field representatives conducted a full-day site visit, in accordance with ACGME Policies, which

---

[6] The constitutional due process cases cited by Sea Mar, such as *Mathews v. Eldridge*, 424 U.S. 319 (1976) and *Reilly v. State*, 18 Wn. App. 245 (1977), are inapposite.  Those precedents describe the constitutional constraints imposed on a "*governmental*" deprivation of rights. *Mathews*, 424 U.S. at 332 (emphasis added).  As the Sixth Circuit explained, the closer analog to common-law due process is arbitrary-and-capricious review under the Administrative Procedure Act.  *Thomas M. Cooley*, 459 F.3d at 713.  But judicial review of common-law due process claims is even *more* limited than administrative law review because accrediting bodies are private organizations, and common-law due process rights are supported only by courts' "policy decision to ensure that [accrediting] organizations act in the public interest." *Id.*

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION - 11

confirmed that the program maintained a hostile learning environment and was detrimental to both patient safety and resident training, (5) two members of the Review Committee independently reviewed the site visit report, the faculty and resident surveys, and other information submitted by the program, (6) those two reviewers reconciled their views and presented a recommendation to the full Review Committee with respect to an accreditation action and the issuance of citations, and (7) the full Review Committee deliberated, and then unanimously voted to withdraw the program's accreditation effective June 30.

ACGME's policies are reasonable, and they are the product of ACGME's specialized expertise in determining the adequacy of training programs for the next generation of doctors. As a result, and as the cases above demonstrate, ACGME's policies—and its application of those policies in making specific accreditation determinations—are entitled to substantial deference. *See, e.g.*, *Thomas M. Cooley*, 459 F.3d at 712-13 ("great deference should be afforded the substantive rules of [accrediting] bodies," and "judicial review is limited to protecting the public interest"). The public interest here is best served by allowing ACGME to exercise its expertise in determining which specialty programs are equipped to provide adequate patient care and resident training. And it bears emphasis that the ACGME's decision here was not a close call: the Review Committee for Family Medicine voted *unanimously* to withdraw the program's accreditation, effective June 30.

Sea Mar's singular focus on ACGME's internal appeal process is misplaced. Sea Mar ignores all the *other* substantial process that it was afforded before the Review Committee for Family Medicine reached its decision: most notably, the chance to address within the program the Review Committee's concerns expressed in its February 2023 letter of notification, and the full-day site visit, in which the program's faculty and residents had ample opportunity to demonstrate to experienced ACGME field representatives that the program was capable of caring for patients and training its residents.

Sea Mar's attacks on the ACGME appeal process itself is also misplaced. *See* ECF 3, at 15, 17. As part of that process, ACGME convenes a qualified appeals panel; Sea Mar will be given an opportunity to participate in the selection of that panel by striking up to one-third of the potential panelists (which Sea Mar has already done); Sea Mar is given the documents comprising the program's file and the record of the Review Committee's action (this has also

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION - 12

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

already occurred);[7] and Sea Mar may make a written submission to the appeals panel and an oral presentation of up to three hours. *See* ACGME Policies, 20.30.  Although Sea Mar's presentation must be "limited to clarifications of the record," ACGME Policies provide that such clarifications may address the core issue underlying the accreditation decision: namely, whether the program "compli[ed] with the applicable published Requirements for accreditation at the time of the Review Committee review and conferral of the adverse action." *Id.*

The fact that Sea Mar's hearing is scheduled after the effective date of its withdrawal is not inconsistent with ACGME Policies, and this scheduling neither negates all the process that the program already received, nor retroactively renders ACGME's withdrawal-of-accreditation decision unfair or unreasonable.[8]  Indeed, the program is free to forego appeal and reapply for accreditation on July 1, so long as it addresses the 47 citations that, according to a unanimous 14-person committee of experts in medical education, posed serious threats to patient safety and resident training.  *See* ACGME Policies, 18.11.

In sum, the withdrawal of Sea Mar's accreditation was fully consistent with ACGME's procedures.  The Review Committee for Family Medicine unanimously determined that the program's continued operation presented serious threats to patient safety and resident education.  ACGME's procedures and the judgment of the Review Committee are entitled to substantial deference, as the public interest is best served by having medical specialists, not lawyers, determine which specialty programs are equipped to train residents.  In any event, setting deference aside, ACGME's decision to withdraw Sea Mar's accreditation was entirely

---

[7] Sea Mar makes the unfounded and untrue accusation that ACGME may have destroyed evidence. *See* Lawrence Decl. (Dkt. 5) ¶ 33 (alleging that notes of the field representatives who performed the site visit were "reportedly destroyed").  The field representatives' notes have been preserved and were never "reported" to Sea Mar or its counsel to have been destroyed.  Nonetheless, the contemporaneous notes of field representatives are not part of the record evidence subject to review by the Review Committee for Family Medicine, and are not part of the record available in an internal appeal.

[8] The appeals panel submits a recommendation to the ACGME Board of Directors "within 20 days of the hearing," and the "ACGME Board shall act on the appeal at its next regularly scheduled meeting."  ACGME Policies, 20.30(b)(14).  Sea Mar initiated an appeal on May 10, 2024.  At that point, the "next regularly scheduled meeting" of the ACGME Board was June 8, 2024.  Between May 10 and June 8, 2024, there was not enough time to constitute an Appeals Panel, schedule a hearing, hold a hearing, and submit a recommendation to the ACGME Board—even if an Appeals Panel had been specially constituted for this appeal (none of the preexisting appeals-panel dates were scheduled during this period).

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION - 13

reasonable and—given the risks to patient safety and physician education posed by the continuation of Sea Mar's program—necessary to the public interest.  Accordingly, even if common-law due process claims were cognizable under Ninth Circuit and Washington law, Sea Mar would not be likely to succeed on the merits of those claims.

> ### *ii.*     *Sea Mar Is Not Likely to Succeed on Its Consumer Protection Claim.*

To prevail on a Consumer Protection Act ("CPA") claim, a plaintiff must prove each of the following five elements: (1) an unfair or deceptive act or practice (2) occurring in trade or commerce, (3) affecting the public interest; (4) injury to a person's business or property; and (5) causation.  *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 37, 204 P.3d 885 (2009) *citing Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 719 P.2d 531 (1986) ("[P]rivate CPA plaintiffs must establish all five elements.").  The practice at issue here, ACGME's appeal process, is not actionable under at least the first and third CPA elements.[9]

> ### a)     ACGME's Appeal Procedures Do Not Constitute an Unfair or Deceptive Act or Practice.

Sea Mar contends that ACGME's appeal process is unfair because, due to the timing of the appeal, Sea Mar will allegedly be harmed even if it prevails.  See Motion (Dkt. 3) at 18.  A practice may be unfair if it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves ***and not outweighed by countervailing benefits***."  *Klem v. Washington Mut. Bank*, 176 Wn.2d 771, 787, 295 P.3d 1179 (2013) (emphasis added to highlight portion of quote excluded by Sea Mar).  ACGME's appeal procedures are public, reasonable, and have not been departed from here.  The procedures expressly allow withdrawal of accreditation to take effect promptly, even if withdrawal is effective before an appeal has run its course.  That is not unfair under the CPA.  *See Villella v. Pub. Employees Mut. Ins. Co.*, 106 Wn.2d 806, 821, 725 P.2d 957 (1986) (denial of coverage is not unfair or deceptive as long as practice is based on reasonable conduct of insurer, even if denial is ultimately deemed incorrect).  Finally, and significantly, Sea Mar ignores the countervailing benefits of ACGME's accreditation procedures, which ensure that graduate medical education programs are preparing physicians to deliver safe, high-quality medical care.

---

[9] ACGME reserves the right to supplement its defenses to Sea Mar's CPA claim, including challenging additional elements.

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION - 14

**STOEL RIVES LLP**
ATTORNEYS
**600 University Street, Suite 3600, Seattle, WA  98101**
*Telephone 206.624.0900*

1    Sea Mar also contends that ACGME's appeal process is deceptive because a "reasonable

2    consumer would believe that an appeal of adverse action would permit meaningful redress of an

3    erroneous decision." *See* Motion (Dkt. 3) at 18-19.  But a "deceptive act" must have the capacity

4    to deceive a substantial portion of the population and must mislead or misrepresent something of

5    material importance. *Robertson v. GMAC Mortg. LLC*, 982 F.Supp.2d 1202 (W.D. Wash. 2013)

6    (internal citations omitted).  That is not the case here.  There is nothing misleading in ACGME's

7    appeal procedures, which are public and contain certain deadlines for filing an appeal and for an

8    appellate panel's recommendations, but do not mandate that a hearing occur before an

9    accreditation decision is effective.  Contrary to Sea Mar's assertion, the procedures allow for

10   redress: an appeal panel's recommendations on an appeal of accreditation adverse action may

11   include restoring a program to its previous accreditation status. *See* Policies and Procedures

12   (Dkt. 1-1) at Section 20.30(13).  Nor do ACGME's appeal procedures have the potential to

13   deceive a substantial portion of accredited residency programs.  This dispute, and the timing of

14   withdrawal of accreditation in the context of the appeal process, are specific to Sea Mar's

15   Program and the particular failings that caused ACGME's Review Committee to act with haste

16   in withdrawing accreditation to protect the integrity of graduate medical education programming

17   and patient care.  Sea Mar cannot establish an unfair or deceptive act or practice, which is fatal to

18   the CPA claim. *Hangman Ridge*, 105 Wn.2d at 793 (failure to establish any one element is fatal

19   to CPA claim).

                      b)      <u>ACGME's Appeal Procedures Do Not Impact the Public Interest
                              Under the CPA.</u>

         Because the purpose of the CPA is to protect consumers from harmful practices, a

plaintiff must allege an actual or potential impact on the general public, not merely a private

wrong. *McDonald v. OneWest Bank*, 929 F.Supp.2d 1079, 1097 (W.D. Wash. 2013).  "[I]t is the

likelihood that additional plaintiffs have been or will be injured in exactly the same way that

changes a factual pattern from a private dispute to one that affects the public interest." *Hangman

Ridge*, 105 Wn.2d at 790.

         Washington courts employ a non-exclusive four-part balancing test to evaluate whether a

dispute touches on the public interest: "(1) Were the alleged acts committed in the course of

defendant's business? (2) Did defendant advertise to the public in general?  (3) Did defendant

actively solicit this particular plaintiff, indicating potential solicitation of others? (4) Did plaintiff

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION - 15

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

and defendant occupy unequal bargaining positions?"  *Id.* at 790-91.  The purpose of these factors is to assess the likelihood that additional consumers will be injured in exactly the same way as the plaintiff alleges it was.  Where, as here, ACGME does not advertise its services to the public generally, and Sea Mar offers no allegation or evidence that ACGME solicited Sea Mar, specifically, there can be no finding of a relevant public interest impact.  *Michael v. Mosquera-Lacy*, 165 Wn.2d 595, 605, 20 P.2d 695 (2009) (no public interest impact where there was no evidence that defendant "advertised to the public in general or that [defendant] actively solicited [plaintiff] in particular to be a patient.").

The public interest element of the CPA cannot be established for the additional reason that the dispute between the parties is unique.  *See, e.g., Zunum Aero, Inc. v. The Boeing Co.*, 2022 WL 2116678, at *12-13 (W.D. Wash. June 13, 2022) (Boeing's alleged misconduct (misappropriation of trade secrets) was not something that "has or could harm the general public"); *Berger v. Comcast of Penn./Wash./W.V., L.P.*, 2011 WL 4007376 (E.D. Wash. Sept. 8, 2011) (alleged trespass by cable company on land is unique dispute under CPA).  Sea Mar further fails to show a "real and substantial potential for repetition, as opposed to a hypothetical possibility of an isolated unfair or deceptive act's being repeated."  *Eastlake Const. Co., Inc. v. Hess*, 102 Wn.2d 30, 52, 686 P.2d 465 (1984) (plaintiff adequately demonstrated public interest prong where reasonable factfinder could find that "this dispute was . . . part of a protracted course of conduct" which "would establish the potential for repetition.").

### B.     Sea Mar Will Not Suffer Irreparable Harm Absent an Injunction

Sea Mar speculates that the withdrawal of accreditation on June 30 "threatens the very survival of [its] Program and untold damage to Sea Mar's operations and reputation."  Motion (Dkt. 3) at 20.  These hyperbolic claims do not establish irreparable harm.

"The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance."  *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005).  Where the "irreparable harm" has already occurred, the "issuance of a preliminary injunction [is] inappropriate."  *Conte v. Transglobal Assets*, No. 2:12–CV–01005–KJD–VCF, 2012 WL 4092717, at *1-2 (D.N.V. Sept. 17, 2012).  As Sea Mar admits, 20 of the program's 22 current first and second-year residents and 10 of the 12 incoming first-year residents have already signed contracts to pursue their residences elsewhere.  Lawrence Decl. (Dkt. 5) ¶ 38. Without residents, the Program is already effectively

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION - 16

shuttered for the upcoming academic year.  *Id*.  (acknowledging that the process has "dismantled the program as there are now almost no residents, few faulty, and no hospital partner for the impatient component of training").  For the same reason, the potential loss of its hospital partner for "impatient training rotations in obstetrics, surgery, family medicine, intensive care, and emergency medicine" or grant funding for the upcoming academic year[10] is not an imminent harm to the Program.  Enjoining the effective date of withdrawal of accreditation on June 30 will not bring back the departed residents or reverse any reputational impacts Sea Mar's Program has allegedly experienced.

Moreover, "[t]o constitute irreparable harm, an injury must be certain, great, actual and not theoretical."  *Schrier*, 427 F.3d at 1267 (quoting *Heideman*, 348 F.3d at 1189); *Gale Force Nine LLC v. Wizards of the Coast LLC*, No. 2:20-CV-01700-BAT, 2020 WL 7133507, at \*3 (W.D. Wash. Nov. 25, 2020), *report and recommendation adopted*, No. 220CV01700RAJBAT, 2020 WL 7059238 (W.D. Wash. Dec. 2, 2020) ("[S]peculative injury does not constitute irreparable injury[,]").  Sea Mar's loss of its accreditation on June 30 does not necessitate permanent shuttering of the Program.  Under ACGME's policies, Sea Mar may reapply for accreditation as soon as it can demonstrate that it has addressed "each existing citation and issue(s) leading to the Administrative Withdrawal of Accreditation."  *See* ACGME Polices, 18.11.  Should it seek to do so, Sea Mar has a full and fair opportunity to seek re-accreditation and, in the process, to recontract with its hospital partner (or another partner) and reapply for granting funding if it is re-accredited.

Sea Mar is also not entitled to injunctive relief because it has not shown that any alleged future potential reputational harm, future loss of grant funding, or future loss of a hospital partner cannot be remedied by a monetary award.  The mere claim that such harms may result does not establish irreparable harm.  *Schrier*, 427 F.3d at 1267 ("Dr. Schrier makes no attempt to apprise the court of any evidence in the record showing actual or significant risk of loss of prestige, academic reputation, or professional opportunities that cannot be remedied by money damages." (citation and footnote omitted)); *see also Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("[I]t seems clear that the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury."); *Gale Force Nine, LLC*, 2020 WL 7133507, at \*5 (rejecting

---

[10] The loss of grant funding can also be remedied through a monetary award.

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION - 17

1  claims of reputational harm and loss of goodwill where there was "no actual evidence of
2  damage").

3  Finally, Sea Mar's claim of irreparable harm is undermined by its significant delay in
4  bringing this suit.  Sea Mar was informed of the accreditation withdrawal decision by email of
April 21, 2024, and it was provided its rationale by letter of April 26.  Even though Sea Mar was
5  aware of the withdrawal's June 30 effective date, Sea Mar did not initiate an internal appeal until
6  May 10.  And this lawsuit was not filed until the evening of *June 21*.  Sea Mar's delay in seeking
7  "emergency" relief detracts from its claim of irreparable injury.  *See Wilkinson v. PHH Mortg.*
8  *Corp.*, 2024 WL 2330542, at *2-3 (E.D. Cal. May 22, 2024) (denying temporary restraining
9  order solely because "Plaintiffs' delay contradicts their allegations of irreparable injury").
10  Accordingly, Sea Mar's significant and unexplained delay is reason enough to deny its motion
for a temporary restraining order.

11

12  **C.  The Balance of the Equities Does Not Tip in Sea Mar's Favor.**

13  "The 'balance of equities' prong requires the Court to 'balance the competing claims of injury
14  and . . . consider the effect on each party of the granting or withholding of the requested relief.'"
*Gale Force Nine LLC*, 2020 WL 7133507, at *6 (quoting *Winter v. Natural Resources Defense*
15  *Council, Inc.*, 555 U.S. 7, 24 (2008)).

16

17  Sea Mar wrongly contends that ACGME would not be harmed if an injunction were issued.
18  But ACGME is trusted for its oversight of the accreditation of residency programs and has built
19  that trust by ensuring that only programs that substantially comply with accreditation requirements
20  are approved.  This trust furthers the confidence of both the medical profession and the patients
cared for in the residency programs that serve to train the next generation of doctors.  The relief
21  that Sea Mar seeks asks this Court to substitute its judgment for the expertise of the ACGME
22  Review Committee, which has already considered and rejected Sea Mar's request to have the
23  effective date of withdrawal continued.   ACGME did not take its decision to withdraw
24  accreditation lightly and would be harmed if it were unable to follow its established policies and
25  procedures for decision-making on adverse accreditation.
26

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION - 18

**D.      An Injunction Is Not in the Public Interest.**

"In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (quotation marks and citation omitted).  A court should not grant a preliminary injunction unless the public interests in favor of granting an injunction "outweigh the public interests that cut in favor of not issuing the injunction." *Hanford Challenge, United Ass'n of Plumbers & Steamfitters Loc. Union 598 v. Moniz*, No. 4:15-CV-5086-TOR, 2016 WL 11795779, at *6 (E.D. Wash. Nov. 15, 2016) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1138 (9th Cir. 2011) (citations omitted) (emphasis in original)).  Here, the public's interest in residency programs' substantial compliance with ACGME's accreditation requirements and its ability to trust GCME to complete that oversight weigh against the entry of an injunction.  Sea Mar offers nothing to tip the scales in its favor.

Sea Mar wrongly argues that issuing an injunction will serve the public interest because "[m]aintaining the Program's accreditation for another year can produce a new class of graduates who can continue to serve these communities and also ensure the Sea Mar's patient base continues to benefit from their care."  Motion (Dkt. 3) at 22.  This argument ignores the fact that the Program has already lost its residents for the upcoming academic year and thus will not have a "new class of graduates" or residents to serve its patient base.  The requested injunction therefore cannot serve the very public function Sea Mar seeks to protect.  More importantly, allowing the Program to continue for another year without requiring Sea Mar to address the serious citations that led to the accreditation withdrawal may prove detrimental to patient care, resident training, and the public's confidence in the accreditation process. *Accord Prof. Massage*, 781 F.3d at 171 ("[A]ccreditation does encourage institutional self-examination and the attainment of high standards.  It also gives the public some assurance that professionals have received the training commensurate with their responsibilities in the workplace.").  Allowing Sea Mar to train another "new class of graduates" through a residency program that does not substantially comply with ACGME's accreditation standards does not serve the public's interest.

An injunction is also not in the public interest because a panel of family medicine experts, following a thorough deliberative process in accordance with ACGME's Policies, has unanimously determined that Sea Mar's program—in its current state—is not equipped to

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION - 19

**STOEL RIVES LLP**
ATTORNEYS
**600 University Street, Suite 3600, Seattle, WA  98101**
*Telephone 206.624.0900*

provide adequate patient care or resident training.  Providing substandard medical care and substandard training for residents does not serve the public interest.  Moreover, as explained above, nothing about ACGME's accreditation decision, which affected only Sea Mar's family medicine residency program, affects Sea Mar's broader ability to employ practicing physicians and treat its patient community.

Sea Mar has not pointed to a single fact suggesting that ACGME has not "play[ed] by the rules" or otherwise requires a "check" on its authority by the Court.  ACGME has proceeded in its accreditation review in accordance with its stated policies and procedures and has scheduled Sea Mar's appeal.  Sea Mar disagrees with the accreditation decision and wants an expedited timeline for appeal that is not provided for under ACGME's procedures.  These concerns exclusively serve Sea Mar's interests.  Entering an injunction this case does nothing to further the public interest.

## II.     Sea Mar's Procedurally Improper Request for Expedited Discovery Should Be Rejected.

Despite failing to move for expedited discovery or even attempting to show good cause, Sea Mar tries to shoehorn into a proposed order language directing ACGME to make a document production.  Sea Mar's request should be rejected as procedurally improper and substantively irrelevant. Fed. R. Civ. P. 26(d) bars parties from seeking "discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1).  A showing of good cause is required to deviate from the standard pretrial schedule.  *Sovereign Bank v. Terrence Scott Twyford, Jr.,* No. 11-cv-1256-RSM (W.D. Wash. Aug. 16, 2012) (adopting "good cause" standard for motions for expedited discovery). Here, Sea Mar has neither moved for expedited discovery nor made a showing of good cause.[11] As such, expedited discovery should not be permitted.

---

[11] Sea Mar's only reference to its demand for expedited discovery is one sentence in its argument that ACGME will not be harmed if an injunction is entered. *See* Motion (Dkt. 3) at 21 ("Sea Mar also seeks a preliminary injunction ordering ACGME to provide it with minutes from ACGME's Review Committee's adverse accreditation decision and communications regarding it.").

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION - 20

1    Even if the Court were inclined to consider Sea Mar's procedurally improper request for

2    expedited discovery, it should be rejected because Sea Mar cannot show good cause. "Good cause

3    may be found where the need for expedited discovery, in consideration of the administration of

4    justice, outweighs the prejudice to the responding party." *Semitool, Inc. v. Tokyo Electron Am.,*

5    *Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). Courts allow early discovery for limited purposes,

6    such as identifying defendants for service of process and in cases involving claims of infringement.

7    *See Amazon.com, Inc. v. Yong*, 21-cv-170-RSM, 2021 WL 123863 (W.D. Wash. April 2, 2021).

8    There is no such basis here, because Sea Mar is seeking discovery of material that was ***not part of***

9    ***the record*** considered by ACGME's Review Committee in making its determination of withdrawal

10   of accreditation, and that will not be part of the record on the administrative appeal before

11   ACGME's appeal panel. *See* ACGME Policies, 20.30(b)(3) and (4). ACGME has already—well

12   in advance of this litigation—provided Sea Mar with the documents comprising the record of the

13   Review Committee's action. Sea Mar is not entitled to now undertake a fishing expedition for

14   material outside the scope of the Review Committee's record to try, after-the-fact, to manufacture

15   support for its claims.

16                                          **CONCLUSION**

17           Sea Mar's request for injunctive relief should be denied. Because ACGME has followed,

18   and continues to follow, its policies and procedures governing withdrawal of accreditation, Sea

19   Mar cannot establish a likelihood of success on the merits of its claims. ACGME's policies and

20   procedures are consistent with applicable standards of due process and do not constitute an unfair

21   or deceptive practice under the CPA.

22

23

24

25

26

_____

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION - 21

1   I certify that this memorandum contains 8,227 words, in compliance with the Local Civil

2   Rules.

3

4   DATED:  June 26, 2024                    STOEL RIVES LLP

5

6                                            */s/ Vanessa Soriano Power*
                                             VANESSA SORIANO POWER
7                                            vanessa.power@stoel.com
                                             JENNA M. POLIGO
8                                            jenna.poligo@stoel.com
                                             600 University Street, Suite 3600
9                                            Seattle, WA  98101
                                             Telephone:  206.624.0900
10                                           Facsimile:  206.386.7500

11                                           COVINGTON & BURLING LLP

12                                           s/ Douglas Sprague
                                             E. Douglas Sprague (admitted pro hac vice)
13                                           dsprague@cov.com
                                             Nathan E. Shafroth (admitted pro hac vice)
14                                           nshafroth@cov.com
                                             Majid Waheed (admitted pro hac vice)
15                                           mwaheed@cov.com
                                             415 Misson Street, Suite 5400
16                                           San Francisco, CA 94105
                                             Telephone: 415.591.6000
17
                                             Nicholas G. Miller (admitted pro hac vice)
18                                           nmiller@cov.com
                                             620 Eighth Ave.
19                                           New York, NY 10018
                                             Telephone:  212.841.1000
20
                                             *Attorneys for Defendant ACGME*
21

22

23

24

25

26

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION - 22