UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SEA MAR COMMUNITY HEALTH CENTERS,<br><br>Plaintiff,<br><br>v.<br><br>ACCREDITATION COUNCIL FOR GRADUATE MEDICAL EDUCATION,<br><br>Defendant. | CASE NO. 2:24-cv-896<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION |

## 1. INTRODUCTION

Defendant Accreditation Council for Graduate Medical Education ("Council") decided to withdraw Plaintiff Sea Mar Community Health Center's ("Sea Mar") Family Medicine Residency Program's accreditation effective June 30, 2024. Dkt. No. 1 ¶ 64. Sea Mar appealed the decision to the Council's board, but it will not rule on the matter until this fall. *Id.* ¶ 75. Because the appeal process will not finish before the withdrawal decision takes effect, Sea Mar alleges the Council violated its common-law due process rights by denying Sea Mar a meaningful opportunity to be heard and a fair procedure. *Id.* ¶¶ 83-84. Sea Mar also alleges the Council violated the Washington Consumer Protection Act ("CPA") and breached the implied duty of good faith and fair dealing. *Id.* ¶¶ 98-116.

ORDER - 1

On June 21, 2024, Sea Mar moved for a temporary restraining order and preliminary injunction preventing the Council from withdrawing the Family Medicine Residency Program's accreditation. Dkt. No. 3. The Court heard oral argument on June 27, 2024. Dkt. No. 27. Because Sea Mar did not clearly show it will likely succeed on the merits, that it will suffer irreparable harm, and that injunctive relief is in the public interest, the Court DENIES Sea Mar's motion.

## 2. FINDINGS OF FACT

Considering the parties' briefing, supporting exhibits, oral argument, and the record, the Court finds the following:[1]

Founded in 1978, Sea Mar is a federally qualified health center that provides community health services largely to rural and other medically underserved populations in Washington state. Dkt. No. 5 ¶ 4. Sea Mar currently operates 33 medical clinics, 28 outpatient behavior health clinics, and four inpatient substance-abuse treatment centers. *Id.* ¶ 5. Sea Mar founded a three-year Family Medical Residency Program ("Residency Program") in 2015, which is based out of its clinic in Marysville, Washington. *Id.* ¶ 6. The Council first accredited Sea Mar's Residency Program in 2015. *Id.* ¶ 7. The Residency Program has maintained its accreditation until now. *Id.*

The Council's Family Medicine Review Committee ("Review Committee") performs an annual review of all accredited programs. Dkt. No. 23 ¶ 5. As part of

---

[1] Findings of fact and conclusions of law made in connection with a preliminary injunction are not binding adjudications. *Horphag Rsch. Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007). The court may come to different, perhaps even opposite, conclusions as the case advances.

ORDER - 2

the review process, the Council conducts resident and faculty surveys asking them to evaluate their program's "Resources; Professionalism; Patient Safety and Teamwork; Faculty Teaching and Supervision; Evaluation; Educational Content; Clinical Experience and Education; and Diversity and Inclusion." *Id.* ¶¶ 5-6.

On February 6, 2023, the Review Committee wrote the Residency Program's director, Dr. Ramos Jimenez, stating that the Residency Program was in "substantial compliance with the [Council's] Program Requirements," that no new citations would issue, and that the Residency Program's accreditation would continue. Dkt. No. 24-2 at 2. The letter also "flagged" the results of the annual resident survey and "identified three concerning trends and areas for program improvement[:] . . . patient safety, professionalism, and resources." Dkt. No. 24 ¶¶ 43-44. For each area identified, the Review Committee advised the Residency Program to review the resident survey results. Dkt. No. 24-2 at 2.

The results of the 2023 resident survey "yielded very low compliance responses in the domains of patient safety and teamwork, professionalism, and faculty teaching and supervision." Dkt. No. 24 ¶ 45. Concerned by these results considering the prior year's performance, the Review Committee requested a site visit. *Id.* ¶ 51.

On February 20, 2024, two field representatives from the Council conducted a "site visit" remotely. Dkt. No. 23 ¶ 20. After interviewing 21 residents, Sea Mar's "leadership and administration," and five faculty members, the field representatives drafted a site visit report. *Id.* The Review Committee selected two reviewers to analyze the site visit report and draft a list of potential citations based on lack of

ORDER - 3

substantial compliance with the Council's program requirements. *Id.* ¶¶ 21-22. After deliberating, the Review Committee unanimously voted on April 18, 2024, to withdraw the Residency Program's accreditation at the end of the academic year, June 30, 2024. Dkt. No. 23 ¶ 22; Dkt. No. 24 ¶ 56. In all, the Review Committee issued the Residency Program 47 citations. *Id.*

On April 21, 2024, the Review Committee's Associate Executive Director emailed Sea Mar to say it decided to withdraw the Residency Program's accreditation. Dkt. No. 5 ¶ 16. A few days later, Sea Mar received a formal letter setting forth the 47 citations. Dkt. No. 4-1 at 70-80. According to Sea Mar's Medical Education Office and Associate Program Director, "[o]nly one of the citations made any mention of the possibility of adverse patient outcomes" and the reference was made "suggestively and without any citation to supporting or objective indicia or record of adverse patient outcomes[.]" Dkt. No. 5 ¶ 34. On the other hand, the chair of the Review Committee stated that many of the 47 citations "reflect lack of substantial compliance in a manner that may seriously undermine patient safety." Dkt. No. 23 ¶ 26.

On May 10, 2024, Sea Mar appealed the Council's withdrawal decision. Dkt. No. 4-1 at 318-319. The Council provided Sea Mar copies of the site visit report and the "appeal file" on May 14 and June 4, 2024, respectively. Dkt. No. 5 ¶ 19. Sea Mar claims the site visit report "did not provide appreciable additional information to elucidate the factual bases for the citations or identify documents or communications that were inconsistent with the citations and site visit report findings." *Id.* ¶ 20. As a result, Sea Mar seeks additional documents including the

ORDER - 4

field representatives' notes and correspondence as well as the Review Committee's minutes and notes. *Id.*

The Council scheduled Sea Mar's appeal hearing for August 2, 2024, and its board will decide the matter in late September. Dkt. No. 3 at 17. At this point, 20 of the Residency Program's 22 current first- and second-year residents, and 10 of its 12 incoming first-year residents, have signed contracts to begin or continue their residencies at other institutions. Dkt. No. 5 ¶ 38. The rest are "expected to follow suit" after accreditation withdrawal. *Id.*

### 3.  CONCLUSIONS OF LAW

Preliminary injunctions and TROs are "extraordinary remed[ies] that may only be awarded upon a *clear showing* that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis added). "A plaintiff seeking a preliminary injunction must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Id.* at 20. This four-part test—the *Winter* factors—applies whenever preliminary injunctive relief is sought. *Id.*

**3.1    Sea Mar has not clearly shown a likelihood of success on the merits.**

The first *Winter* factor, "[l]ikelihood of success on the merits[,] is the most important factor[.]" *Edge v. City of Everett*, 929 F.3d 657, 663 (9th Cir. 2019). Sea Mar must cross a high threshold to satisfy this inquiry—it must make a clear showing that its claims are likely to prevail on the merits.

ORDER - 5

Sea Mar alleges the Council violated its federal and state common-law due process rights by withdrawing Sea Mar's accreditation before providing it a meaningful opportunity to be heard appealing the decision.

The Ninth Circuit has "express[ed] no opinion on the validity of common law due process claims challenging decisions relating to accreditation[,]" but the Court assumes without deciding that Sea Mar's federal common-law due process claim is valid. *See Nat'l Univ. of Health Scis. v. Council on Chiropractic Educ., Inc.*, 980 F.3d 679, 681 (9th Cir. 2020). Provisionally recognizing the viability of Sea Mar's due process claim, however, is to say nothing about Sea Mar's prospects for success on the merits.

Other circuits recognize "a 'common law duty on the part of 'quasi-public' private professional organizations or accreditation associations to employ fair procedures when making decisions affecting their members.'" *Pro. Massage Training Ctr., Inc. v. Accreditation All. of Career Sch. & Colleges*, 781 F.3d 161, 169 (4th Cir. 2015) (quoting *McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 534-35 (3d Cir. 1994)). "However, recognition that such a common law duty exists does not authorize courts to undertake a wide-ranging review of decision[-]making by accreditation agencies." *Id.* at 170. Instead, courts will "consider 'only whether the decision of an accrediting agency . . . is arbitrary and unreasonable or an abuse of discretion and whether the decision is based on substantial evidence.'" *Id.* at 171 (quoting *Thomas M. Cooley L. Sch. v. Am. Bar Ass'n*, 459 F.3d 705, 712 (6th Cir. 2006)).

ORDER - 6

Sea Mar argues that "[e]ven under this deferential standard of review, [it] is likely to prevail on its claims because [the Council's] decision to deprive Sea Mar of a meaningful opportunity to be heard before taking adverse action is fundamentally *un*fair." Dkt. No. 3 at 16 n.7 (emphasis in original); *see also* Dkt. No. 3 at 16 (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). Specifically, Sea Mar argues that it is the timing and sequence of the Council's procedures that violate its right to due process. Sea Mar cites the Council's refusal to expedite its appeal hearing, and the Council's decision instead to hold the hearing more than a month *after* the withdrawal becomes effective. Sea Mar also points to the Council's policies denying it "an opportunity to supplement with relevant materials the record the appeals panel will review." *Id.* at 17.

If a common-law due process right even exists, the Court is not convinced that this claim is a likely "winner" for Sea Mar. Sea Mar does not contest, much less demonstrate, that the process it has received to date is anything besides the process promised under the Council's rules. *See W. State Univ. of S. Cal. v. Am. Bar Ass'n*, 301 F. Supp. 2d 1129, 1135 (C.D. Cal. 2004) ("The Court's [common-law due process] review is very deferential, but review includes the inquiry whether the accrediting body followed its own rules."). And the case law Sea Mar relies on undercuts its argument that timing issues alone will sustain a due process violation. For example, in *Mathews*, the Supreme Court held that "an evidentiary hearing is not required prior to the termination of disability benefits," and the administrative procedures afforded to the claimant—including a hearing after the fact—"fully comport[ed] with due process." 424 U.S. at 349.

Sea Mar also argues the Council's decision was not based on substantial evidence given that the Residency Program went from a passing grade in 2023 to 47 citations in a year's time. To be sure, this head-spinning reversal could be viewed as evidence of arbitrary action by the Council. But there are also facts in the record from which to conclude that the Council acted on substantial evidence like the survey results, site visit, and concerns about patient care. While it is possible that Sea Mar will ultimately prevail on its common-law due process claims, Sea Mar has not made a clear showing that success on the merits is likely.

The same is true for Sea Mar's CPA claim. Sea Mar alleges the Council violated the CPA by offering a "hollow and illusory commitment to a meaningful appeal process for an adverse accreditation decision." Sea Mar does not identify policies or procedures indicating that it was owed process it did not receive. This is far from a clear showing.

Having failed to establish the "threshold inquiry" of likely success on the merits, the Court may deny Sea Mar's motion. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (quoting *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017)). But as discussed below, Sea Mar fairs no better under the other *Winter* factors.

**3.2    Sea Mar fails to show likely irreparable harm.**

As to the second *Winter* factor, courts will not grant relief "based only on a possibility of irreparable harm[,]" *Winter*, 555 U.S. at 20—the plaintiff must show immediate threatened harm, *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844

F.2d 668, 674 (9th Cir. 1988) ("Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction."). "Purely economic harms are generally not irreparable, as money lost may be recovered later, in the ordinary course of litigation." *Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir. 2015). Beyond showing likely irreparable injury, a plaintiff must also establish a "sufficient causal connection" that links the harm and the injunction. *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 982 (9th Cir. 2011).

Sea Mar argues its Residency Program will be permanently shuttered if it loses accreditation, but as a practical matter, the program has already been closedown. Indeed, 20 of the program's 22 current first- and second-year residents and 10 of its 12 incoming first-year residents have elected to leave. Dkt. No. 5 ¶¶ 12, 38. Injunctions are issued to forestall harm, and Sea Mar has not shown how issuing a preliminary injunction until the fall would prevent "irreparable harm" beyond the harm that has already occurred.

Nor is there any evidence suggesting the program will be shutdown forever. The record shows that while the Residency Program will not continue after June 30, 2024, and that it may lose funding for the next academic year, there is nothing that prevents Sea Mar from seeking re-accreditation. Under these circumstances, closure will last only for as long as it takes Sea Mar to regain accreditation. Sea Mar built the Residency Program from the ground up a decade ago; there is no reason to think that it could not do so again.

Sea Mar also claims it "will suffer long-term reputational harm" and that withdrawal will "adversely affect [its] ability to marshal its limited resources to

ORDER - 9

maintain and improve the training program while incurring the costs and burdens, of simultaneously re-applying for . . . accreditation." Dkt. No. 5 ¶ 39. But even before the withdrawal decision was announced, the Residency Program suffered losses. And Sea Mar acknowledges a rift in the Residency Program owing in whole or in part to a leadership change. The proceeding years' surveys reflect as much. So on this record, the Court finds the causal connection between the alleged reputational injury and the withdrawal decision lacking. In any event, an injunction delaying withdrawal to September will not repair the reputational harm and injuries that have already incurred.

Accordingly, Sea Mar has made an insufficient showing of irreparable harm.

**3.3   Injunctive relief would not serve the public interest.**

Sea Mar contends that an injunction would serve the public interest because there is a "critical lack of family medicine practitioners in rural and underserved areas" and maintaining accreditation for another year would produce a new class of graduates. This is a laudable goal, but the accreditation withdrawal affects only Sea Mar's residency program and will not result in the closure of any of its many medical, dental, and other healthcare clinics.

Plus, the Council has raised serious concerns about patient safety if the Residency Program is allowed to continue operations. The Council's field representative stated that "Sea Mar failed to adequately supervise residence during in-patient care . . . [which] is a major patient safety issue due to the specialized and potentially life-threatening cases common in in-patient care." Dkt. No. 22 ¶ 16. The chair of the Council's Review Committee for Family Medicine added that many of

the 47 citations "reflect lack of substantial compliance in a manner that may seriously undermine patient safety." Dkt. No. 23 ¶ 26. It bears repeating that the decision to withdraw accreditation was made unanimously by a 14-member Review Committee comprised mostly of family medicine physicians. *See* Dkt. No. 24 ¶ 14. Although Sea Mar contests the Council's findings, at this point, the Court defers to the expert accreditation board. As a result, issuing a TRO or preliminary injunction would not serve the public's overriding interest in safe medical care.

Finally, the balance of equities does not favor granting injunctive relief. Sea Mar argues the Council will not be harmed, "especially where, as here, the citations it has lodged against the [Residency] Program lack any concerns about patient wellbeing." As discussed above, the Council provides evidence in the form of declarations supporting a finding that patient safety may be at risk. This factor, alongside the other three elements, weighs against injunctive relief.

## 4.  CONCLUSION

In sum, the Court DENIES Sea Mar's motion for a TRO and a preliminary injunction, Dkt. No. 3. As to Sea Mar's request for expedited discovery, the Court will consider this issue in the context of Sea Mar's separately pending LCR 7(i) motion.

Dated this 3rd day of July, 2024

Jamal N. Whitehead
United States District Judge

ORDER - 11