THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

SEA MAR COMMUNITY HEALTH CENTERS,

        Plaintiff,

  v.

ACCREDITATION COUNCIL FOR GRADUATE MEDICAL EDUCATION,

        Defendant.

Case No. 2:24-cv-00896-JNW

**DEFENDANT ACGME'S MOTION TO DISMISS**

NOTE ON MOTION CALENDAR: SEPTEMBER 3, 2024

ORAL ARGUMENT REQUESTED

MOT. TO DISMISS
No. 2:24-CV-00896-JNW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

BACKGROUND .......................................................................................................... 2

I.      The ACGME ................................................................................................... 2

II.     The ACGME's Policies and Accreditation Standards ...................................... 2

III.    Sea Mar's Family Medicine Residency Program ............................................. 5

        A.      Concerns over Resident and Faculty Surveys Necessitate a Site Visit ................. 5

        B.      February 2024 Site Visit ....................................................................... 6

                1.      Patient safety ............................................................................ 7

                2.      Resident education ..................................................................... 8

IV.     The Review Committee Withdraws the Program's Accreditation. ................... 9

V.      Procedural History .......................................................................................... 10

        A.      Sea Mar's Complaint and Now-Denied Motion for TRO and PI. ......... 10

        B.      Sea Mar Receives Expedited Discovery. ............................................... 10

LEGAL STANDARD ................................................................................................. 11

ARGUMENT .............................................................................................................. 11

I.      Sea Mar's Common-Law Due Process Claims Should Be Dismissed. ........... 11

        A.      Common-Law Due Process Claims Are Not Viable in This Court. ....... 11

                1.      Ninth Circuit law ...................................................................... 12

                2.      Washington law ........................................................................ 14

        B.      Sea Mar's Common-Law Due Process Claims Would Fail on the Merits. .......... 16

II.     Sea Mar Fails to Plausibly Allege a CPA Claim. ........................................... 19

        A.      The ACGME's Appeals Process Is Not Unfair or Deceptive. ............... 19

        B.      Applying the ACGME Policies to Sea Mar Had No Public Interest Impact. ....... 21

MOT. TO DISMISS - i
No. 2:24-CV-00896-JNW

III.     Sea Mar Fails to Plausibly Allege the Existence of a Breach of a Contractual
         Duty.................................................................................................................. 22

CONCLUSION.................................................................................................................. 24

MOT. TO DISMISS - ii
No. 2:24-CV-00896-JNW

1

### INTRODUCTION[1]

2       The ACGME's Review Committee for Family Medicine (the "Review Committee")

3  withdrew the accreditation of Sea Mar's family medicine residency program because the program

4  had failed to demonstrate substantial compliance with the applicable program requirements.[2]  Two

5  months after being notified of the accreditation withdrawal, but only nine days before the

6  withdrawal's effective date, Sea Mar initiated this action and moved for emergency relief, asking

7  this Court to enjoin the ACGME from withdrawing Sea Mar's accreditation.  The Court declined,

8  concluding (among other things) that Sea Mar was not likely to succeed on the merits of its claims.

9  *See* ECF 32, at 5-8.

10      The Court should now dismiss Sea Mar's complaint with prejudice.  *First*, Sea Mar's

11  common-law due process claims are not viable under applicable law, and even if they were, those

12  claims would fail on the merits under the applicable deferential standard of review because, even

13  accepting Sea Mar's allegations as true, the withdrawal of Sea Mar's accreditation was fully

14  consistent with ACGME policies and supported by substantial evidence.  *Second*, Sea Mar fails to

15  state a claim under the Washington Consumer Protection Act ("CPA") because Sea Mar fails to

16  plausibly allege either (i) an unfair or deceptive practice or (ii) a "public interest impact," given

17  that this is a purely private dispute concerning the application of ACGME's policies to one

18  particular residency program.  *Finally*, Sea Mar fails to allege a breach of the duty of good faith

19  and fair dealing because that duty does not exist in the absence of a contract, and it is well

20  established that an accrediting body's rules and policies do not constitute a contract.

21

22

23

24

---

[1] The parties met and conferred on August 5, 2024, and determined that the filing of this motion

25  could not be avoided.

26

[2] "Sea Mar" is Plaintiff Sea Mar Community Health Centers; the "ACGME" is Defendant
Accreditation Council for Graduate Medical Education.

MOT. TO DISMISS - 1
No. 2:24-CV-00896-JNW

1

**BACKGROUND**

**I.     The ACGME**

The ACGME is a 501(c)(3) not-for-profit corporation based in Chicago, Illinois.  *See* Compl. ¶ 21; *About the ACGME: Overview*, ACGME, https://www.acgme.org/about/overview (last visited Aug. 5, 2024) ("ACGME Overview").[3]  The ACGME "sets and monitors voluntary professional educational standards essential in preparing physicians to deliver safe, high-quality medical care to all Americans" and oversees the accreditation of all medical residency programs in the United States.  Compl. ¶ 32.

**II.    The ACGME's Policies and Accreditation Standards**

The ACGME has extensive policies and procedures regarding the accreditation of residency programs and their sponsoring institutions.  *See* Compl. Ex. 1 ("ACGME Policies"); Compl. ¶ 111 n.3 (expressly incorporating the ACGME Polices by reference).  Specialty-specific review committees within the ACGME, which are composed of volunteer physicians, a resident representative, and a non-physician public member, create and publish standards for each accredited specialty.  ACGME Overview.  Those standards apply to all accredited specialty residency programs in the United States, and they are designed "to ensure the highest quality physicians and patient care."  *Id.*  The program requirements for family medicine residency programs ("Program Requirements") include specialty-specific requirements in addition to requirements that apply to all residency programs.  *See* Program Requirements, ECF 4-1, Ex. 18.[4]

---

[3]  The ACGME Overview page is incorporated by reference at paragraph 32 of Sea Mar's Complaint.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (in deciding a motion to dismiss, courts may consider documents incorporated by reference in the plaintiff's complaint, including documents whose contents are alleged in the complaint).

[4]  The Court may consider the Program Requirements in deciding the ACGME's motion to dismiss because Sea Mar's complaint "necessarily relies" on the content of the Program Requirements.  *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011) (quotation omitted); *see, e.g.*, Compl. ¶ 66f (alleging that the citations issued to Sea Mar's family medicine residency program were inconsistent with the Program Requirements); *id.* ¶ 56 (alleging similarities between the Program Requirements and the ACGME's separate requirements for institutions that sponsor residency programs).

MOT. TO DISMISS - 2
No. 2:24-CV-00896-JNW

The ACGME accredits residency programs through a voluntary process of evaluation and review based on the applicable program requirements. *See* ACGME Policies, 2.00, 16.00(b)(1). Each ACGME-accredited residency program is overseen by a "Sponsoring Institution" that must maintain institutional accreditation before any of its sponsored residency programs can receive accreditation. *See* ACGME Policies, 16.00(a). The accreditation process for Sponsoring Institutions is separate from the accreditation process for specific residency programs: the processes are governed by different requirements and are overseen by different entities. *See* ACGME Policies, 18.10(a)-(b) (describing the separate accreditation processes); Institutional Requirements, ECF 24-1 (incorporated by reference at Compl. ¶¶ 56, 66d).

Once a residency program receives a status of Initial Accreditation, the applicable review committee reviews the program annually to determine if it qualifies for Continued Accreditation. *See* ACGME Policies, 19.50, 19.51(a). In making an accreditation decision, the review committee considers annual data submitted by the program, the history of the program, reliable public information, correspondence pertinent to the review, and any additional information requested by the review committee. *See* ACGME Policies, 19.51(b). The review committee may also consider an accreditation site visit report. *Id.* Accreditation site visits are required for new residency program applications, and they also may be required at the review committee's discretion to inform subsequent accreditation decisions. *See* ACGME Policies, 18.12(a), 19.21(c), 19.51(c).

Site visits, which assess a residency program's compliance with the applicable program requirements, are performed by accreditation field representatives employed by the ACGME. *See* ACGME Policies, 18.20. During a site visit, field representatives conduct interviews with the program's director, faculty, administrative staff, and residents, and with the designated institutional official at the program's Sponsoring Institution. *See* ACGME Policies, 18.23. After the site visit, the field representatives prepare a site visit report, which is submitted to the applicable review committee to inform its accreditation decision. *See* ACGME Policies, 18.24.

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

1    A review committee has the discretion to withdraw a residency program's accreditation
2  if—after considering the site visit report and the information set out above—the committee
3  determines that a program has failed to demonstrate substantial compliance with the applicable
4  program requirements.  *See* ACGME Policies, 19.51(b), 19.51(d)(4), 19.90.   The review
5  committee also has the discretion to determine the effective date of an accreditation withdrawal: a
6  program may be allowed to complete the current academic year or one additional academic year.
7  ACGME Policies, 19.91.   A site visit is required before a program's accreditation can be
8  withdrawn.  ACGME Policies, 19.51(d)(4).

9    When a review committee withdraws a program's accreditation, the committee issues a
10  letter of notification to the program including the citations demonstrating a lack of substantial
11  compliance with specific program requirements.  *See* ACGME Policies, 19.90, 20.20(a).   A
12  program that has its accreditation withdrawn may reapply for accreditation within two years of the
13  effective date of the withdrawal, provided that the program addresses the citations that led to the
14  withdrawal.  *See* ACGME Policies, 18.11.

15    Within 30 days of receiving the letter of notification, a program may request a hearing
16  before an ACGME Appeals Panel.  *See* ACGME Policies, 20.30.   The three-member Appeals
17  Panel is convened from a list of qualified panelists maintained by the ACGME, and the program
18  may strike up to one-third of the potential panelists.  *See* ACGME Policies, 20.30(a).   After
19  requesting an internal appeal, the program is "given the documents comprising the … program file
20  and the record of the [r]eview [c]ommittee's action," which, "together with oral and written
21  presentations to the Appeals Panel," forms "the basis for the final recommendations of the Appeals
22  Panel."  ACGME Policies, 20.30(b)(3)-(4).   The Appeals Panel "shall not consider any changes in
23  the Sponsoring Institution or program or descriptions of the Sponsoring Institution or program that
24  were not in the record at the time the [r]eview [c]ommittee reviewed it and conferred the adverse
25  action."  ACGME Policies, 20.30(b)(10).   The program's presentations to the Appeals Panel are
26  "limited to clarifications of the record," which may address compliance with the applicable

MOT. TO DISMISS - 4
No. 2:24-CV-00896-JNW

program requirements and "the review of the … program according to the applicable procedures." ACGME Policies, 20.30(b)(8).

Within 20 days of the hearing, the Appeals Panel "make[s] recommendations to the ACGME Board as to whether substantial, credible, and relevant evidence exists to support the action taken by the [r]eview [c]ommittee" and "whether there has been substantial compliance with the administrative procedures that govern the [accreditation] process." ACGME Policies, 20.30(b)(12), (14). The Appeals Panel may recommend upholding a review committee's decision or restoring the program to its previous accreditation status. ACGME Policies, 20.30(b)(13). At the ACGME Board's next regularly scheduled meeting, the Board makes a final decision on the matter. ACGME Policies, 20.30(b)(14)-(15).

### III.    Sea Mar's Family Medicine Residency Program

Sea Mar's family medicine residency program received Initial Accreditation from the ACGME's Review Committee in 2015, and the program then received Continued Accreditation each year until this year. Compl. ¶ 31.

### A.    Concerns over Resident and Faculty Surveys Necessitate a Site Visit.

Last year, however, the Review Committee grew concerned that the program was no longer delivering adequate care to its patients or training to its residents. On October 5, 2023, the Executive Director of the Review Committee, Eileen Anthony, notified Sea Mar of the Review Committee's "concern," which stemmed from the program's most recent resident and faculty survey results. *See* Letter from E. Anthony to R. Jimenez, ECF 4-1, Ex. 10 ("October 5 Letter"); Compl. ¶¶ 57-58 (incorporating October 5 Letter by reference).

The program's 2023 Resident Survey reflected low rates of compliance with the Program Requirements in the areas of patient safety and teamwork, professionalism, and faculty teaching and supervision. *See* 2023 Resident Survey, ECF 24-3.[5] More than half of the residents responded

---

[5] Sea Mar's Complaint incorporates the 2023 Resident Survey by reference because the Complaint repeatedly cites the content of the survey results. *See* Compl. ¶¶ 42, 66b, 66c, 66h.

MOT. TO DISMISS - 5
No. 2:24-CV-00896-JNW

1   that the program was not in compliance with the Program Requirements with respect to safety and

2   health conditions.  *Id.*

3          In the 2023 Faculty Survey, five of the seven surveyed faculty members reported that

4   faculty "sometimes" or "often" acted unprofessionally, and three reported that they "often"

5   witnessed abuse, harassment, mistreatment, discrimination, or coercion.  *See* ECF 24-4, at 2.[6]

6   Three faculty members also reported that the program director was "not at all effective."  *Id.*

7   Finally, when asked if the program fostered an inclusive work environment, three faculty members

8   responded "not at all."  *Id.* at 3.

9          In light of these concerning survey results, the Review Committee informed Sea Mar that

10  a site visit was required before the Committee could make its annual accreditation decision with

11  respect to the program.  October 5 Letter, at 1.  The Review Committee explained that the site visit

12  was intended to provide "more context" with respect to how the 2023 survey results "impact[ed]

13  the overall educational environment of the program." *Id.*

14         **B.      February 2024 Site Visit**

15         On February 20, 2024, two ACGME field representatives (the "Field Representatives")

16  conducted a remote site visit of Sea Mar's family medicine residency program.  Compl. ¶ 60.

17  During the site visit, the Field Representatives randomly selected 21 of Sea Mar's 32 residents to

18  be interviewed on a confidential basis.  *See* Site Visit Report, ECF 4-1, Ex. 26, at 1-2.[7]  On the

19  basis of the site visit and related materials, including resident and faculty surveys, and documents

20  and data submitted by Sea Mar, the Field Representatives prepared the Site Visit Report.  *See id.*

21  at 1; ACGME Policies, 18.24.

22

23  [6] Sea Mar's Complaint incorporates the 2023 Faculty Survey by reference because the Complaint
    relies on the results of that survey to explain the actions of the program's leadership and to allege

24  that the results demonstrate compliance with the Program Requirements.  *See* Compl. ¶¶ 42, 66b.

25  [7] The Site Visit Report is incorporated by reference in the Complaint because the Complaint relies
    extensively on the contents of the Report in alleging that it was insufficient to support the Review

26  Committee's conclusion that Sea Mar's family medicine residency program was not in substantial
    compliance with the Program Requirements.  *See* Compl. ¶¶ 63-64, 66b, 66e, 66f, 66h.

MOT. TO DISMISS - 6
No. 2:24-CV-00896-JNW

Overall, the Field Representatives could not confirm or could only partially confirm substantial compliance with 43 Program Requirements.  *See* Site Visit Report, at 5-35.  As explained below, several of these deficiencies posed significant risks to patient safety and resident education.

### 1.      Patient safety

The Site Visit Report reflects that the program failed to demonstrate substantial compliance with the Program Requirements because, among other things, Sea Mar's faculty failed to (1) adequately supervise the program's inpatient service, (2) provide residents sufficient time to evaluate and treat patients at clinic, (3) maintain appropriate resident work hours, and (4) maintain a professional workplace environment.  *See id.* at 10-11, 18, 32-35.

Both residents and faculty reported that several faculty members were "incompetent"—"a specific word used several times during interviews"—to perform their duties, particularly with respect to inpatient rotations.  *Id.* at 10-11.  The residents stated that several faculty "felt uncomfortable in the inpatient setting … and frequently did not or could not answer resident questions which caused the residents to rely on other residents for those answers."  *Id.* at 11.  The program director "forced some faculty to cover inpatient services despite them informing him that they were uncomfortable and didn't feel competent to do so."  *Id.* at 32.

Sea Mar also failed to adequately protect patient safety in the clinical setting.  The program's residents reported that they felt "overloaded" at clinic due to chronic overscheduling: "patients, regardless of circumstances, are scheduled every 15[]minutes and sometimes double scheduled."  *Id.* at 34.  The residents reported "that they brought these issues to the [program director], but nothing changed."  *Id.*

The residents also reported being overworked, which poses a risk to patient safety. Residents "indicate[d] that their well-being is ignored" and reported that they "regularly exceeded 80 hours per week on [their obstetrics] rotations."  *Id.* at 34-35.  Residents advised that they

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

"frequently do not report [their hours] accurately out of fear of retaliation by the [program director]." *Id.* at 35.

Finally, Sea Mar's culture discouraged residents from raising concerns to the program director, who reportedly "demonstrated acts of retribution when people disagree with him or provide him with advice he does not agree with." *Id.* at 32. Faculty reported that this retribution caused "a number of faculty" to leave the program. *Id.* Every single resident and faculty member who was interviewed, except for one faculty member who is the program director's brother, stated "that the [program director] was detached from clinical activities and did not seem to understand or seek to understand the issues [residents and faculty] faced." *Id.*

### 2.   Resident education

The Site Visit Report also reflects that the program did not substantially comply with the Program Requirements relating to resident education and training. To the contrary, the Site Visit Report makes clear that the program environment was hostile to resident education.

Residents and faculty traced many of the issues with the program environment to the program director. *See, e.g.*, *id.* at 4, 6, 10, 32-34. The program director was "described by several faculty and almost all residents as being inflexible, harsh, and detached from the program." *Id.* at 4. "Many of the residents indicated that the [program director] is not active clinically, and they rarely see or speak with him." *Id.* at 6. "[M]any residents expressed fear of retribution or lack of confidentiality if they expressed their concerns." *Id.* at 10.

More generally, residents reported that program faculty had "little interest in providing education." *Id.* at 12. Residents said that faculty advisors "frequently did not attend scheduled meetings or canceled them," and that "useful feedback was rarely provided" in the meetings that did occur. *Id.* at 28. Residents and faculty reported that, in the clinical setting, "overscheduling create[d] a situation that [did] not allow time for any teaching." *Id.* at 34. And because faculty "rarely attend[ed]" the education periods preceding clinic, residents were left to "try to teach each other." *Id.*; *see also id.* at 11 (reporting instances "in which there were *no faculty supervisors*, and

MOT. TO DISMISS - 8
No. 2:24-CV-00896-JNW

[residents] were supervised by … Nurse Practitioner[s] or Physician Assistant[s]") (emphasis added).  When residents expressed their belief that they would become competent in areas such as compassion, respect, and responsiveness to patient needs, they said that "much of [these skills] will have been learned on their own or by behaviors the residents indicated they have observed and do not wish to emulate."  *Id.* at 16.

Accordingly, the Site Visit Report reflects that the program failed to maintain a learning environment conducive to resident education, and thus failed to substantially comply with the Program Requirements.  *See, e.g.*, *id.* at 10.

## IV.   The Review Committee Withdraws the Program's Accreditation.

On April 18, 2024, the Review Committee deliberated and voted to withdraw the accreditation of Sea Mar's family medicine residency program, effective June 30, 2024, the end of the 2024 academic year.  Compl. ¶¶ 62, 64; *see* ACGME Policies, 19.91 ("The effective date of the Withdrawal of Accreditation shall be determined by the Review Committee. ACGME-accredited programs may complete the current academic year ….").  The Review Committee made its decision—consistent with ACGME Policies—on the basis of information including the Site Visit Report, resident and faculty surveys, and data that Sea Mar provided to the ACGME.  *See, e.g.,* Letter from E. Anthony to R. Jimenez, ECF 4-1, Ex. 16 ("April 26 Letter"), at 3-4, 9; Compl. ¶¶ 64-66 (incorporating letter by reference); ACGME Policies, 19.51(b), 19.51(d)(4).  The materials relied upon by the Review Committee have been produced to Sea Mar.

On April 26, 2024, the Review Committee issued a letter of notification to Sea Mar detailing the 47 citations in areas where the program did not demonstrate substantial compliance with the Program Requirements.  *See* April 26 Letter; ACGME Policies, 20.20(a).

On May 10, 2024, Sea Mar informed ACGME that it would pursue an internal appeal of the withdrawal.  Compl. ¶ 73.  ACGME set Sea Mar's appeal hearing for July 17, 2024, but later postponed the hearing to August 2 due to scheduling issues.  *Id*. ¶ 74.  ACGME provided Sea Mar

MOT. TO DISMISS - 9
No. 2:24-CV-00896-JNW

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

with the documents the Review Committee relied upon in making its decision. *See id.* ¶ 77; ACGME Policies, 20.30(b)(4).

## V.  Procedural History

### A.  Sea Mar's Complaint and Now-Denied Motion for TRO and PI.

On June 21, Sea Mar initiated this action by filing its Complaint and a motion for a temporary restraining order ("TRO") and preliminary injunction ("PI"), seeking to enjoin the ACGME from withdrawing accreditation from Sea Mar's family medicine residency program until the conclusion of the 2024-25 academic year or the resolution of this action. *See* ECF 3-2 (Proposed Order), at 6.  The Court denied the motion, holding that Sea Mar was not likely to succeed on the merits of its claims and that Sea Mar failed to show either a likelihood of irreparable harm or that an injunction would serve the public interest. *See* ECF 32, at 5-11.  As a result of the Court's denial of the TRO and PI motion, the withdrawal of the program's accreditation has gone into effect, and Sea Mar's request for an injunction prohibiting the ACGME from withdrawing the program's accreditation, Compl. at 34, is moot.

### B.  Sea Mar Receives Expedited Discovery.

On July 5, 2024, pursuant to Local Civil Rule 37, the parties filed a joint submission with respect to Sea Mar's request for expedited discovery in advance of its internal appeal before the ACGME Appeals Panel.  ECF 33.  The Court granted Sea Mar's motion in part, directing the ACGME to respond to two of Sea Mar's three document requests and setting a responsive period through April 18, 2024, the date of the withdrawal decision. *See* ECF 36, at 3-4.

On July 16, 2024, the ACGME complied with the Court's Order and produced 53 responsive documents to Sea Mar, including initial drafts of the Site Visit Report, notes taken by the Field Representatives, and initial citation recommendations that were not adopted by the Review Committee.

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

**LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).  A court must dismiss a complaint if a plaintiff can prove no set of facts to support a claim which would entitle it to relief. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Dismissal can be based on the "lack of a cognizable legal theory" or the absence of sufficient facts alleged under a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

As discussed above, in deciding a motion to dismiss, the Court may consider the full text of documents quoted in or attached to the complaint and documents the plaintiff relied upon in suing. *See Corinthian Colleges*, 655 F.3d at 999; *Knievel*, 393 F.3d at 1076.

**ARGUMENT**

**I.  Sea Mar's Common-Law Due Process Claims Should Be Dismissed.**

The Court should dismiss Sea Mar's common-law due process claims, *see* Compl. ¶¶ 85-97, because common-law due process claims are not viable under Ninth Circuit or Washington law.  But even if common-law due process claims were viable under applicable law, the standard of review for such claims is highly deferential and focuses narrowly on whether the accrediting body followed its own procedures.  Here, the withdrawal of accreditation for Sea Mar's family medicine residency program was fully consistent with ACGME Policies, which provided Sea Mar multiple opportunities to improve its performance in advance of the site visit, afforded Sea Mar several opportunities for input in the accreditation process, and provide the opportunity for reaccreditation in the future.

**A.  Common-Law Due Process Claims Are Not Viable in This Court.**

Because the ACGME is not a state actor, constitutional due process principles are not implicated here. *See Apao v. Bank of New York*, 324 F.3d 1091, 1093 (9th Cir. 2003) (Fourteenth

MOT. TO DISMISS - 11
No. 2:24-CV-00896-JNW

1   Amendment "does not affect conduct by private entities"); *McKeesport Hosp. v. Accreditation*

2   *Council for Graduate Medical Educ.*, 24 F.3d 519, 526 (3d Cir. 1994) (accreditation decisions by

3   the ACGME are not state action).   Nonetheless, Sea Mar cites out-of-circuit and out-of-state

4   authority to argue that ACGME is a "quasi-public" organization with a "common law duty … to

5   employ fair procedures when making decisions affecting [its] members."  Compl. ¶ 86 (quoting

6   *Prof. Massage Training Ctr., Inc. v. Accreditation Alliance of Career Schools and Colleges*, 781

7   F.3d 161, 169 (4th Cir. 2015)).

8        Common-law due process claims have not been recognized by the Ninth Circuit or by

9   Washington state courts.  *See Nat'l Univ. of Health Sciences v. Council on Chiropractic Educ.*,

10  980 F.3d 679, 681 (9th Cir. 2020) ("We express no opinion on the validity of common law due

11  process claims challenging decisions relating to accreditation."); Compl. ¶ 94 (acknowledging that

12  "the Washington Supreme Court has not confirmed the existence of common-law due-process

13  obligations for accrediting bodies under Washington law"); Motion for TRO and PI, ECF 3, at 17

14  n.8 (acknowledging that the Washington Court of Appeals has "expressed doubt as to the viability

15  of a common-law due-process claim").

16       This Court should not break new ground by recognizing such a claim, especially in the

17  context of this case.

18       **1.    Ninth Circuit law**

19       "The cases in which federal courts may engage in common lawmaking are few and far

20  between." *Rodriguez v. FDIC*, 589 U.S. 132, 133 (2020).  The Ninth Circuit has not recognized a

21  common-law due process claim, but even those federal courts that have would not recognize one

22  here.

23       Because the Constitution vests the federal lawmaking power in Congress and "reserves

24  most other regulatory authority to the States," "[j]udicial lawmaking in the form of federal

25  common law plays a necessarily modest role" in our federalist system.  *Id.* at 136; *see also Erie R.*

26  *Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("There is no federal general common law.").  As the

MOT. TO DISMISS - 12
No. 2:24-CV-00896-JNW

1  Ninth Circuit has noted, "the Supreme Court has instructed that the creation of federal common

2  law is disfavored except where explicitly authorized by Congress." *In re Consol. Freightways*

3  *Corp.*, 443 F.3d 1160, 1162 (9th Cir. 2006).

4        In the "few and far between" areas in which judges "may appropriately craft the rule of

5  decision" (for example, admiralty disputes and certain disputes between States), one of the "strict

6  conditions" that "must be satisfied" is that "common lawmaking must be necessary to protect

7  uniquely federal interests." *Rodriguez*, 589 U.S. at 133, 136 (quotation omitted). Put differently,

8  creation of federal common law is "limited to situations where there is a significant conflict

9  between some federal policy or interest and the use of state law." *O'Melveny & Myers v. FDIC*,

10  512 U.S. 79, 87 (1994) (quotation omitted).

11        Courts confronted with common-law due process claims have recognized this requirement.

12  *See, e.g.*, *Matrix Distributors, Inc. v. Nat'l Ass'n of Boards of Pharmacy*, 34 F.4th 190, 197-98 (3d

13  Cir. 2022). As the Third Circuit explained, most of the courts that have recognized common-law

14  due process rights have done so in a "specific context": college accreditation. *Id.* at 197 & n.5. In

15  that context, there are several unique federal interests that do not apply here: for example, "Title

16  IV funding depending on accreditation" and Congress's grant of exclusive federal jurisdiction in

17  the Higher Education Act "over any action brought by a school challenging an accreditation

18  decision made by a Department of Education-approved accrediting agency." *Id.*; *see* 20 U.S.C.

19  § 1099b(f); *Pro. Massage*, 781 F.3d at 170 (relying on section 1099b(f)'s grant of exclusive

20  jurisdiction to find a common law duty in the college accreditation context); *Thomas M. Cooley L.*

21  *Sch. v. Am. Bar Ass'n*, 459 F.3d 705, 712 (6th Cir. 2006) (same); *Chicago School of Automatic*

22  *Transmissions, Inc. v. Accreditation Alliance of Career Schools and Colleges*, 44 F.3d 447, 449-

23  50 (7th Cir. 1994) (same). Courts have construed section 1099b(f)'s grant of exclusive jurisdiction

24  as congressional authorization to create federal common law in the college accreditation context

25  because "it is hard to see how state law could govern when federal jurisdiction is *exclusive*."

26  *Chicago School*, 44 F.3d at 449; *see also Inst. of Med. Educ., Inc. v. W. Ass'n of Schools &*

1   *Colleges*, 2013 WL 6672443, at \*8 (N.D. Cal. Dec. 18, 2013) ("The federal common law in the

2   accreditation context was created and applied because the [Higher Education Act] grants exclusive

3   federal jurisdiction but does not provide applicable law.").

4          Sea Mar's Complaint does not allege that any comparable unique federal interests are

5   implicated here.  Although institutions that sponsor accredited residency programs do receive

6   federal funding, Sea Mar's Complaint makes clear that its family medicine residency program *also*

7   receives state funding.  Compl. ¶¶ 2-4, 46-49.  More importantly, because the Higher Education

8   Act has no application here, there is no comparable authorization from Congress to create federal

9   common law, and there is nothing preventing Sea Mar from asserting state-law claims against the

10  ACGME.  Indeed, three of Sea Mar's four claims *are* asserted under Washington state law, and

11  Sea Mar's Complaint invokes this Court's diversity jurisdiction (in addition to alleging federal-

12  question jurisdiction based on the federal common law).  *See* Compl. ¶¶ 17, 92-116.

13         Accordingly, Sea Mar's Complaint fails to allege that this case presents one of the "limited

14  … situations where there is a significant conflict between some federal policy or interest and the

15  use of state law," *O'Melveny & Myers*, 512 U.S. at 87 (quotation omitted), and the "strict

16  conditions" for judicial lawmaking are not satisfied, *Rodriguez*, 589 U.S. at 136.  The Court should

17  therefore decline Sea Mar's invitation to recognize a new cause of action.

18                              **2.      Washington law**

19         Sea Mar's appeal to Washington law for its novel cause of action fares no better.

20         In applying Washington law, "the Court must apply the law as it believes the Washington

21  Supreme Court would apply it."  *Indian Harbor Ins. Co. v. City of Tacoma, Washington Dep't of*

22  *Pub. Utilities*, 354 F. Supp. 3d 1204, 1212 (W.D. Wash. 2018).  Federal courts "are bound to

23  follow the decisions of the state's highest court, and when the state supreme court has not spoken

24  on an issue, [the court] must determine what result the [state supreme] court would reach based on

25  state appellate court opinions, statutes and treatises."  *Mudpie, Inc. v. Travelers Cas. Ins. Co. of*

26  *Am.*, 15 F.4th 885, 889 (9th Cir. 2021) (quotation omitted).  Federal courts "will ordinarily accept

MOT. TO DISMISS - 14
No. 2:24-CV-00896-JNW

1    the decision of an intermediate appellate court as the controlling interpretation of state law, unless

2    [they] find[ ] convincing evidence that the state's supreme court likely would not follow it." *Id.*

3    (quotations and citations omitted).

4        As Sea Mar concedes, the Washington Supreme Court "has not confirmed the existence of

5    common-law due-process obligations for accrediting bodies under Washington law," Compl. ¶ 94,

6    and the Washington Court of Appeals has "expressed doubt as to the viability of a common-law

7    due-process claim," Motion for TRO and PI, at 17 n.8.  That is the end of the matter.

8        But even if the Court *could* create a state-law cause of action that has never been endorsed

9    by Washington's Supreme Court or its intermediate appellate court, the seventy-year-old decision

10   from which Sea Mar infers this cause of action, Compl. ¶ 94 (citing *Schroeder v. Meridian Imp.*

11   *Club*, 36 Wash.2d 925, 933 (1950)), is inapposite.  In *Schroeder*, the Washington Supreme Court

12   held—without mentioning the common law *or* due process—that private organizations are entitled

13   to "to make [their] own rules and by-laws," and that there was nothing improper about the

14   defendant club's policy of summarily expelling members who failed to pay their dues.  36 Wash.2d

15   at 933-34.  Although the court stated in *dicta* that notice and a hearing would have been required

16   for "an expulsion for crime or misconduct inimical to the organization's being," *id.* at 933, nothing

17   in *Schroeder* supports a roving common-law due process right to second-guess the accrediting

18   decisions of private, specialized organizations.  And were there any doubt about whether

19   *Schroeder* supports such a right, the Washington Court of Appeals provided the answer nearly 30

20   years ago, explaining that *Schroeder* is not applicable outside the context of membership

21   expulsion.  *See Mayer v. Pierce County Med. Bureau, Inc.*, 80 Wash. App. 416, 424-25 (1995).

22   Sea Mar's program is not being expelled from any organization: per ACGME Policies, Sea Mar is

23   free to pursue an internal appeal of ACGME's accreditation decision and, should the withdrawal

24   decision stand, Sea Mar is free to reapply for accreditation at any time.  *See* ACGME Policies,

25   18.11, 20.10.

26       Accordingly, Washington courts have not recognized common-law due process claims.

MOT. TO DISMISS - 15
No. 2:24-CV-00896-JNW

1      **B.      Sea Mar's Common-Law Due Process Claims Would Fail on the Merits.**

2          Even if common-law due process claims were viable under Ninth Circuit or Washington

3   law, Sea Mar's claims would fail on the merits for at least two reasons.

4          *First*, Sea Mar's common-law due process claims are primarily focused on the alleged

5   injustice of its internal appeal hearing occurring after the effective date of the withdrawal of

6   accreditation.  *See* Compl. ¶¶ 76, 88-89, 91, 96-97.  But Sea Mar's own authorities confirm that,

7   even under *constitutional* due process standards—which are far more demanding than the

8   common-law due process standards applied by other courts—"an evidentiary hearing is *not*

9   required prior to the termination" of a benefit.  *Mathews v. Eldridge*, 424 U.S. 319, 349 (1976)

10  (emphasis added) (cited at Compl. ¶ 87); *see also* Order Denying Motion for TRO and PI, ECF

11  32, at 7 ("[T]he case law Sea Mar relies on undercuts its argument that timing issues alone will

12  sustain a due process violation.").  Because Sea Mar's timing theory fails to state a claim even

13  under the much more demanding standard of constitutional due process, it necessarily also fails to

14  state a common-law due process claim.[8]

15         *Second*, as an alternative to its primary timing theory, Sea Mar levels a scattershot of

16  allegations regarding the propriety of the Review Committee's withdrawal decision and the

17  adequacy of the ACGME internal appeals process.  *See, e.g.*, Compl. ¶¶ 77-81.[9]  These allegations,

18  to the extent they cohere into any theory, fail to state a claim under the extremely deferential

19  common-law due process standard articulated by those courts that have recognized such claims.

20  _____

21  [8] The due process balancing approach of *Mathews* goes far beyond the scope of review in common-law due process cases.  *Mathews* describes the constitutional constraints imposed on a

22  "*governmental*" deprivation of rights.  424 U.S. at 332 (emphasis added).  As the Sixth Circuit has explained, the closer analog to common-law due process is arbitrary-and-capricious review under

23  the Administrative Procedure Act.  *Thomas M. Cooley*, 459 F.3d at 713.  But judicial review of common-law due process claims is even *more* limited than administrative review because

24  accrediting bodies are private organizations, and common-law due process rights are supported only by courts' "policy decision to ensure that [accrediting] organizations act in the public

25  interest."  *Id.*

26  [9] Sea Mar also makes the unfounded and untrue accusation that ACGME may have destroyed documents.  *See* Compl. ¶¶ 63, 66g, 78.  The ACGME has produced those documents to Sea Mar.

MOT. TO DISMISS - 16
No. 2:24-CV-00896-JNW

1    *See, e.g.*, *Thomas M. Cooley*, 459 F.3d at 712-13 ("[G]reat deference should be afforded the

2    substantive rules of [accrediting] bodies and courts should focus on whether an accrediting agency

3    … followed a fair procedure in reaching its conclusions.").[10]  Courts have "invariably" concluded

4    that the ACGME's accreditation determinations in particular are entitled to "great deference[] in

5    light of its special expertise in determining professional competency requirements." *Cruz Berrios*

6    *v. Accreditation Council for Graduate Med. Educ.*, 218 F. Supp. 2d 140, 143 (D.P.R. 2002).[11]  To

7    the extent the Court were to recognize a common-law due process claim, its review would focus

8    narrowly on "whether the accrediting body followed its own rules." *Western State Univ. of*

9    *Southern Cal. v. American Bar Ass'n*, 301 F. Supp. 2d 1129, 1135 (C.D. Cal. 2004); *accord* Order

10   Denying Motion for TRO and PI, ECF 32, at 7.

11       The Complaint does not plausibly allege a claim under this standard.  Sea Mar does not

12   allege that the ACGME acted in any manner inconsistent with its policies.  To the contrary,

13   withdrawal occurred only after the program's 2023 resident and faculty surveys demonstrated

14   significant deficiencies with respect to patient safety and resident education, *supra* Background

15   III.A; the Review Committee notified Sea Mar about its concerns stemming from the 2023 survey

16   results, October 5 Letter, at 1 & Compl. ¶¶ 57-58; ACGME Field Representatives conducted a

17   full-day site visit, Compl. ¶¶ 60-61; and the Review Committee deliberated and voted to withdraw

18   the program's accreditation, effective at the end of the 2024 academic year, Compl. ¶¶ 62, 64.  The

19   Review Committee's specialized judgment is entitled to substantial deference, *e.g.*, *Cruz Berrios*,

20

21   [10] *See also Wilfred Academy of Hair and Beauty Culture v. Southern Ass'n of Colleges and Schools*, 957 F.2d 210, 214 (5th Cir. 1992) ("In reviewing an accrediting association's decision to withdraw a member's accreditation, the courts have accorded the association's determination great deference."); *Paine College v. Southern Ass'n of Colleges and Schools Commission on Colleges, Inc.*, 810 Fed. App'x 852, 857 (11th Cir. 2020) (unpublished) (declining, like the Ninth Circuit, to decide whether a common-law due process right exists, but concluding that such a claim would be decided under a "deferential standard" asking only "whether the decision of an accrediting agency … is arbitrary and unreasonable or an abuse of discretion and whether the decision is based on substantial evidence.") (quotation omitted).

26   [11] *See also McKeesport*, 24 F.3d at 534 (Becker, J., concurring); *St. Agnes Hosp. of City of Baltimore, Inc. v. Riddick*, 748 F. Supp. 319, 330 (D. Md. 1990).

MOT. TO DISMISS - 17
No. 2:24-CV-00896-JNW

218 F. Supp. 2d at 143, and the Site Visit Report provides precisely the sort of evidence on which the Review Committee is entitled to rely in exercising its discretion under ACGME Policies to determine whether a program is in substantial compliance with the Program Requirements, *see, e.g.*, ACGME Policies, 19.51(b), 19.90.

Although Sea Mar challenges the adequacy of the ACGME internal appeals process, the Complaint fails to plausibly allege that anything about that process was contrary to ACGME Policies—policies that are likewise entitled to substantial deference, *e.g.*, *Thomas M. Cooley*, 459 F.3d at 712-13, and are entirely reasonable: Sea Mar was afforded an opportunity to participate in the selection of the Appeals Panel, and Sea Mar was allowed to make oral and written presentations to the Appeals Panel concerning whether the program "compli[ed] with the [Program Requirements]" and whether the review of the program was done "according to the applicable procedures." ACGME Policies, 20.30(a)(2), (b)(4), (8).

Finally, Sea Mar's common-law due process claims fail for the additional reason that it failed to exhaust its remedies within the ACGME appeals process before bringing this suit. *See Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905, 913 (9th Cir. 2022) ("Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.") (quoting *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975)); *William Loveland Coll. v. Distance Educ. Accreditation Comm'n*, 347 F. Supp. 3d 1, 13-14 (D.D.C. 2018) (applying exhaustion requirement to common-law due process claim in college accreditation context), *aff'd*, 788 Fed. App'x 5 (D.C. Cir. 2019) (unpublished).

Sea Mar's common-law due process claims therefore fail on the merits even if such claims were theoretically cognizable under applicable law.

MOT. TO DISMISS - 18
No. 2:24-CV-00896-JNW

**II.    Sea Mar Fails to Plausibly Allege a CPA Claim.**

To state a claim for a violation of the CPA, a party must plausibly allege "(1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) affecting the public interest; (4) injury to a person's business or property; and (5) causation." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wash.2d 27, 37 (2009) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 784 (1986)). Sea Mar's failure to state any one element is fatal to its claim. *Hangman Ridge*, 105 Wash.2d at 793 ("[P]rivate CPA plaintiffs must establish all five elements."). The allegedly unfair practice at issue here, the ACGME's appeals process, Compl. ¶¶ 101-03, is not actionable under the CPA under at least the first and third elements.

**A.    The ACGME's Appeals Process Is Not Unfair or Deceptive.**

Sea Mar alleges that the ACGME's appeals process is unfair and deceptive because Sea Mar had "inadequate" time to challenge the Review Committee's decision before it became effective. Compl. ¶¶ 73-76, 79-81, 83; *see also id.* ¶ 102 (alleging the appeals process is "illusory" and "designed to prevent meaningful and successful appeals"). As a matter of law, however, Sea Mar cannot plausibly allege that the ACGME's appeals process is unfair or deceptive.

A practice may be unfair under the CPA only if it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits." *Klem v. Wash. Mut. Bank*, 176 Wash.2d 771, 787 (2013) (quotation omitted). ACGME Policies are public, clearly articulated, and reasonable. As the Court explained in denying Sea Mar's Motion for TRO and PI, "Sea Mar does not identify policies or procedures indicating that it was owed process it did not receive." ECF 32, at 8. ACGME Policies expressly allow the ACGME to take the action that it did here: withdrawal of accreditation, effective at the end of the current academic year, even if withdrawal is effective before the internal appeals process has concluded. *See* ACGME Policies, 19.91, 20.30(b). The application of this procedure is not unfair under the CPA because it followed ACGME's stated process and was based on facts provided by Sea Mar and on the ACGME's thorough investigation of the residency

MOT. TO DISMISS - 19
No. 2:24-CV-00896-JNW

1  program, culminating in a full-day site visit.  *See Villella v. Pub. Emps. Mut. Ins. Co.*, 106 Wash.2d

2  806, 821 (1986) (denial of coverage is not unfair or deceptive under the CPA as long as the denial

3  is based on reasonable conduct of insurer).

4        Nor does Sea Mar plausibly allege that the ACGME's appeals process is deceptive.  A

5  "deceptive act" under the CPA "must have the capacity to deceive a substantial portion of the

6  population" and must "mislead[] or misrepresent[] something of material importance."  *Robertson*

7  *v. GMAC Mortg. LLC*, 982 F. Supp. 2d 1202, 1209 (W.D. Wash. 2013) (quotation omitted).  Sea

8  Mar identifies nothing deceptive in the ACGME Policies; the Complaint contains only the

9  conclusory allegation that the internal appeals process does not "permit meaningful redress of an

10  erroneous decision."  Compl. ¶ 103; *but see* ACGME Policies, 20.30(b)(13) ("The Appeals Panel

11  may recommend upholding the Review Committee's decision [or] restoring the … program to its

12  previous accreditation status.").  ACGME Policies are public, contain express deadlines for the

13  appeals process and for the Appeals Panel's recommendations, and do not mandate that a hearing

14  occur before an accreditation decision is effective.  *See* ACGME Policies, 20.30.  Nor do the

15  ACGME Policies have the potential to deceive a substantial portion of accredited residency

16  programs.  *See Haywood v. Amazon.com, Inc.*, 2023 WL 4585362, at *7 (W.D. Wash. July 18,

17  2023) (company's exercise of terms in its guidelines, which are fully disclosed to users, is not

18  unfair or deceptive).  Sea Mar alleges no facts to the contrary.  This dispute arose solely because

19  Sea Mar disagrees with the timing of the ACGME's withdrawal of its accreditation in the context

20  of the appeals process.  The decision, however, was specific to Sea Mar and the particular failings

21  that caused the Review Committee to act with haste in withdrawing accreditation to protect the

22  integrity of graduate medical education programming and patient care.

23        In sum, the Complaint fails to plausibly allege an unfair or deceptive act or practice, and

24  Sea Mar's CPA claim should be dismissed on this basis alone.

25

26

MOT. TO DISMISS - 20
No. 2:24-CV-00896-JNW

**B.**     **Applying the ACGME Policies to Sea Mar Had No Public Interest Impact.**

The Court need not go further with respect to Sea Mar's CPA claim, but if it does, the claim fails for the additional reason that application of ACGME Policies is not "injurious to the public interest." *Hangman Ridge*, 105 Wash.2d at 788 (quotation omitted); *see also id.* at 793 (failure to establish any one element is fatal to CPA claim).  In fact, ACGME Policies further the public interest by "ensur[ing] the highest quality physicians and patient care."  ACGME Overview.

The CPA is intended to protect consumers from harmful practices.  Accordingly, a private plaintiff must allege an actual or potential impact on the general public, not merely a private wrong. To determine if there is a public impact, Washington courts first consider "the likelihood that additional plaintiffs have been or will be injured *in exactly the same fashion* that changes a factual pattern from a private dispute to one that affects the public interest."  *Hangman Ridge*, 105 Wash.2d at 790 (emphasis added).  If there is no such likelihood, Washington courts then employ a non-exhaustive four-part balancing test to evaluate whether the private dispute impacts the public interest: "(1) Were the alleged acts committed in the course of defendant's business? (2) Did defendant advertise to the public in general? (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of others? (4) Did plaintiff and defendant occupy unequal bargaining positions?"  *Id.* at 790-91.

Here, Sea Mar has not alleged that additional plaintiffs likely have been or will be injured in *exactly the same fashion*.  That is because, although ACGME Policies are generally applicable, their application is unique to each factual scenario presented.  This case thus represents an isolated private dispute that does not constitute a public interest impact under the CPA.  *See, e.g., Zunum Aero, Inc. v. Boeing Co.*, 2022 WL 2116678, at *12-13 (W.D. Wash. June 13, 2022) (considering CPA's public interest element and concluding that Boeing's alleged misconduct— misappropriation of trade secrets—was not something that "has or could harm the general public"). Sea Mar likewise fails to allege any facts plausibly suggesting a real and substantial potential for repetition, as opposed to a hypothetical possibility of the repetition of an isolated act.  *See, e.g.*,

MOT. TO DISMISS - 21
No. 2:24-CV-00896-JNW

1  *Haywood*, 2023 WL 4585362, at *7 (no public interest impact where plaintiff "allege[d] no facts

2  tending to show a pattern or generalized course of conduct such that there is a real and substantial

3  potential for repetition of Amazon's conduct") (quotation omitted).

4        Next, under *Hangman Ridge*, Sea Mar's conclusory allegation that the ACGME advertises

5  its services to the "relevant public," Compl. ¶ 105, is insufficient to show that Sea Mar's private

6  dispute with the ACGME impacts the public interest.  Sea Mar does not allege that the ACGME

7  solicited Sea Mar or other residency programs, let alone solicited them to be bound by ACGME

8  Policies and subject to the ACGME appeals process.  Sea Mar has thus failed to allege any public

9  interest impact under the CPA.  *See, e.g., Michael v. Mosquera-Lacy*, 165 Wash.2d 595, 605 (2009)

10  (no CPA public interest impact where the defendant health care provider did not "advertise[] to

11  the public in general or … actively solicit[] [the plaintiff] in particular to be a patient").

12  **III.    Sea Mar Fails to Plausibly Allege the Existence of a Breach of a Contractual Duty.**

13        Sea Mar's claim for breach of the implied duty of good faith and fair dealing fails because

14  Sea Mar has no underlying contract with the ACGME, and courts have repeatedly held that an

15  accrediting body's rules and policies do not constitute a contract.  *See* Compl. ¶¶ 107-16.

16        In Washington, "[t]here is in every contract an implied duty of good faith and fair dealing."

17  *Badgett v. Sec. State Bank*, 116 Wash.2d 563, 569 (1991).  However, "[t]he implied duty of good

18  faith is derivative, in that it applies to the performance of specific contract obligations."  *Johnson*

19  *v. Yousoofian*, 84 Wash. App. 755, 762 (1996), *as amended* (Jan. 9, 1997).  "If there is no

20  contractual duty, there is nothing that must be performed in good faith."  *Johnson*, 84 Wash. App.

21  at 762; *see also Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wash.2d 171, 180 (2004)

22  (declining "to create and impose a duty to go forward in the absence of an enforceable contract").

23  Because there is no contract between the parties, Sea Mar's good-faith and fair-dealing claim fails.

24        Sea Mar alleges that it accepted ACGME's offer to "offer accreditation and make

25  accreditation decisions in accordance with its policies and procedures."  Compl. ¶ 109.  But this

26  theory of contract based on an accreditor's own rules and policies has been repeatedly rejected.

MOT. TO DISMISS - 22
No. 2:24-CV-00896-JNW

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

*See, e.g.*, *Pro. Massage*, 781 F.3d at 181 ("The Standards of Accreditation do not constitute a binding contract between the [accreditor] and the accredited educational institutions because the [accreditor] can alter the alleged contract at will and, thus, is not bound by its terms." (quotation omitted)); *Found. for Interior Design Educ. Rsch. v. Savannah Coll. of Art & Design*, 244 F.3d 521, 532 (6th Cir. 2001) ("We agree with the district court that these claims arise from the Foundation's decision to deny the College's accreditation application. We therefore review the Foundation's decision as an accreditation decision [under the arbitrariness standard], not as a contract, fiduciary duty, fraud or other common law claim."); *Chicago School*, 44 F.3d at 449 ("[A]ccrediting bodies are not engaged in commercial transactions for which state-law contract principles are natural matches."); *Tsamota Certification Ltd. v. Ansi ASQ Nat'l Accreditation Bd., LLC*, 2018 WL 1936840, at *7 (E.D. Wis. Apr. 24, 2018) ("Courts should not countenance breach of contract claims based on an alleged violation of an accreditor's own rules and procedures.").

Sea Mar's single authority does not support its claim. *See* Compl. ¶ 109 (citing *St. Agnes*, 748 F. Supp. at 342). Though the *St. Agnes* court characterized the plaintiff's *claim* as one that the defendants' "Bylaws, Manual, and General and Special Requirements constituted contractual obligations," it did not endorse this position or otherwise engage with the merits of this claim because the "plaintiff ha[d] not established that defendant violated its own procedures in withdrawing accreditation" in any event. *St. Agnes*, 748 F. Supp. at 342. The law is clear: Sea Mar cannot allege the existence of a bilateral agreement premised solely on its voluntary compliance with ACGME Policies. And in the absence of a contract, Sea Mar cannot allege a breach of the duty of good faith and fair dealing.

Moreover, even if Sea Mar could allege the existence of a contract—which it cannot—it still fails to plausibly allege that the ACGME breached a duty of good faith by applying its Policies as written. The duty of good faith and fair dealing arises "when the contract gives one party discretionary authority to determine a contract term; it does not apply to *contradict* contract terms." *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 86 Wash. App. 732, 738 (1997). Nor can an

MOT. TO DISMISS - 23
No. 2:24-CV-00896-JNW

implied duty claim create new contractual obligations.  *Haywood*, 2023 WL 4585362, at \*5 (granting motion to dismiss implied duty claim where plaintiff failed to identify any contractual provision breached by defendant).  The ACGME has the authority under its Policies to "confer[] on Sponsoring institutions and programs" any of the "accreditation and administrative status options" defined in ACGME Policies.  ACGME Policies, 19.00(a).  Its decision to withdraw accreditation rather than confer a status of Probationary Accreditation was expressly authorized by the Policies.  *Compare id*., 19.70, *with id.*, 19.90.  The ACGME accordingly had no duty to refrain from applying its Policies to Sea Mar's family medicine residency program.  *See, e.g.*, *In re Amazon Serv. Fee Litig.*, 2023 WL 8472724, at \*8 (W.D. Wash. Dec. 7, 2023) ("Because Defendant's conduct was authorized by the T&C, Defendant had no duty that was required to be performed in good faith."); *see also Haywood*, 2023 WL 4585362, at \*6 n.5 (rejecting good-faith claim that required the defendant to "moderate the content that appears on its platform in good faith" where the defendant had the "sole discretion to moderate content") (quotation omitted).

Sea Mar's attempt to shoehorn the ACGME's application of its Policies pertaining to the appeals process into a claim for the breach of the duty of good faith also fails.  Sea Mar complains about the timing of the appeals process and the withdrawal of accreditation.  Compl. ¶ 115.  But the ACGME Policies are express as to the scheduling of the hearing, the time for a recommendation from an Appeals Panel, the time for a decision from the Board, and the procedures for the hearing.  *See* ACGME Policies, 20.30.  The ACGME's enforcement of the timing and procedural requirements prescribed by the Policies does not give rise to a claim for the breach of the duty of good faith.

## CONCLUSION

The Court should dismiss Sea Mar's Complaint with prejudice.

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

<u>Word Count Certification</u>

*I certify that this memorandum contains 8,392 words, in compliance with the Local Civil Rules.*

<u>Certification of Conferral</u>

*Pursuant to Rule 5.6 of Judge Whitehead's Chamber Procedures – Civil, I certify that the parties met and conferred to determine whether the filing of this Rule 12(b)(6) Motion to Dismiss could be avoided.  The parties determined that the filing of the ACGME's motion could not be avoided.*

DATED:  August 5, 2024                                 STOEL RIVES LLP

<u>s/ Vanessa Soriano Power</u>
Vanessa Soriano Power, WSBA No. 30777
vanessa.power@stoel.com
Jenna M. Poligo, WSBA No. 54466
jenna.poligo@stoel.com
600 University Street, Suite 3600
Seattle, WA  98101
Telephone:  206.624.0900
Facsimile:  206.386.7500

COVINGTON & BURLING LLP

<u>s/ Nathan E. Shafroth</u>
Nathan E. Shafroth (*pro hac vice*)
nshafroth@cov.com
W. Douglas Sprague (*pro hac vice*)
dsprague@cov.com
Majid Waheed (*pro hac vice*)
mwaheed@cov.com
415 Misson Street, Suite 5400
San Francisco, CA 94105
Telephone: 415.591.6000

Nicholas G. Miller (*pro hac vice*)
nmiller@cov.com
620 Eighth Ave.
New York, NY 10018
Telephone:  212.841.1000

*Attorneys for Defendant ACGME*

MOT. TO DISMISS - 25
No. 2:24-CV-00896-JNW