The Honorable Jamal N. Whitehead

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SEA MAR COMMUNITY HEALTH CENTERS,<br><br>Plaintiff,<br><br>v.<br><br>ACCREDITATION COUNCIL FOR GRADUATE MEDICAL EDUCATION,<br><br>Defendant. | Case No. 2:24-CV-00896<br><br>**DEFENDANT THE ACGME'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS REGARDING PATIENT ENDANGERMENT**<br><br>NOTE ON MOTION CALENDAR: JULY 15, 2026 |



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3400, Seattle, WA 98101
*Telephone 206.624.0900*

# TABLE OF CONTENTS


INTRODUCTION ..... 1

BACKGROUND ..... 2

I. The ACGME Helps Protect Patients and Residents. ..... 2

II. Sea Mar's Residency Program Collapses. ..... 3

III. The ACGME Performs, and Sea Mar Fails, a Site Visit. ..... 4

IV. Sea Mar Resists Discovery on the Basis of the Quality Improvement Privilege. ..... 5

LEGAL STANDARD ..... 5

ARGUMENT ..... 5

I. The Requests Seek Discoverable Information. ..... 5

II. Sea Mar Has Failed to Meet Its Burden to Prove the Privilege Applies. ..... 7

A. Sea Mar Fails to Prove It Has a Quality Improvement Program That Qualifies for the Privilege. ..... 8

B. Sea Mar Fails to Prove That Its Withheld Documents Qualify for the Privilege. ..... 10

III. Sea Mar Has Waived Any Privilege. ..... 10

IV. At a Minimum, Sea Mar Must Produce Non-Privileged Documents Related to Quality Improvement. ..... 12

CONCLUSION ..... 13




STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3400, Seattle, WA 98101
*Telephone 206.624.0900*

# TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*Branco v. Life Care Centers of Am., Inc.*,
2006 WL 4484727 (W.D. Wash. May 4, 2006) ... *passim*

*Lowy v. PeaceHealth*,
159 Wash. App. 715 (2011) ... 11

*Lowy v. PeaceHealth*,
174 Wash. 2d 769 (2012) ... 12

*McSorley v. Everett Clinic*,
34 Wash. App. 2d 323, 330-31 (2025) ... 11, 12

*Park v. State Farm Fire & Cas. Co.*,
2024 WL 4494877 (W.D. Wash. Oct. 15, 2024) ... 5, 7

*Seattle Children's Hosp. v. King Cnty.*,
16 Wash. App. 2d 365, 374-75 (2020) ... 10

*Valley Forge Ins. Co. v. Washington Square Hotel Holdings LLC*,
2022 WL 17361442 (W.D. Wash. Dec. 1, 2022) ... 11

**Statutes**

Health Insurance Portability and Accountability Act ... 2

RCW 18.71.050(1)(b) ... 2

RCW 43.70.056 ... 9

RCW 43.70.510 ... 7, 11

RCW 43.70.510(4) ... 7

RCW 43.70.510(b) ... 8

RCW 70.41.200 ... 7, 10

RCW 70.41.200(1)(a) ... 8, 9

RCW 70.41.200(1)(a), (c), (d), (e), (f), (g), (h) ... 8




STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3400, Seattle, WA 98101
*Telephone 206.624.0900*

RCW 70.41.200(1)(c) ....................................................................................................9
RCW 70.41.200(1)(d) ....................................................................................................9
RCW 70.41.200(1)(e) ....................................................................................................9
RCW 70.41.200(1)(f)......................................................................................................9
RCW 70.41.200(1)(g) ....................................................................................................9
RCW 70.41.200(1)(h) ..................................................................................................10
RCW 70.41.200(3)..........................................................................................................7

**Other Authorities**

Fed. R. Civ. P. 26(b)(1)..............................................................................................5, 7
WAC 246-919-330(2) .....................................................................................................2



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3400, Seattle, WA 98101
*Telephone 206.624.0900*

# INTRODUCTION

This motion to compel is about the scope of discovery and privilege. Defendant the ACGME has propounded numerous requests for production to Sea Mar seeking documents related to incidents of patient harm and endangerment within its family medicine program. Sea Mar contends that these documents are statutorily privileged "quality improvement" documents and that it "won't change [its] position." But it has cited no facts showing that it satisfies ***any*** of the quality improvement privilege's demanding requirements.

The gist of Sea Mar's claims is as follows: Sea Mar had a family medicine residency program that, by "objective metrics, . . . was a success." Dkt. 49 (Second Amended Complaint, "SAC") ¶ 2. But in Spring 2024, the ACGME withdrew Sea Mar's accreditation for reasons that were "baseless" and in a process that was "unfair" "[a]t every step." *Id.* ¶¶ 7, 31, 35, 129 n.5. Sea Mar accordingly filed this action and intends to persuade a jury that it deserved to keep its residency program and enroll new residents, and that it should be allowed to keep treating patients in the setting of a residency program—pregnant women, babies, the infirm, the sick, and the vulnerable, including from low-income and underserved areas.

The ACGME disagrees. Far from a success, Sea Mar's program was "the worst program" one ACGME reviewer had ever observed. Dkt. 22, ¶ 35. Another witness described it as "clearly in turmoil." *See* Ex. 23 at 3 (129:19-20).[1] The ACGME withdrew Sea Mar's accreditation in part based on Sea Mar's failure to substantially comply with multiple residency program accreditation requirements, including important requirements that help promote patient safety. Documents produced in this litigation so far reveal alarming facts about the program, as discussed in the ACGME's Motion to Compel Production of: (1) Plaintiff's Medical Residents' ESI, (2) Plaintiff's

[1] References to "Ex." numbered 36 and higher are to the Declaration of Patrick W. Nutter filed herewith ("QI Nutter Decl."). All other references "Ex." are to exhibits attached to the Declaration of Patrick W. Nutter in Support of Defendant the ACGME's Motion to Compel Production of: (1) Plaintiff's Medical Residents' ESI, (2) Plaintiff's ESI Predating July 1, 2022, and (3) Response to Defendant's Interrogatory No. 18. Dkt. Nos. 96, 97.



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3400, Seattle, WA 98101
*Telephone 206.624.0900*

ESI Predating July 1, 2022, and (3) Response to Defendant's Interrogatory No. 18. *See, e.g.*, Dkt. No. 95 at 2-3, 5-6, 32-33.

The parties now have a glimpse into regular and widespread dangers to patient safety in Sea Mar's family medicine residency program, but the scope of discovery permits more than just a glimpse into these serious concerns. As relevant here, the ACGME seeks discovery that Sea Mar has so far tried to keep hidden and brings this motion to compel the production of documents concerning patient endangerment, adverse patient outcomes, or concern for patient safety, with appropriate measures to protect patient identities, other personal identifying information, and information falling under the protections of the Health Insurance Portability and Accountability Act ("HIPAA").

## BACKGROUND

### I. The ACGME Helps Protect Patients and Residents.

The State of Washington requires completion of at least two years of residency for physician licensure. *See* RCW 18.71.050(1)(b). A residency program prepares graduates of medical and osteopathic schools of medicine for unsupervised practice in a specialty. It involves structured educational activities comprising a series of supervised clinical experiences with actual patients, along with other learning experiences. Residency programs are so important that virtually every state in the nation takes steps to ensure that they meet vital standards for quality education and patient care. In Washington, for example, the Washington Medical Commission approves only residency programs that meet the standards of either the ACGME or its Canadian counterparts. *See* WAC 246-919-330(2). These standards help protect both residents and patients—residents from exploitation and deficient education, and patients from substandard care. Without them, residents risk providing substandard care, and patients risk severe injury and even death. *See* Ex. 26 at 3 (American Medical Association reporting incident where patient had "died while under the care of fatigued and overworked residents").



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3400, Seattle, WA 98101
*Telephone 206.624.0900*

These standards are set forth in detailed requirements promulgated by the ACGME. The ACGME's mission is to improve health care and population health by assessing and enhancing the quality of resident and fellow physicians' education through advancements in accreditation and education. *See* Dkt. 63-1 at 9-10 & n.1. To that end, the ACGME sets a bar for residency programs to be conferred accreditation, and it requires each program to meet that bar year after year. The ACGME requirements apply to all residency programs that seek accreditation from the ACGME, whether the program is located in the wealthiest area or in the most underserved community. Residency programs bear the burden to show they "substantially comply" with these requirements, and they do so with annual data submissions, detailed surveys by faculty and residents, and/or a site visit, among other sources. *Id.* at 111, 129. If a program fails to show substantial compliance with one or more of the requirements, the ACGME may issue citations, alter its accreditation status, and/or take other measures. *Id.* at 130.

## II. <u>Sea Mar's Residency Program Collapses.</u>

Sea Mar is a healthcare provider for the greater Seattle area. In 2015, it endeavored to start a family medicine residency program. After an initial failed attempt (in which it received seven citations for failure to meet program requirements), Sea Mar's family medicine residency program was first accredited in January 2015. SAC ¶ 5. Thereafter Sea Mar received continued accreditation through 2023.

Sea Mar's eventual downward spiral can be traced back to April 2022, with the appointment of a new and first-time Program Director, Dr. Ricardo Jimenez—who was also already, and continued to be, the Designated Institutional Official and the Chief Medical Officer, the latter often a full-time job in a large healthcare institution. In Sea Mar's telling, Dr. Jimenez started the 2022-2023 academic year with a new vision for the program, including a new curriculum and overall focus that changed from previous years. SAC ¶ 64. At the same time, Dr. Jimenez was joined in the program leadership by his own two brothers, also physicians, as key administrators of two clinical sites. Ex. 21 at 7, 9.



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3400, Seattle, WA 98101
*Telephone 206.624.0900*

It is against this backdrop that residents and faculty voiced their concerns to the ACGME in early 2023. As they did every year, the residents and faculty completed the ACGME's annual surveys on the state of the program. The surveys function as the ACGME's eyes and ears on the ground—they are one way the ACGME can receive direct, unfiltered information from the residents and faculty who experience the program on a daily basis. Dkt. 23 ¶¶ 6–9. The survey results were alarming. Scores dropped so low and so suddenly—including on patient safety, resident education, and professionalism—that the ACGME requested a site visit. Ex. 15.

**III. <u>The ACGME Performs, and Sea Mar Fails, a Site Visit.</u>**

Ahead of the site visit, the ACGME informed Sea Mar it "[would] address compliance with ***all*** relevant program requirements." Ex. 12 at 1 (emphasis added). Yet Sea Mar failed even basic tasks before the site visit, like timely providing documentation and sending calendar invites. Ex. 27; Ex. 16; Ex. 19. During the site visit, interviews corroborated the survey results. Interviewees described some faculty as "incompetent," Ex. 21 at 8, and Dr. Jimenez as "inflexible, harsh, and detached from the program," Ex. 13 at 5.

For these reasons and others, one witness—herself a former program director of a family medicine residency program—described Sea Mar's program as "clearly in turmoil." Ex. 23 at 3 (129:19-20). Another witness, one of the site visitors, attested it was "the worst program" she had seen out of 330 she had observed in her career. Dkt. 22, ¶ 35. Sea Mar was accordingly issued ***47*** citations for failure to demonstrate substantial compliance with program requirements—more citations than any other family medicine program had received in recent history. Ex. 21; Ex. 30 (other family medicine programs receiving up to 36, 40, and 42 citations since 2022). The ACGME's Family Medicine Review Committee voted to withdraw Sea Mar's accreditation. Ex. 21; SAC ¶ 98. After considering Sea Mar's appeal, the ACGME's Appeals Panel recommended to the ACGME Board of Directors that the Review Committee's decision be affirmed, sustaining 35 of the 47 citations. Ex. 17. The ACGME Board of Directors agreed.



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3400, Seattle, WA 98101
*Telephone 206.624.0900*

**IV. <u>Sea Mar Resists Discovery on the Basis of the Quality Improvement Privilege.</u>**

In discovery, the ACGME propounded, among others, Requests for Production Nos. 18, 19, 22, 36, and 37, reproduced in full in the concurrent Declaration of Patrick W. Nutter and also included in Exhibits 1, 3, and 5. *See* n.1, *supra*. In response and to date in the parties' correspondence and conferrals, Sea Mar has withheld responsive discovery on the purported basis that each of these requests seeks privileged information under RCW43.70.510(1)(b)(4) and discussed further below. *See, e.g.*, Ex. 42 at 4-6.

The ACGME responded in turn that Sea Mar had failed to show that the statute applied to the requested documents and, specifically, that Sea Mar had failed to demonstrate that all such documents satisfied the privilege's requirements. *See, e.g.*, QI Nutter Decl. ¶ 12. The ACGME followed up further in writing on May 29, 2026 and June 1, 2026 with its reading of the relevant case law and requesting that Sea Mar provide a legal and factual basis for its privilege claims. *See, e.g.*, Ex. 41 at 15-16. Sea Mar did not do so and declared that it "won't change [its] position." The parties thus reached an impasse on the issue. *See id.*

## <u>LEGAL STANDARD</u>

The scope of discovery includes any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). The party opposing production of relevant discovery bears the heavy burden to show why such discovery should be denied. *See Park v. State Farm Fire & Cas. Co.*, 2024 WL 4494877, at *4, *8 (W.D. Wash. Oct. 15, 2024).

## <u>ARGUMENT</u>

**I. <u>The Requests Seek Discoverable Information.</u>**

Sea Mar's patient incident and quality improvement documents are within the scope of discovery. Sea Mar's claims depend on the theory that the withdrawal-of-accreditation process was unfair and that unfairness caused the withdrawal. SAC ¶ 150. The documents the ACGME seeks with this motion may—and are expected to—refute Sea Mar's claims of unfairness.



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3400, Seattle, WA 98101
*Telephone 206.624.0900*

***First***, Sea Mar alleges that the citations were contrary to the facts—"manifestly erroneous," "factually baseless," "meritless," and "based in whole or in part on patent factual errors," SAC ¶¶ 16, 18, 165—and that, at trial, it will present "the facts underlying each citation," Dkt. 77 at 2. That would include, for example, citations concerning, impacting, or relating to patient care and patient safety. In Sea Mar's view, these and other citations were based on only "picayune" and "minor issue[s]," and that virtually all citations were the result of "factual errors." SAC ¶¶ 16, 18, 31, 152.

The ACGME seeks documents relevant to "the facts underlying each citation" that Sea Mar has asserted it will present at trial, and Sea Mar cannot now avoid discovery that refutes those "facts." Few sources would provide better evidence of whether "patients were in danger" than "documented quality-assurance issues . . . and any reports of substandard treatments of patients." SAC ¶ 104(j). These documents are expected to provide context for and likely corroborate the ACGME citations for failure to ensure adequate resident supervision and safe patient care, as shown by the few documents already produced that reveal such incidents. Dkt. No. 95 at 2-3, 5-6, 32-33.

A ***second*** reason for Sea Mar's "unfairness" allegations is that, in its view, the ACGME should have discounted much of the evidence supporting the citations—including those concerning patient safety concerns—because it was purportedly "anonymous" and "unreliable hearsay." SAC ¶ 103; *see also id.* ¶¶ 18, 83–93, 103–109, 122, 131–36. Having made these attacks on the reliability of the surveys and site visit interviews central to its claims, Sea Mar cannot now argue that discovery to confirm the accuracy of that evidence is irrelevant. The ACGME is permitted to test Sea Mar's allegations in discovery with the firsthand reports of residents and faculty, as well as other information that bears on these allegations. *See* Dkt. No. 95 at 32-34.

Nor has Sea Mar met its burden to show that the documents sought for production are disproportional or unduly burdensome. Patient endangerment records are proportional under Rule 26(b)(1), including because they relate to patient safety, resident education, and the treatment of



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3400, Seattle, WA 98101
*Telephone 206.624.0900*

underserved communities, undoubtedly important issues. Fed. R. Civ. P. 26(b)(1). The documents are also in Sea Mar's possession, custody, or control—not accessible to the ACGME—and Sea Mar has failed to identify any facts in its responses and objections or in the parties' conferrals suggesting it lacks the resources to produce them, or that doing so would be unduly burdensome. *See Park*, 2024 WL 4494877, at *4, *8.

## II. Sea Mar Has Failed to Meet Its Burden to Prove the Privilege Applies.

Sea Mar resists this relevant discovery on the purported basis that the information is privileged "quality improvement" material exempt from discovery under a Washington statute, RCW 43.70.510. Statutes that limit discovery, like RCW 43.70.510(4), stand "in sharp contrast to the general policy favoring broad discovery" and "'must be strictly construed and limited to its purposes.'" *Branco v. Life Care Centers of Am., Inc.*, 2006 WL 4484727, at *1 (W.D. Wash. May 4, 2006). Sea Mar accordingly bears the burden to show, with facts, that all elements of the privilege apply, and Sea Mar must do so on a document-by-document basis. *See id*.

Health care institutions and medical facilities in Washington may maintain a statutorily recognized "coordinated quality improvement program" overseen by a "quality improvement committee." RCW 43.70.510; *cf.* RCW 70.41.200(3) (similar provision for hospitals). The purpose of such a program is to help improve the quality of healthcare services rendered to patients. Should an institution maintain such a program, it must comply with detailed statutory requirements set forth in a separate statute, RCW 70.41.200, and the program must be approved by the state department of health. Only if such conditions are met, an institution may be entitled to a narrow discovery limitation, often called a "privilege," "peer review privilege," or "quality improvement privilege." When this privilege applies, it may be invoked to resist discovery into an exceedingly narrow category of documents that "relate[] specifically" to quality improvement activities. The ***only*** documents entitled to the privilege are those that are "created ***specifically*** for, ***and*** collected ***and*** maintained by" a quality improvement committee. RCW43.70.510(1)(b)(4) (emphasis



**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3400, Seattle, WA 98101
*Telephone 206.624.0900*

added). Documents that do not satisfy those requirements are not privileged and must be produced. *See Branco*, 2006 WL 4484727 at *1.

**A. Sea Mar Fails to Prove It Has a Quality Improvement Program That Qualifies for the Privilege.**

To qualify for the "quality improvement privilege," Sea Mar must first demonstrate that it has a quality improvement program that meets at least 10 requirements set forth in at least seven statutory provisions. *See* RCW 70.41.200(1)(a), (c), (d), (e), (f), (g), (h); RCW 43.70.510(b). To date, Sea Mar has not even attempted to meet this burden. Despite the ACGME's repeated requests, Sea Mar has presented no evidence in conferrals, correspondence, its privilege log, or in its responses and objections demonstrating ***any*** of the following facts about its purported quality improvement program, much less that each and every one of the documents it is withholding fall under those statutory requirements. Sea Mar has failed specifically to show:

- that is has a quality improvement program that is that is "approved by the department" of health, RCW 43.70.510(b);
- that its quality improvement committee has "the responsibility to review the services rendered in the hospital, both retrospectively and prospectively, in order to improve the quality of medical care of patients and to prevent medical malpractice," RCW 70.41.200(1)(a);
- that its quality improvement committee oversees and coordinates a "quality improvement and medical malpractice prevention program," RCW 70.41.200(1)(a);
- that its quality improvement committee ensures that "information gathered pursuant to the program is used to review and revise hospital policies and procedures," RCW 70.41.200(1)(a);
- that its quality improvement program includes a process for the "periodic review of the credentials, physical and mental capacity, professional conduct, and



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3400, Seattle, WA 98101
*Telephone 206.624.0900*

competence in delivering health care services of all other health care providers who are employed or associated with the hospital," RCW 70.41.200(1)(c);

- that its program includes a "procedure for the prompt resolution of grievances by patients or their representatives related to accidents, injuries, treatment, and other events that may result in claims of medical malpractice," RCW 70.41.200(1)(d);
- that its program includes the "maintenance and continuous collection of information concerning the hospital's experience with negative health care outcomes and incidents injurious to patients including health care-associated infections as defined in RCW 43.70.056, patient grievances, professional liability premiums, settlements, awards, costs incurred by the hospital for patient injury prevention, and safety improvement activities," RCW 70.41.200(1)(e);
- that its quality program includes "maintenance of relevant and appropriate information gathered" in accordance with the above list "concerning individual physicians within the physician's personnel or credential file maintained by the hospital," RCW 70.41.200(1)(f);
- that its quality improvement program includes "education programs dealing with quality improvement, patient safety, medication errors, injury prevention, infection control, staff responsibility to report professional misconduct, the legal aspects of patient care, improved communication with patients, and causes of malpractice claims for staff personnel engaged in patient care activities," RCW 70.41.200(1)(g); and
- that its program includes "policies to ensure compliance with the reporting requirements of RCW 70.41.200," RCW 70.41.200(1)(h).

Sea Mar's purported quality improvement privilege fails at the threshold on the ground that it lacks a compliant committee and program if it cannot show it meets ***all*** of the above



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3400, Seattle, WA 98101
*Telephone 206.624.0900*

requirements. To date, Sea Mar has failed to show it meets ***even one*** such requirement. Sea Mar's privilege objections should be overruled on this basis alone.

### B. Sea Mar Fails to Prove That Its Withheld Documents Qualify for the Privilege.

Application of the privilege carries yet more demanding requirements in addition to the foregoing. Even if Sea Mar had established the existence of a qualifying program, it has still failed to prove—on a document-by-document basis—that all the discovery it seeks to withhold was created for a quality improvement purpose ***and for no other purpose***. The privilege Sea Mar invokes applies ***only*** to "documents [generated] for the ***sole*** purpose of healthcare evaluation, and for the ***exclusive*** use by a quality assurance committee." *Branco*, 2006 WL 4484727 at *1 (emphasis added). Thus, even documents created for a healthcare evaluation purpose and for use by a quality assurance committee are ***not privileged*** if they also had ***any*** other purpose or use. *See id.*; *see also Seattle Children's Hosp. v. King Cnty.*, 16 Wash. App. 2d 365, 374-75 (2020) (quoting *Lowy v. PeaceHealth*, 174 Wash. 2d 769, 787 (2012)) (privilege reaches documents "created as part of the inner workings of the committee" and that are "specifically for and maintained by a QI committee," and does not reach "information that 'goes into or comes out of the quality improvement committees'").

Sea Mar bears the burden of demonstrating that each withheld document satisfies these demanding requirements. It has not even attempted to do so.

## III. <u>Sea Mar Has Waived Any Privilege.</u>

Even if Sea Mar had established all the foregoing elements for each of the unknown number of documents it is withholding (which it has not), Sea Mar has waived its ability to invoke the privilege by placing the substance of its quality improvement records squarely at issue. Take, for example, Citation No. 34, which concerns appropriate supervision for residents. In the SAC, Sea Mar affirmatively argues that Citation No. 34 was unwarranted because, "if patients were in danger, this would have been reflected at the clinic or hospital level," and "[n]o such evidence was



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3400, Seattle, WA 98101
*Telephone 206.624.0900*

found or even existed of sentinel events, adverse patient outcomes, or other quality issues." SAC ¶ 108. To be clear, Sea Mar has affirmatively alleged that its quality improvement documents ***do not show any evidence of patient endangerment.*** This allegation ***necessarily*** relies on the exact documents that Sea Mar now withholds. Having made such allegations, Sea Mar cannot now invoke RCW 43.70.510 to shield from discovery the very records upon which it relies.

A party waives privilege "when a party's use of a privilege is not consistent with the purpose the privilege serves." *McSorley v. Everett Clinic*, 34 Wash. App. 2d 323, 330-31 (2025). The purpose of RCW 43.70.510 is to encourage "internal candor, open discussion, and constructive criticism." *See Lowy v. PeaceHealth*, 159 Wash. App. 715, 721 (2011). That purpose is not served when a party weaponizes the statute to selectively disclose favorable conclusions—that its quality improvement records are devoid of evidence patient danger—while withholding the underlying documents that would allow ACGME to test whether that representation is true. This is precisely the risk that subject matter waiver is designed to prevent: "Selective disclosure of privileged material risks conveying an incomplete or even misleading picture to the trier of fact, because the privilege holder might unfairly disclose parts of privileged material that seem to support its position, while withholding context or other material undercutting its position." *McSorley*, 34 Wash. App. 2d at 329–30.

Sea Mar cannot use quality improvement documents as both a sword and a shield—relying upon the absence of findings to support its claims while withholding the very documents that may contradict its position. *See Valley Forge Ins. Co. v. Washington Square Hotel Holdings LLC*, 2022 WL 17361442, at *2 (W.D. Wash. Dec. 1, 2022) (court may compel production of information that "in fairness requires disclosure" and to avoid using discovery rules as both "a sword and a shield"); *Wadler v. Bio-Rad Labs.*, Inc., 212 F. Supp. 3d 829, 851 (N.D. Cal. 2016) (finding waiver of privilege when plaintiff was "poised to use [the privileged documents] offensively at trial" while "precluding [the defendant] from presenting [the underlying privileged communications] to rebut this evidence"). Subject matter waiver extends to material on the same subject "that fairness



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3400, Seattle, WA 98101
*Telephone 206.624.0900*

requires to be disclosed to avoid prejudice to the adversary party and distortion of the judicial process" that may result from selective disclosure. *McSorley*, 34 Wash. App. 2d at 330. Because Sea Mar has selectively disclosed the substance of its quality improvement records to gain a litigation advantage, it has waived the privilege as to all materials relating to patient safety, adverse patient outcomes, and quality assurance review contemplated in the ACGME's requests for production.

## IV. <u>At a Minimum, Sea Mar Must Produce Non-Privileged Documents Related to Quality Improvement.</u>

Even if the privilege were to apply to any documents satisfying all the necessary requirements, Sea Mar must nevertheless produce all documents ***related*** to quality improvement that are ***not*** privileged The privilege applies only to the "analysis, discussions, or communications that occurred during the proceedings of the quality assurance committee," and does not protect facts about incidents of patient endangerment, Adverse Patient Outcomes, or concern for patient safety, or documents that contain such facts and which are recorded in non-privileged documents. *Lowy*, 150 Wn App. at 788-89 (ordering discovery of documents that did not contain "any analysis, discussions, or communications that occurred during the proceedings of the quality assurance committee").

Sea Mar must therefore produce all non-privileged discovery that may refer to or contain the same facts and information within privileged documents, such as emails, memos, reports, database records, and similar documents. In *Branco*, for example, the court ordered the production of the defendant's "incident reports" because of the reports' "highly factual nature" which "underscores [the] risk management nature of these documents." 2006 WL 4484727 at *2. The court specifically found that the hospital's incident reports were not "merely for healthcare evaluation"—so as to be within the privilege—because the report form was predominantly factual in nature and contained only ***one*** question containing a quality-improvement assessment of the defendant's quality of care. That question called for the reviewer to determine whether the



**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3400, Seattle, WA 98101
*Telephone 206.624.0900*

resident's injury was due to abuse, neglect, or misappropriation, and was not sufficient to show the document was created and used exclusively for use by a quality improvement committee. *Id.*

Here, too, Sea Mar must produce documents that describe the facts of a patient endangerment incident, even if such incident also led to a privileged quality improvement report. To date, however, Sea Mar has refused to produce any such documents on the purported ground that the privilege extends to any document remotely related to a quality improvement incident. The law does not permit this expansive and unfair withholding.

**CONCLUSION**

For the foregoing reasons, the ACGME respectfully requests the Court enter an order compelling Sea Mar to produce documents as set forth above.

*Undersigned counsel confirms that the parties conferred in good faith as set forth in the Declaration of Patrick Nutter.*

Dated: June 24, 2026

STOEL RIVES LLP

/s/ Vanessa Soriano Power
Vanessa Soriano Power, WSBA No. 30777
vanessa.power@stoel.com
Jenna M. Poligo, WSBA No. 54466
jenna.poligo@stoel.com
600 University Street, Suite 3600
Seattle, WA 98101
Telephone: 206.624.0900
Facsimile: 206.386.7500

*I certify that this memorandum contains 4,065 words, in compliance with the Local Civil Rules.*

COVINGTON & BURLING LLP

Nathan E. Shafroth (*pro hac vice*)
nshafroth@cov.com
W. Douglas Sprague (*pro hac vice*)
dsprague@cov.com
Majid Waheed (*pro hac vice*)
mwaheed@cov.com
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: 415.591.6000

Patrick W. Nutter (*pro hac vice*)
pnutter@cov.com
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: 424.303.4643

Nicholas G. Miller (*pro hac vice*)
nmiller@cov.com
620 Eighth Ave.
New York, NY 10018
Telephone: 212.841.1000

*Attorneys for Defendant ACGME*