THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SEA MAR COMMUNITY HEALTH CENTERS,

Plaintiff,

v.

ACCREDITATION COUNCIL FOR GRADUATE MEDICAL EDUCATION,

Defendant.

Case No. C24-896 JNW

**SEA MAR'S OPPOSITION TO ACGME'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

NOTE ON MOTION CALENDAR: JULY 15, 2026



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000

# TABLE OF CONTENTS

INTRODUCTION ..... 1

BACKGROUND ..... 2

I. ACGME uncovered no compelling patient-safety issues before summarily withdrawing the Program's accreditation. ..... 2

II. ACGME met and conferred with Sea Mar regarding the QI privilege—but *not* the specific issues raised in this motion. ..... 4

III. Sea Mar subsequently reassessed the QI privilege and produced additional documents. ..... 5

LEGAL STANDARD ..... 6

ARGUMENT ..... 6

I. The motion should be denied because ACGME did not adequately confer. ..... 6

II. ACGME is not entitled to the requested discovery. ..... 9

A. Documents ACGME did not seek before it withdrew the Program's accreditation are not relevant. ..... 9

B. ACGME does not address (and Sea Mar renews) other objections to the disputed requests. ..... 10

C. In any event, the QI privilege applies here. ..... 11

CONCLUSION ..... 13



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**INTRODUCTION**

ACGME's motion—styled, in inflammatory fashion, a "Motion to Compel Production of Documents Regarding Patient Endangerment"—is both procedurally and substantively improper.

*First*, ACGME failed to meaningfully confer with Sea Mar. Although the Parties previously discussed the quality-improvement ("QI") privilege, they did *not* discuss the specific issues raised in ACGME's motion. Instead, ACGME earlier took the expansive (and unsupported) position that the QI privilege does not apply to discovery in civil litigation, full stop. Sea Mar disagreed—the relevant statutes plainly provide for application of the privilege in civil litigation—and *that* was the impasse where the Parties found themselves. ACGME now retreats from its prior position and raises new issues never discussed with Sea Mar about *when* the QI privilege applies in discovery, not *whether* it applies. ACGME misleadingly suggests "Sea Mar has failed to show it meets" the privilege's requirements, Dkt. 101 ("Mot.") at 10, but in reality ACGME never bothered to ask.

This is no mere technical oversight. The Federal Rules of Civil Procedure, Local Civil Rules, and this Court's Chambers Procedures all emphasize that "parties 'must make genuine efforts to resolve [] dispute[s] by determining … what specific, genuine objections or other issues, if any, cannot be resolved without judicial intervention.'" Chambers Procedures—Civil § 3.1 (quoting *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456, 459 (D. Kan. 1999)). ACGME compounded its missteps by unilaterally departing from the Court's preferred LCR 37 process, which the Parties had been using to address other discovery disputes. ACGME's decision to eschew a meaningful conferral process now requires Sea Mar and the Court to address issues that might have been resolved by the Parties—an especially glaring result given Sea Mar was already revisiting the QI privilege and preparing previously withheld materials for production when ACGME unexpectedly filed this motion. (In contrast, when ACGME informed Sea Mar that further conferral on other issues might be productive, Sea Mar opted to forego filing its own motion to compel pending possible nonjudicial resolution. *See* Dkt. 100.)



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000

*Second*, ACGME's ongoing campaign to undertake the sort of investigation it failed to complete two years ago runs up against an insurmountable relevance hurdle. Sea Mar's claims are predicated on *ACGME's* unfair, deceptive, and bad-faith conduct when it baselessly withdrew the Program's accreditation. This litigation is not about whether evidence existed that *might* have supported ACGME's decision but whether—as a matter of fact, not hypotheticals or wishful thinking—ACGME based its decision on sound evidence and reasoning and gave Sea Mar an opportunity to respond with countervailing facts. When ACGME withdrew accreditation, it had *no* compelling evidence that *any* patients were endangered due to shortcomings in the Program. ACGME's feverish attempt to now scrape together support for its preconceived and unfounded (not to mention calumnious) claim of "regular and widespread dangers to patient safety in Sea Mar's family medicine residency program," Mot. 2, should be rejected. ACGME cannot use this litigation to give itself a second bite at the apple and grasp at post-hoc support for its precipitous and unfair actions. Allowing it to do so would result in revictimization of Sea Mar—once again depriving Sea Mar of a fair chance to meaningfully appeal ACGME's investigation.

*Third*, ACGME wrongly interprets the QI privilege in any event. The privileges covers materials created for and maintained by QI committees—such as the documents that Sea Mar now withholds under the privilege. ACGME's suggestions that the QI privilege is extinguished if covered documents are used for another purpose (like resident education) and that Sea Mar has waived the privilege by asserting its claims in this litigation do not withstand scrutiny.

ACGME's motion should be denied.

## BACKGROUND

### I. ACGME uncovered no compelling patient-safety issues before summarily withdrawing the Program's accreditation.

Between 2015 and 2024, ACGME continued the Program's accreditation each year without citation. Dkt. 63 ("SAC") ¶¶ 55–56. Although the 2023 results of ACGME's annual surveys reflected challenges as the Program shifted its focus, ACGME nevertheless concluded the Program



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000

was "in substantial compliance with the ACGME's Program Requirements" and merely "encourage[d] the program to review results from the Resident Survey" moving forward. *Id.* ¶¶ 64–68. "Patient Safety" was one of the three "Areas for Improvement" flagged by ACGME, but *no* specific issues or incidents were recorded. Dkt. 24-2.

In April 2024, following a perfunctory half-day site visit, SAC ¶¶ 83–93, Sea Mar learned of ACGME's decision to withdraw the Program's accreditation and received a notification letter briefly describing forty-seven citations that purportedly informed the adverse action, *id.* ¶ 100. The letter revealed only *one* of the citations even purported to address patient safety—and that citation, like the other forty-six, did not survive scrutiny. *Id.* ¶ 107. Specifically, Citation 34 suggested "residents and faculty reported that inpatient supervision is not adequate resulting in adverse patient outcomes due to incompetent faculty." *Id.* ¶ 108. Setting aside the citation's exaggerated interpretation of the survey results—92.2% of resident respondents found the Program's level of faculty supervision was "[a]bout the right amount," "[a] little less than was needed," or "[m]uch more than was needed," while only two of the twenty-six respondents opined that faculty supervision was "[m]uch less than was needed"—neither the site visit report prepared by the ACGME field representatives nor the citations themselves identified any sentinel events, adverse patient outcomes, or other quality issues at Sea Mar or the Program's other participating institutions. *Id. No* such evidence was found or actually existed—which would have been clear to ACGME had it undertaken a thorough investigation. *Id.*

Notwithstanding this paucity of evidence, ACGME has continued to sound the drumbeat of patient safety in this litigation and tried to use discovery to compensate for its prior inadequate investigation. *See* Dkt. 102 ("Second Nutter Decl.") ¶ 18 (text of disputed RFPs, which request, among other things, "[a]ll Documents and Communications concerning, discussing, regarding, reporting, or alleging patient endangerment").



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000

## II. ACGME met and conferred with Sea Mar regarding the QI privilege—but *not* the specific issues raised in this motion.

ACGME broadly seeks "all documents and communications responsive to the ACGME's RFP No. 18, 19, 22, 36, and 37," Dkt. 101-1 at 1, but its motion addresses only relevance, Mot. 5–7, and the application of the QI privilege, *id.* at 7–13.[1] The Parties' conferrals on these RFPs did *not*, however, address the specific issues raised in ACGME's motion.

**RFPs 36 and 37.** On May 22, 2026, the Parties discussed Sea Mar's objections that RFPs 36 and 37 are vague, facially overbroad, and duplicative. Decl. of Conrad A. Sproul ("Sproul Decl.") ¶ 7. Though Sea Mar also invoked the QI privilege in objecting to these RFPs, ACGME did not raise that issue during the May 22 conferral. *Id.* ¶ 7(c). The Parties continued to confer regarding search terms, overbreadth, and ambiguity, but at no point did Sea Mar believe the Parties were at an impasse on RFPs 36 and 37, and the QI privilege was never discussed in connection with them. *Id.* ¶ 7(d)–(h).

**RFP 18.** The QI privilege was discussed as to RFP 18, but not in the manner ACGME suggests. During a May 28 conferral, ACGME reiterated its request that Sea Mar produce "completed safety incident reports, QI case evaluation forms, or root cause analyses" in response to RFP 18. *Id.* ¶ 8(b) (quoting Second Nutter Decl. Ex. 37, at 5–6). In response, Sea Mar invoked the QI privilege, explaining that incident reports, case-evaluation forms, and root-cause analyses would fall squarely within the protections of RCW 43.70.510(4). *Id.* Sea Mar further explained that documents reflecting the internal deliberations of a QI committee would also be privileged. *Id.* ACGME disagreed, suggesting the statutory text rendered the privilege inapplicable to civil discovery—an interpretation Sea Mar immediately disputed. *Id.* The following day, ACGME sent an email reaffirming its misreading that RCW 43.70.510(4) "provides an exception for documents

[1] The QI privilege is codified by statute, including RCW 70.41.200(3) (which contains the privilege for hospital-based QI efforts) and RCW 43.70.510(4) (which applies to certain other non-hospital healthcare facilities). The reach of these two statutes is substantially similar, though the procedural predicates differ. RCW 4.24.250 also prohibits discovery of healthcare materials that are shared among committees, boards, and others for salutary QI purposes.



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000

to be disclosed in discovery or as evidence at trial" and unilaterally declared an impasse. *Id.* ¶ 8(c) (quoting Second Nutter Decl. Ex. 41, at 15).

To facilitate further discussion, Sea Mar provided case authority and explained its position on the QI privilege in a letter dated June 1. *Id.* ¶ 8(d) (citing Second Nutter Decl. Ex. 42, at 4–6). This letter stated, "As ACGME asserts that Sea Mar is not entitled to 'withhold **any** documents' on the basis of QI privilege, we do not believe further conferral on this issue would be productive"—meaning Sea Mar remained open to further discussion about the *scope* of the QI privilege but not its very existence. *Id.* (quoting Second Nutter Decl. Ex. 42, at 6). ACGME did not engage with the QI privilege further other than in a June 5 email discussing the privilege in connection with a certain hospital-based "High Reliability Platform"; Sea Mar responded that the High Reliability Platform is not within its possession, custody, or control, and ACGME did not raise the QI privilege (or RFP 18) again. *Id.* ¶ 8(e) (citing Second Nutter Decl. Ex. 41).

**RFP 19.** The Parties also discussed RFP 19 at their May 28 conferral, but this discussion did not address the QI privilege. *Id.* ¶ 9. Instead, ACGME proposed that Sea Mar search the personnel files of four Sea Mar faculty members for responsive documents, which Sea Mar agreed to do. *Id.* (citing Nutter Decl. Ex. 42, at 7). Sea Mar did not believe the Parties were at an impasse on RFP 19, and ACGME's follow-up communications did not discuss RFP 19 generally or the QI privilege specifically. *Id.* (citing Second Nutter Decl. Exs. 40–41).

**RFP 22.** Sea Mar does not recall discussion of RFP 22 during the Parties' conferrals or in their written correspondence.

## III. Sea Mar subsequently reassessed the QI privilege and produced additional documents.

After receiving cursory ACGME correspondence alleging various deficiencies with Sea Mar's privilege log—but not mentioning the QI privilege specifically—Sea Mar agreed to review its privilege designations, add information to its log as needed, and downgrade documents if necessary. Sproul Decl. ¶¶ 11–12, Exs. 1–2. As part of that reappraisal—which began on June 18,



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000

six days before this motion was filed—Sea Mar identified several documents that, on further examination, did not appear to fully satisfy the QI privilege's statutory requirements. Sea Mar updated its privilege log accordingly and prepared and produced a reproduction set with the downgraded documents, but ACGME filed this motion before that process was completed. *Id.* ¶¶ 13, 15.

Sea Mar ultimately brought these developments to ACGME's attention and objected to ACGME's failure to meaningfully confer, urging ACGME to withdraw this motion pending further discussions. *Id.* ¶ 14, Ex. 3. ACGME declined and rebuffed the conferral offer. *Id.* ¶ 16, Ex. 3.

## LEGAL STANDARD

A motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Failure to undertake a good-faith conferral is ground to deny a motion to compel. *See Childress v. Darby Lumber, Inc.*, 357 F.3d 1000, 1010 (9th Cir. 2004); *see also* Local Rules W.D. Wash. LCR 37(a)(1) ("If the court finds that counsel for any party … failed to confer in good faith, … the court may take action as stated in [L]CR 11 of these rules.").

"The party seeking to compel discovery has the burden of establishing that its requests are relevant." *Park v. State Farm Fire & Cas. Co.*, No. 23-cv-01564-TL, 2024 WL 4494877, at *4 (W.D. Wash. Oct. 15, 2024). Only after "this showing is made" does "the party seeking to deny discovery [] carry a heavy burden of showing why discovery should be denied." *Id.* (citation modified).

## ARGUMENT

### I. The motion should be denied because ACGME did not adequately confer.

"[T]o bring a proper motion to compel … , a moving party must personally engage in two-way communication with the nonresponding party to meaningfully discuss each contested



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000

discovery dispute in a genuine effort to avoid judicial intervention." *Shuffle Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 171 (D. Nev. 1996). "'Good faith' is tested by the court according to the nature of the dispute, the reasonableness of the positions held by the respective parties, and the means by which both sides conferred" and "mandates a genuine attempt to resolve the discovery dispute through non-judicial means." *Id.*

ACGME did not satisfy the threshold requirement of good-faith conferral. As outlined above, ACGME's conferrals regarding RFPs 18, 19, 22, 36, and 37 did not address (let alone meaningfully) any of the specific issues raised in this motion. The QI privilege was discussed only in connection with RFP 18 and even then at only a high level, with the Parties disagreeing about whether it applied to civil discovery *at all*. *See* Sproul Decl. ¶ 8. ACGME took an extreme, borderline-frivolous position—that the privilege does not apply to discovery—that is irreconcilable with the plain text of the statute:

> Information and documents, including complaints and incident reports, created specifically for, and collected and maintained by, a quality improvement committee are not subject to review or disclosure, except as provided in this section, *or discovery or introduction into evidence in any civil action*, and no person who was in attendance at a meeting of such committee or who participated in the creation, collection, or maintenance of information or documents specifically for the committee shall be permitted or required to testify in any civil action as to the content of such proceedings or the documents and information prepared specifically for the committee.

RCW 43.70.510(4) (emphasis added); *see also id.* (listing several exceptions involving "civil action[s]"); RCW 70.41.200(3) (similar privilege for hospitals). No reasonable interpretation of this statutory text supports ACGME's initial position that the privilege does not apply in civil discovery, which is also readily refuted by caselaw addressing the QI privilege. *See, e.g.*, *Estes v. Providence Health & Servs.*, No. 21-CV-5042-TOR, 2023 WL 8531775, at *2 (E.D. Wash. Dec. 8, 2023) ("In Washington, the internal records of hospital peer review and quality improvement committees are privileged and immune from discovery in any civil action." (citing *Carbon v. Seattle Reprod. Med. Inc.*, No. 19-cv-01491-RAJ-JRC, 2020 WL 4339253, at *4 (W.D. Wash.



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000

July 28, 2020))). Given the baselessness of ACGME's position, the Parties' discussion of the issue was unsurprisingly brief, and Sea Mar informed ACGME that further conferral on ACGME's *then*-position would be unproductive.

ACGME has abandoned its earlier extreme position—and therein lies the issue. The Parties' earlier "impasse" was on the issue of whether the QI privilege applies in civil discovery. The Parties never discussed the new, nuanced arguments raised in ACGME's motion about whether the privilege applies to the specific documents at issue in this case. ACGME never asked about, and Sea Mar was never given the opportunity to address, "facts" showing "that all elements of the [QI] privilege apply … on a document-by-document basis." Mot. 7. Consequently, ACGME's suggestion that "Sea Mar has presented no evidence in conferrals, correspondence, its privilege log, or in its responses and objections demonstrating … facts about its purported quality improvement program," *id.* at 8, is decidedly misleading: The Parties never addressed the factual predicates for the QI privilege because ACGME never asked about them. If ACGME had raised these questions, then the conferral process would have continued and quite possibly obviated the need for this motion—which is, of course, the purpose of the conferral requirement.

ACGME's failure to meaningfully confer is especially significant given recent developments. Independent of (and, indeed, prior to) the filing of this motion, Sea Mar had reassessed the applicability of the QI privilege to its internal documents and, as of June 18, was in the process of revising its privilege log, downgrading the privilege assigned to certain previously withheld documents, and preparing those documents for production to ACGME. *See* Sproul Decl. ¶¶ 11–13, 15. (Sea Mar maintains the privilege applies to hospital-produced QI documents, as discussed below.) ACGME unexpectedly filed this motion before Sea Mar completed that process. And though Sea Mar informed ACGME of these facts before filing this opposition brief and encouraged ACGME to withdraw its motion, ACGME rebuffed Sea Mar's suggestion and offer to further confer. *See id.* ¶¶ 14, 16.



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000

## II. ACGME is not entitled to the requested discovery.

### A. Documents ACGME did not seek before it withdrew the Program's accreditation are not relevant.

ACGME claims "Sea Mar's patient incident and quality improvement documents are within the scope of discovery" because "[t]hese documents are expected to provide context for and likely corroborate the ACGME citations for failure to ensure adequate resident supervision and safe patient care, as shown by the few documents already produced that reveal such incidents." Mot. 5–6. But just because these materials might be relevant to the subject matter of this action does *not* mean they are "relevant to any party's claim or defense" as Rule 26(b)(1) requires. *See Trabulsi v. Wells Fargo Bank, Nat'l Ass'n*, No. 17-cv-02088-JLS-SK, 2018 WL 6444892, at *1–2 (C.D. Cal. Aug. 21, 2018) (denying motion to compel that was potentially "relevant to the subject matter of the Complaint" but not "the actual claims alleged in the Complaint"). Materials that ACGME neither requested nor considered *prior* to this litigation could not have informed its adverse decision and therefore have *no* bearing on what's at issue here—whether that decision was based on substantial evidence and a fair process. In other words, it does not matter whether additional materials might "provide context for" or "corroborate" ACGME's citations because those citations were based solely on the circumscribed universe of information that ACGME had before it when it made its decision. Having decided to unfairly limit its inquiry, ACGME cannot backstop its rash decision with whatever else it might have uncovered had it undertaken a different investigation—especially after it also arbitrarily limited what Sea Mar could present for consideration during its internal appeal.[2]

ACGME nevertheless contends these requested materials are relevant to Sea Mar's allegations that ACGME's citations were "manifestly erroneous," "factually baseless," "meritless," and "based in whole or in part on patent factual errors." Mot. 6 (quoting SAC ¶¶ 16,

---

[2] The evidence on which ACGME relied when withdrawing Sea Mar's accreditation and Sea Mar's rebuttal from its internal appeal are "the facts underlying each citation" relevant for trial. Mot. 6 (quoting Dkt. 77 at 2). There is therefore no inconsistency between Sea Mar's position here and the position it took when requesting additional trial days.



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000

18, 165). But each of these allegations contends ACGME possessed no factual basis for its citations *when it issued them to Sea Mar and sustained them on appeal*. Such allegations do not give ACGME carte blanche to redo its investigation years later in hopes of findings facts and opinions it neglected at the time it took adverse action.

Simply put, whether ACGME acted unfairly and deceptively must be judged against the record in front of it when it withdrew the Program's accreditation and upheld that decision on appeal. The Court needn't take Sea Mar's word for it—this was *ACGME's* position when it opposed expedited discovery two years ago. *See, e.g.*, Dkt. 33 at 12–13 (collecting cases and suggesting that materials not considered by ACGME "are [] irrelevant to this litigation"). ACGME was wrong about the application of this principle in the context of expedited discovery, but it cannot shy from it now: If ACGME wanted to corroborate its citations or "test Sea Mar's allegations … with the firsthand reports of residents and faculty," Mot. 6, it should have done so before taking adverse action, not after.

### B. ACGME does not address (and Sea Mar renews) other objections to the disputed requests.

Though ACGME's motion focuses exclusively on Sea Mar's relevance and QI objections, it seeks expansive relief requiring Sea Mar to "produce all documents and communications responsive to the ACGME's RFP No. 18, 19, 22, 36, and 37." Dkt. 101-1 at 1. Sea Mar therefore renews its additional objections to these RFPs. *See* Second Nutter Decl. ¶ 18 (reproducing Sea Mar's responses and objections to each contested request). Specifically, Sea Mar lodged and maintains the following objections (which, indeed, were the primary focus of the Parties' earlier conferrals on these RFPs, *see supra* pp. 4–5):

- **Overbreadth and Burden:** ACGME seeks "[a]ll Documents and Communications" related to "patient safety during or resulting from patient care" (RFP 18), faculty-resident interactions in a clinical or didactic setting (RFP 19), "efforts to improve the quality of the Program" (RFP 22), "Julio Jimenez's administration of the



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Everett clinical site" (RFP 36), and "Miguel Jimenez's administration of the Lynnwood clinical site" (RFP 37), Second Nutter Decl. ¶ 18—requests that encompass a substantial and burdensome amount of irrelevant material wholly unrelated to Sea Mar's claims and ACGME's decision to withdraw the Program's accreditation.

- **Vagueness:** RFP 22 does not define or explain the phrase "efforts to improve the quality of the Program," *id.*, and virtually *all* documents related to the Program might fall within that vague descriptor. Nor do RFPs 36 and 37 define the term "administration," which is similarly far-reaching.

**C. In any event, the QI privilege applies here.**

The QI privilege serves an important function: It "allows hospitals to conduct internal reviews to maintain quality health care. Otherwise, 'external access to committee investigations stifles candor and inhibits constructive criticism thought necessary to effective quality review.'" *Seattle Children's Hosp. v. King County*, 16 Wn.App.2d 365, 374–75 (2020) (citation omitted) (quoting *Anderson v. Breda*, 103 Wn.2d 901, 905 (1985)). Although "[i]t is not necessarily the case that all records documenting a hospital's efforts to comply with the statutorily mandated quality improvement program are privileged," the QI privilege indisputably applies to "records 'created specifically for, and collected and maintained by, a quality improvement committee.'" *Id.* at 375 (alteration in original) (first quoting *Fellows v. Moynihan*, 175 Wn.2d 641, 655 (2012); and then quoting RCW 70.41.200(3)).

ACGME cites caselaw suggesting the QI privilege can be applied only to documents "created for a quality improvement purpose ***and for no other purpose***." Mot. 10 (citing *Branco v. Life Care Ctrs. of Am., Inc.*, No. C05-1139JCC, 2006 WL 4484727, at *1 (W.D. Wash. May 4, 2006)). Sea Mar respectfully disagrees with this unpublished, nonbinding authority, as it imposes an additional limitation not contemplated by the texts of RCW 43.70.510(4) and RCW 70.41.200(3), both of which refer to "[i]nformation and documents, including complaints and incident reports, created specifically for, and collected and maintained by, a quality



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000

improvement committee"—not information and documents created *exclusively* for a QI committee. Not only is ACGME's narrow interpretation contrary to the statutory text, but it would defeat the purpose of conducting QI review in the first place if residents and other providers could not learn from incident reports without waiving the privilege.[3]

ACGME also suggests "Sea Mar has waived its ability to invoke the privilege by placing the substance of its quality improvement records squarely at issue." Mot. 10. But as discussed above, *supra* pp. 9–10, what's "squarely at issue" in this case is *ACGME's* conduct based on the record it considered when making and upholding the decision to withdraw the Program's accreditation. Materials that were never put before ACGME are not relevant to Sea Mar's claims. And because Sea Mar's "use of [the QI] privilege fits with the intended purpose of [that] privilege"—which is to say, fostering medical providers' robust and salutary use of QI materials, including for pedagogical purposes—no waiver has occurred. *McSorley v. Everett Clinic*, 34 Wn.App.2d 323, 330–34 (2025) (affirming waiver finding where clinic's "disclosure to serve its strategic interests in an employment discrimination lawsuit with a former employee [] undermine[d] purposes" of privilege).[4]

The materials on Sea Mar's amended privilege log that it continues to withhold under the QI privilege were produced by and for hospital QI committees and are therefore privileged under RCW 70.41.200(3). Sea Mar is standing by to further confer about the applicability of the QI privilege to these individual documents should ACGME contest the designations in Sea Mar's amended privilege log—which ACGME did not do previously and has not done since Sea Mar revisited its application of the privilege.

---

[3] Indeed, ACGME might have avoided the QI privilege had it requested these documents or asked about these issues during the pre-withdrawal site visit of the Program—but it did not.

[4] As indicated above, *supra* note 2, Sea Mar does not intend to "use the privileged documents offensively at trial," so there is no sword-and-shield issue here, Mot. 11 (citation modified).



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Phone: +1.206.359.8000
Fax: +1.206.359.9000

## CONCLUSION

ACGME did not engage in sufficient conferral before filing its motion and is not entitled to the discovery it seeks. Its motion should be denied.

* * *

The undersigned certifies that this opposition contains 4,195 words, in compliance with the Local Civil Rules.

Dated: July 9, 2026

By: *s/ David B. Robbins*
David B. Robbins, WSBA No. 13628
James F. Williams, WSBA No. 23613
Matthew P. Gordon, WSBA No. 41128
Cara V. Wallace, WSBA No. 50111
Jonathan P. Hawley, WSBA No. 56297
Juliana L. Bennington, WSBA No. 60357
Conrad A. Sproul, WSBA No. 62885
**ASHURST PERKINS COIE US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Telephone: +1.206.359.8000
Facsimile: +1.206.359.9000
David.Robbins@ashurstperkins.com
James.Williams@ashurstperkins.com
Matthew.Gordon@ashurstperkins.com
Cara.Wallace@ashurstperkins.com
Jonathan.Hawley@ashurstperkins.com
Juliana.Bennington@ashurstperkins.com
Conrad.Sproul@ashurstperkins.com

*Attorneys for Plaintiff*
*Sea Mar Community Health Centers*