THE HONORABLE JAMAL WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

SEA MAR COMMUNITY HEALTH CENTERS,

Plaintiff,

v.

ACCREDITATION COUNCIL FOR GRADUATE MEDICAL EDUCATION,

Defendant.

Case No. 2:24-CV-00896-JNW

**THE ACGME'S OPPOSITION TO SEA MAR'S MOTION TO COMPEL ADDITIONAL 30(b)(6) TESTIMONY**

## I. INTRODUCTION

Sea Mar Community Health Centers' ("Sea Mar") motion to compel additional Rule 30(b)(6) testimony from the Accreditation Council for Graduate Medical Education (the "ACGME") should be denied. Sea Mar noticed 63 topics under Rule 30(b)(6). The ACGME's Chief Accreditation Officer, Mary Kingensmith, MD engaged in fulsome preparations and gave substantive, binding testimony in response to questions that were asked, even when Sea Mar routinely asked questions beyond the noticed topics. Sea Mar now takes issue with testimony on five issues purportedly relating to eight of the 63 topics. Sea Mar's nit-pick approach, however, ignores the indisputably responsive testimony provided, mischaracterizes testimony on remaining topics, and improperly faults the ACGME's corporate designee for accurately answering Sea Mar's poorly framed questions. The motion should be denied.



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3400, Seattle, WA 98101
Telephone 206.624.0900

## II. FACTUAL BACKGROUND

### A. The Parties Conferred on the 63 Topics in Sea Mar's 30(b)(6) Deposition Notice and the ACGME Asserted and Preserved Objections.

Sea Mar tries to get traction with its motion by arguing that the ACGME "obstructed" Sea Mar's efforts to obtain 30(b)(6) testimony. Mot. at 1. This rhetoric is refuted by the record.

Sea Mar issued its initial Rule 30(b)(6) deposition notice with 63 topics on July 6, 2026. Dkt. 150-1; Ex. 3. The ACGME timely issued objections. *Id.* Ex. 6. As is standard practice, the parties engaged in written exchanges and multiple good-faith conferrals over the scope of the topics. *Id.* Exs. 4, 6-10. Sea Mar ultimately issued a Third Amended Rule 30(b)(6) Notice on August 12, 2026. *Id.* Ex. 3 (excerpted).

Through formal objections and letters exchanged in the conferral process before the deposition, the ACGME asserted and preserved its objections to overbroad, irrelevant, and poorly articulated topics. *See* 150-1 at pp. 53-60 (Objections excerpt); pp. 85-88 (Aug. 2, 2026 letter); Declaration of Vanessa Power ("Power Decl.") at Ex. B (July 27, 2026 letter). The ACGME agreed to provide a witness to testify on narrowed and clarified topics. *Id.* The ACGME did so, and Sea Mar had a week's notice that the ACGME would be designating Dr. Klingensmith for the topics.[1]

### B. The ACGME's Witness Provided Competent Testimony.

On August 14, 2026, Dr. Mary Klingensmith was deposed as the ACGME's corporate representative witness. *See* Power Decl., Ex. A. Dr. Klingensmith is the ACGME's Chief Accreditation Officer. *Id.* at 11:4-7. It is undisputed that Dr. Klingensmith was designated on all topics, subject to the parties' conferrals and except those where the ACGME declined to produce a witness. *Id.* at 11:17-24. She was well prepared for the deposition. Dr. Klingensmith met with in-house ACGME counsel and outside counsel over the course of three days and in excess of 12 hours. *Id.* 12:21-13:3. To prepare for the deposition, Dr. Klingensmith also spoke with the

[1] Sea Mar misleadingly characterizes this one-week notice as "[i]mmediately before the deposition," Mot. at 2, and conveniently omits the fact that it did not disclose the identity of its own August 13, 2026 30(b)(6) witness until the morning of that deposition. Power Decl. ¶ 7..

ACGME's chief of operations and finances (John Ogunkeye), the ACGME's chief of policy and communications (Dr. John Combes), the ACGME's senior vice president for field activities (Dr. Linda Andrews), the ACGME's chief education and research officer (Dr. John Co), and the ACGME's senior vice president for accreditation (Dr. Nikhil Goyal). *Id.* 13:4-14:2.

Sea Mar received a full day of testimony from Dr. Klingensmith. *Id.* at 333:3-4. At the end of the deposition, Sea Mar's counsel complained that he would "leave this deposition open … because I think you've [counsel] been interfering with the deposition, and I may ask the court to continue it. But I have no further questions this evening." *Id.* 333:5-10. In other words, Sea Mar did not hold the deposition open due to alleged deficiencies in the witness's testimony, but due to alleged "interference" in the form of objections. Indeed, at no point in the deposition did Sea Mar state that the ACGME's witness was unprepared or unable to answer any specific question.

On August 26 and September 1, 2026, counsel for the parties conferred on topics that Sea Mar claimed were outstanding. Dkt. 150 ¶¶ 4-6. Sea Mar's summary of the conferrals misstates the record. Sea Mar tried to use conferral to demand *counsel's* knowledge. *See id.* ¶¶ 5, 6(b) (noting Sea Mar's inquiries as to *counsel's* knowledge and declination by the ACGME's counsel to be subjected to questioning about the scope of prior document productions). The ACGME considered Sea Mar's contentions in good faith and determined that the demands for additional testimony on alleged lack of preparation were baseless. Power Decl. ¶ 8.

## III. ARGUMENT

### A. <u>Topic 23</u><br>The Institutional Review Committee Process.

With respect to Topic 23, the ACGME agreed to provide testimony on "the general process through which Sea Mar as a Sponsoring Institution received continuing accreditation in January 2024, including what information the Institutional Review Committee considered, the members of the Institutional Review Committee in January 2024, and any participation of the FM Review



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3400, Seattle, WA 98101
*Telephone 206.624.0900*

Committee in that decision." Dkt. 150-1 at p. 25. To the extent that Sea Mar asked questions on point, the ACGME answered them.

Sea Mar claims that Dr. Klingensmith did not testify about one small portion of the agreed topic, "what information the Institutional Review Committee considered" in January 2024. Mot. at 4. But the reality is that Sea Mar never asked the basic question: "*What information was considered*?" Instead, Sea Mar asked a series of convoluted questions about whether Dr. Klingensmith reviewed the Review Committee's minutes to determine "what the discussions were" and what committee members were "thinking." Power Decl. 43:4-7; 44:3-7. Not surprisingly, because what committee members were "thinking" is not in scope, Dr. Klingensmith answered honestly that she did not know. *Id.* Dr. Klingensmith cannot now be faulted for directly answering questions asked, or failing to answer a question that was never asked.

While the ACGME of course had a duty to prepare its designee thoroughly on the agreed, limited scope of Topic 23, it is Sea Mar, the questioning party, that bears the burden of asking proper, in-scope questions to elicit the testimony it seeks. *See Detoy v. City & County of San Francisco*, 196 F.R.D. 362, 366-67 (N.D. Cal. 2000) (burden on examining party to elicit testimony; designee not required to volunteer information beyond questions asked during deposition); *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, No. C 09-03529 JSW (LB), 2012 WL 3893310, at *2 (N.D. Cal. Sept. 10, 2012) (the 30(b)(6) notice "establishes the minimum about which the witness must be prepared to testify, not the maximum"); *Grahl v. Circle K Stores, Inc.*, No. 2:14-cv-305-RFB-VCF, 2017 WL 3783702, at *4-5 (D. Nev. Aug. 31, 2017) (denying motion to compel where 30(b)(6) designee was adequately prepared and moving counsel spent large portions of the deposition asking questions outside the noticed topics). Where, as here, "the deponent does not know the answer to questions outside the scope, that is the examining party's problem." *Detoy*, 196 F.R.D. at 367.

Further, Sea Mar ignores the context, which shows that Dr. Klingensmith fully addressed the questions within the scope of Topic 23 that were actually asked. Dr. Klingensmith explained





STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3400, Seattle, WA 98101
Telephone 206.624.0900

the chain of reporting with respect to accreditation and the Institutional Review Committee. Power Decl., Ex. A 20:10-21, 22:4-25:9. She testified at length about the process itself. *See id.* 119:8-121:19. And Dr. Klingensmith directly answered the factual question—whether the Institutional Review Committee and Family Medicine Committee coordinated—confirming that there was "no interaction" between the Family Medicine Review Committee and the Institutional Review Committee before the decision to put Sea Mar on probation. *Id.* 330:19-24. All of this reflects informed testimony about the ACGME's process, not any gap in preparation. The only gap at issue here, if anything, is Sea Mar's deficient questioning.

**B. <u>Topic 29</u>**
**The ACGME's Documentation and Retention Practices.**

Subject to objections and agreed narrowing of the scope through conferral, the ACGME agreed to provide testimony on Topic 29 regarding the ACGME's general practice and policy of documentation at the ACGME's meetings and accreditation deliberation and decision-making, including the rationale for and implementation of policies related to meeting minutes such as those taken at the Family Medicine Review Committee's April 18-19, 2024 meeting. Dkt. 150-1 at 63-64. The ACGME provided responsive testimony.

Dr. Klingensmith testified directly regarding the ACGME's retention practices and the underlying policies. She identified the operative Retention Policy provision — "Item K. Reviewer books, RC member notes, other materials used in or produced for use in an RC meeting that are not otherwise required to be retained, destroyed at end of meeting." Power Decl. Ex. A at 284:12-16; 285:4-21. She confirmed for the Retention Policy was applied to the notes from the April 18-19, 2024 Family Medicine Review Committee's meeting. *Id.* at 285:4-286:18. And she explained the twofold rationale for the policy:

> There are two reasons. One is that we consider the deliberations of the review committee to be confidential, and we wouldn't want notes to be seen by just anyone. And secondly, we view the issuance of a letter of notification to be the source of truth that we need to follow moving forward. So any disputes or disagreements or deliberations that led to that letter of notification are immaterial once that letter of notification is issued.



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3400, Seattle, WA 98101
*Telephone 206.624.0900*

*Id.* at 286:23-287:15.

Despite this testimony, Sea Mar contends that Dr. Klingensmith could not answer basic questions about the ACGME's documentation practices. Not so. Sea Mar's real complaint is that Dr. Klingensmith could not confirm from personal knowledge whether specific reviewer notes generated during the April 2024 meeting had, in fact, been shredded on that day. But she gave a complete answer: the reviewer materials "would have been destroyed at the conclusion of the meeting" under the retention schedule. While Dr. Klingensmith was "not physically present" when the destruction occurred, she confirmed the process had been carried out by reviewing the prior testimony of the chair of the Review Committee, Dr. Louito Edje, who testified about her notation and destruction practices. *Id.* 285:22-286:11. That is exactly the type of "information known or reasonably available to the organization" that Rule 30(b)(6) contemplates. The ACGME's designee was not obliged to volunteer speculation about whether a specific piece of paper had been destroyed, particularly where the applicable policy required its destruction, where Sea Mar has already deposed the committee chair (Dr. Edje) on the point, and there is no indication that the policy was not followed—or that any committee member besides Dr. Edje even took any notes to begin with. *Id.*, Ex. D at 245:3-15.

Sea Mar's remaining examples of alleged lack of preparation are similarly unavailing. That Dr. Klingensmith did not know the precise duration of the Review Committee's discussion of Sea Mar (Power Decl., Ex. A at 284:17-24) or could not identify the exact time at which the April 2024 minutes were generated (*id.* 279:11-24) is not a gap in preparation; these very specific questions are not within the scope of the topic. That Dr. Klingensmith was allegedly unaware that the ACGME's policies used the term "minutes" is not reflective of a lack of preparation and Sea Mar's argument is contradicted by the transcript itself. She qualified her answer (*id.* 280:4-9) and after being directed to a specific policy, Dr. Klingensmith testified regarding the policy. *Id.* at 280:16-281:4.



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3400, Seattle, WA 98101
*Telephone 206.624.0900*

Sea Mar complains that Dr. Klingensmith did not confer with a specific individual in preparation for Topic 29, Eileen Anthony. Mot. at 5. But Ms. Anthony was unavailable to Dr. Klingensmith because Ms. Anthony's husband died the week before the deposition. *Id.* 239:2-9. Where a witness with personal knowledge is unavailable for reasons beyond the organization's control, Rule 30(b)(6) does not compel the impossible: it requires only that the designee be prepared to testify on "information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). Regardless, Sea Mar points to no actual, substantive deficiency with the ACGME's testimony. Instead, Sea Mar conflates Topic 29, which calls for testimony on the ACGME's general practices and implementation of documentation and retention policies, to an alleged failure to provide testimony about the "internal deliberations" at the April 2024 meeting or "relevant information about the Review Committee's decision-making" processes. Mot. at 6. Sea Mar misses the mark. Dr. Klingensmith provided competent testimony on the actual scope of Topic 29.

**C. <u>Topic 30</u>**
**The ACGME's Approval of Program Directors.**

The ACGME agreed to provide testimony on Topic 30 regarding its general practices regarding approving program directors, and the application of those practices to the ACGME's approval of Drs. Gemperline and Jimenez as Sea Mar program directors. Dkt. 150-1 at 69. Dr. Klingensmith provided that testimony. She described the approval process from start to finish. Power Decl., Ex. A at 226:10-227:21. She explained that the program initiates the request through the ACGME's ADS system, that Ms. Anthony (as executive director of the Family Medicine Review Committee) reviews the submitted information, and that "as long as some specifics of that individual are — appear to be recorded in our ADS system, an administrative approval is done." *Id.* 226:15-227:2. She described the specific criteria "checklist" that Ms. Anthony applies — including whether the proposed program director is "currently certified in the specialty." *Id.* 227:8-12. She described the acknowledgment interface used to confirm the change with the program. *Id.*



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3400, Seattle, WA 98101
*Telephone 206.624.0900*

227:14-21. And she described the broader analysis undertaken when a new program director appointment is accompanied by an increase in resident complement, such as with the pre-2023 requirement of approximately 1,650 patient encounters as a measure of adequacy of clinical experience. *Id.* 228:15-229:6.

Sea Mar's real objection is not that Dr. Klingensmith failed to describe the process generally or as applied to specific approval of Sea Mar program directors, but that she could not testify to what Ms. Anthony specifically considered when reviewing Sea Mar's file. Mot. at 7. Topic 30, however, calls for testimony on the ACGME's process, not a detailed accounting of whether Ms. Anthony reviewed the minutiae in the history of prior Sea Mar program directors, or how Ms. Anthony would have viewed particular information in the ADS interface about those program directors. *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, 2012 WL 1511901, at *2 (N.D. Cal. Jan. 27, 2012) (Rule 30(b)(6) does not permit "burdening the responding party with production and preparation of a witness on every facet of the litigation").

Sea Mar cannot place on the ACGME responsibility for its own failings in hiring or managing its program director. The role of the ACGME is structural, and the process involved in approving program directors was provided in response to deposition questions. The specific material that Ms. Anthony reviewed years ago and how she may have viewed it is not only outside the scope of Topic 30, it is not known or reasonably available to the ACGME as an organization at this time. Ms. Anthony's subjective thought process resides with Ms. Anthony, who, as noted, was unavailable to Dr. Klingensmith due to her husband's death, *id.* 239:2-9, and who Sea Mar expressly declined to depose when it had the opportunity to do so. *Id.*, Ex. E.

The ACGME provided competent testimony on Topic 30, detailing the ACGME's approval process for program directors and the checklist applied to approval of Sea Mar's program directors. Nothing more is warranted.



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3400, Seattle, WA 98101
*Telephone 206.624.0900*

**D. <u>Topics 37 and 51</u>**
**Availability of Information to Review Committee and Appeals Panel.**

Topics 37 and 51 collapse two distinct issues. Topic 37 concerns the ACGME's general practices, policies, and procedures applicable to determining whether information was available at the time of the review committee's decision, and as applied to Sea Mar's appeal. Dkt. 150-1 at p. 65. The ACGME objected to providing a witness on Topic 51, which called for testimony on the "Appeals Board's policy basis for, meaning, and application of" a portion of the Appeals Board's Report denying Sea Mar's appeal, explaining that "any information therein that was not available to the RC and the Site Visitors cannot be taken into account by the Appeals Board." *Id.* at pp. 69-70. The ACGME agreed to designate Dr. Klingensmith on Topic 37 as narrowed through conferral. Dkt. 150-1 at 63-64. It declined to designate a witness to testify to the internal deliberations of the independent Appeals Panel under Topic 51, on the ground that those deliberations are not within the ACGME's institutional knowledge and are not properly the subject of Rule 30(b)(6).

At bottom, the topics seek information on what information was available to the Review Committee and later the Appeals Panel. The ACGME has explained this *ad naseum* through discovery and did so again through its corporate designee. Dr. Klingensmith testified that the Appeals Panel reviews the record before it, that its report on its face reflects "which information was allowed and which information was not," and that the Executive Committee, in turn, had access to "the full body of information" and could infer from the Appeals Panel report which pages had been considered and which had been rejected. Power Decl., Ex. A at 135:16-136:6; 137:11-24. That is just the type of institutional testimony a Rule 30(b)(6) designee is called to give, drawn from a document — the Appeals Panel report. To the extent Sea Mar wanted to reconstruct which specific pages of the 800-page appeal record informed the individual Panelists' internal deliberations, that information is purely speculative but sits, if anywhere, with the individual Panelists themselves. Notably, pursuant to a third-party subpoena it served, Sea Mar has already deposed the Appeals Panel Chair in her personal capacity.



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3400, Seattle, WA 98101
*Telephone 206.624.0900*

Sea Mar's theory that the Appeals Panelists must be treated as "agents" of the ACGME for whom the ACGME must corporately answer under Rule 30(b)(6) misapprehends their relationships and the law. Appeals Panelists are unpaid volunteers who self-nominate through an open, public call for volunteers and are vetted by ACGME staff for graduate medical education experience before being placed in a pool of potential panelists. Power Decl., Ex. A at 327:2-19. Sea Mar was given a list of candidates and, as is standard under the policy, an opportunity to strike. *Id.* 327:20-24. Panelists are convened, on an appeal-by-appeal basis, to render an independent decision "in their best knowledge as medical professionals." *Id.* 111:7-13. As Dr. Klingensmith testified, the Appeals Panelists "are not acting as agents of the ACGME," *id.* 111:11-14, but rather bring their independent professional judgment to bear within the framework of the ACGME's policies and procedures. That the panel operates within a defined scope of dispositions (affirm or reverse), consistent with the ACGME's "usual practices and policies" (*id.* 108:10-19), does not convert independent volunteer decision makers into corporate agents whose deliberations the ACGME can compel or reconstruct.

Even were the Appeals Panelists somehow "agents" (they are not), Rule 30(b)(6) requires only that the corporation testify to information "reasonably available" to it. The ACGME does not sit in on Appeals Panel deliberations, does not record them, and receives only the panel's written report as the operative work product—it is Sea Mar who received the Appeals Panelists' personal documents (from their non-ACGME emails) after serving third-party subpoenas. Preparing a designee to testify about what individual, independent volunteer decision makers were "thinking" during those deliberations exceeds both the scope of Topic 37 and what Rule 30(b)(6) requires. *See Tarver v. City of Seattle*, No. 22-cv-736, 2023 WL 8188837, at *1 (W.D. Wash. Nov. 27, 2023) (Rule 30(b)(6) questioning must be limited to factual "information known or reasonably available" to the organization); *Detoy*, 196 F.R.D. at 366-67. Given that Sea Mar is already aware from its deposition of the Appeals Panel Chair that she did not maintain a list "which identified



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3400, Seattle, WA 98101
*Telephone 206.624.0900*

what information [she] determined should not be considered," (Dkt. 150, Ex. 17 at 125:19-22), Sea Mar's feigned indignation regarding these topics should be dismissed.

### E. <u>Topics 54, 55, 56</u> Dr. Klingensmith Provided Responsive Testimony Regarding the ACGME's September 28, 2024 Board Meeting.

Topics 54, 55, and 56 concern the September 28, 2024 Board of Directors meeting at which the ACGME's Board upheld the decision of the Review Committee to withdraw Sea Mar's accreditation. Dr. Klingensmith was in attendance at the meeting, so in addition to her preparation with Dr. John Co, who presented at the meeting regarding Sea Mar's program, she had personal knowledge to fall back on to address the topics. She gave fulsome, responsive testimony[2]. Sea Mar's motion recasts perfectly adequate answers as "gaps" and misapplies the burden of Rule 30(b)(6) in the process.

On the substance of the September 28 meeting, Dr. Klingensmith testified that Drs. Cheong and Co presented the Executive Committee's recommendation to the Board (Power Decl., Ex. A at 87:8-9); that the presentation was "fairly lengthy" — "certainly more than a half an hour" and "probably" more than 45 minutes (*id.* 86:6; 88:9-12); that it was lengthy because of the unusually high number of citations at issue (*id.* 88:13-16); that the same slide deck used at the Executive Committee was "given to and reviewed by … the board members, including the executive committee" (*id.* 97:2-8); that the full 800-page appeal record — the court reporter's transcript, the program file, and the appeal materials — "would have been in the materials presented to each board director prior to the board meeting" through the software platform, BoardEffect (*id.* 95:6-13); and that there was substantive discussion of "substantial compliance" with administrative procedures, which she identified as "an important aspect of the reason this was being presented at the executive committee," including "questions about, is this usual, is this typical, is this … consistent with our policies and procedures." *Id.* 99:14-101:3. Where Dr. Klingensmith could not

[2] Sea Mar's counsel acknowledged as much during his examination of these topics: "She's giving me information." Power Decl., Ex. A at 96:20.



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3400, Seattle, WA 98101
Telephone 206.624.0900

recall a specific detail nearly two years after the fact, such as precisely how many minutes the discussion took or the verbatim exchange over compliance, she said so plainly. That is candor, not lack of preparation. Rule 30(b)(6) is "not designed to be a memory contest." *Bank of N.Y. v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 150 (S.D.N.Y. 1997).

Sea Mar's complaints about categories of information that the ACGME does *not* create or retain does not give rise to an argument that Dr. Klingensmith's preparation for the deposition was insufficient. The ACGME does not record audio or video of its Board or Executive Committee consideration of appeals; Dr. Klingensmith testified to that directly (Power Decl., Ex. A 74:9-75:14) and the ACGME has already explained to Sea Mar that it does not record the portions of the Board of Directors' meetings regarding appeals of accreditation decisions. *Id.*, Ex. C. Likewise, the ACGME does not distribute pens, paper, laptops, or iPads at its meetings and does not collect Board members' personal materials at the end of meetings. *Id.* Ex. A at 79:2-24; 80:1-8. Dr. Klingensmith personally did not observe any note-taking at the September 28 meeting, but described the hybrid Zoom interface through which members could type or take their own notes if they chose. *Id.* 79:8-19. On documents provided to Board members, she described the BoardEffect platform, the collaborative curation of the meeting packet by the CEO, Board Secretary, and Board Chair, and confirmed that the appeal slide deck was reviewed by Board members. *Id.* 75:15-77:8; 97:2-8. Dr. Klingensmith acknowledged that BoardEffect (replaced in late 2024 by Boardvantage) did not, to her knowledge, keep an audit trail of when individual Board members opened specific documents — a limitation (if at all) of the ACGME's document management system, not a gap in preparation. *Id.* 77:11-78:6.

On whether pending litigation was referenced at the September 28 Board meeting, Dr. Klingensmith testified that at the earlier Executive Committee meeting "it was stated that there was pending litigation." Power Decl., Ex. A 67:6-8. She did not recall a specific reference to the litigation at the September 28 Board meeting or at any other Board or executive committee meeting



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3400, Seattle, WA 98101
*Telephone 206.624.0900*

she attended in her prior role. *Id.* 73:22-74:8. That is the answer, and Sea Mar has not identified anything that would render it incomplete.

Sea Mar's remaining points do not warrant reopening the deposition. Whether Dr. Cheong or Dr. Co personally cast a vote on their own recommendation is a fact reflected (or not reflected) in the executive committee minutes; Dr. Klingensmith testified to what the minutes show and, where they were silent, said so. Power Decl., Ex. A 104:1-20. The objections Sea Mar characterizes as "improper" are ACGME counsel's targeted, attorney work product objections to questions calling for identification of the specific documents Dr. Klingensmith reviewed with counsel in preparing for the deposition — not objections to any substantive Board meeting question. *Id.* 68:13-69:5; 87:11-13. Those objections in no way prevented Dr. Klingensmith from testifying at length, as she did, to the ACGME's institutional recollection of the September 28 meeting itself.

## IV. CONCLUSION

The Court should not reopen a deposition where the witness competently answered questions posed within the scope of the disputed topics. *See Grahl*, 2017 WL 3783702, at *4-5 (denying motion to compel where the Rule 30(b)(6) designee was "not unprepared to testify" and moving counsel spent "considerable portions of the deposition asking … about matters outside of the specific topics she was designated to testify about").



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3400, Seattle, WA 98101
*Telephone 206.624.0900*

*I certify that this memorandum contains 4,198 words, in compliance with Local Civil Rules.*

DATED September 25, 2026.

STOEL RIVES LLP

*s/ Vanessa Soriano Power*
Vanessa Soriano Power, WSBA No. 30777
vanessa.power@stoel.com
Jenna M. Poligo, WSBA No. 54466
jenna.poligo@stoel.com
600 University Street, Suite 3400
Seattle, WA 98101
Telephone: 206.624.0900
Facsimile: 206.386.7500

COVINGTON & BURLING LLP

Nathan E. Shafroth (*pro hac vice*)
nshafroth@cov.com
W. Douglas Sprague (*pro hac vice*)
dsprague@cov.com
Majid Waheed (*pro hac vice*)
mwaheed@cov.com
415 Misson Street, Suite 5400
San Francisco, CA 94105
Telephone: 415.591.6000

Patrick W. Nutter (*pro hac vice*)
pnutter@cov.com
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: 424.303.4643

Nicholas G. Miller (*pro hac vice*)
nmiller@cov.com
620 Eighth Ave.
New York, NY 10018
Telephone: 212.841.1000

*Attorneys for Defendant ACGME*