THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SEA MAR COMMUNITY HEALTH CENTERS,

Plaintiff,

v.

ACCREDITATION COUNCIL FOR GRADUATE MEDICAL EDUCATION,

Defendant.

Case No. C24-896 JNW

**SEA MAR'S OPPOSITION TO ACGME'S MOTION TO COMPEL SEA MAR'S RULE 30(B)(6) TESTIMONY**

NOTE ON MOTION CALENDAR: OCTOBER 1, 2026

## I. INTRODUCTION

ACGME's motion to compel is improper, unreasonable, and unfair. It is improper because ACGME failed to confer in good faith. It is unreasonable because ACGME seeks further testimony on Topics it does not allege were defectively addressed. And it is unfair because many of the supposed deficiencies in testimony are, in fact, the result of ACGME's counsel's oppressive questioning and refusal to allow Sea Mar's representative to consult allowed materials.

Sea Mar made a conscientious, good-faith effort to designate and prepare knowledgeable witnesses. ACGME examined those witnesses for a total of 833 pages of testimony and nearly *21 hours*. After the deposition concluded, ACGME vaguely informed Sea Mar that much of Tyler Lawrence, Ph.D.'s testimony was insufficient and declared an impasse when Sea Mar did not



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

immediately agree. ACGME then took *19* days to identify exactly four supposedly unanswered questions within 320 pages of testimony. ACGME claims these four allegedly unanswered questions justified two additional hours of 30(b)(6) deposition time.

ACGME's four identified questions did not support its position, and Sea Mar disagreed that these supposed deficiencies merited additional time. Now, for the first time in its motion, ACGME identifies more passages it claims to be deficient. ACGME is incorrect as a factual matter. Moreover, its failure to identify these issues during the parties' conferral makes this motion procedurally improper.

The motion itself also makes nonsensical arguments. For instance, ACGME complains Mr. Lawrence could not identify which of the recommendations of the physician who performed a mock site visit Sea Mar did not adopt. However, ACGME's motion does not actually allege that Topic was deficiently addressed. Further, ACGME complains that Mr. Lawrence could not remember certain things, but fails to note that ACGME's counsel directed Mr. Lawrence not to look at documents Mr. Lawrence brought to aid his memory.

ACGME's failure to confer in good faith prior to filing this motion renders it procedurally improper. Even if it were procedurally proper, the record does not justify reopening the deposition. The Court should deny ACGME's motion.

## II. STATEMENT OF FACTS

On August 6, 2026, Sea Mar and ACGME agreed, after multiple meet and confers, on revised wording for ACGME's 30(b)(6) topics. Dkt. 161-3 at 3–4, 6. Mr. Lawrence was designated to testify on behalf of Sea Mar on the following Topics:



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Topic 1 (as relevant here):

> changes made to the Program between July 1, 2022 and April 19, 2024 that addresses:
>
> - Changes planned or implemented to address ACGME 2023 survey results, 2023 internal surveys, and 2023 internal focus groups, taking into account the documents you specifically cited.

Topic 5:

> Sea Mar's preparation for the February 20, 2024 Site Visit (the "Site Visit") post-dating its announcement to Sea Mar on October 11, 2023, specifically:
>
> - Surveys or focus group data reviewed as part of Sea Mar's preparation for the Site Visit;
> - The rationale behind conducting a mock site visit and if any further mock site visits were considered by Sea Mar;
> - Sea Mar's communications with WWAMI in preparing for the Site Visit;
> - Any formal faculty or resident meetings held by the Program for purposes of preparing for the Site Visit;
> - Sea Mar's process of collecting documents requested by ACGME related to the Site Visit;
> - Sea Mar's process of updating ADS related to the Site Visit;
> - Communications between Sea Mar and ACGME preparatory to the Site Visit; and,
> - Sea Mar's actions (beyond its normal processes and procedures) between October 11, 2023 and February 20, 2024 taken to address compliance with applicable ACGME Family Medicine Program requirements in anticipation of the Site Visit.

Topic 11:

> any formal non-privileged Sea Mar management deliberation over re-applying for new Family Medicine program accreditation and specifically:
>
> - Any Sea Mar management discussions with Providence around May 2024 regarding reapplying;



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

- Any Sea Mar management discussions with WWAMI regarding re-applying;
- Any Sea Mar management discussions with Ted Epperly regarding re-applying; and,
- Any discussions by the Graduate Medical Education Council or by Sea Mar's management regarding reapplication for accreditation of its Marysville program

*Id.*

Mr. Lawrence spent ***40*** hours preparing to give testimony on these topics. Ex. 2 at 18:15-19:3.[1]

The deposition occurred on August 14, 2026, beginning at 9:02 AM and continuing until 6:28 PM—a total of 6 hours and 55 minutes on the record. Williams Decl. ¶ 5. On August 19, Ms. Power, counsel for ACGME, wrote to Sea Mar: "I'm writing to schedule a conferral call regarding Sea Mar's failure to provide a corporate witness sufficiently prepared or able to competently testify about subsets of Topics 1 and 5 and the entirety of Topic 11." Ex. 1 at 17.

That conferral took place on August 21, 2026. Following the conferral, Mr. Williams, counsel for Sea Mar, circulated to ACGME counsel a summary of the conversation. ACGME did not object to his summary. In relevant part, he wrote:

- [Sea Mar] asked that [ACGME] identify the particular 30b6 questions that were not answered or inadequately addressed during the Tyler Lawrence deposition so we can determine whether we agree and, if so, which witness can be made available to respond
- [ACGME] disagree[d] with having to identify any particular questions that Tyler Lawrence failed to answer and, instead, contend that [Sea Mar's] witness generally was not prepared to address topics 1, 5 and 11

[1] Sea Mar's exhibits are attached to the Declaration of James F. Williams ("Williams Decl."), filed concurrently. Ex. 2 contains certain pages of the Lawrence 30(b)(6) Deposition that appear in Dkt. 161-4. They are refiled for the ease of the Court.



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

- We (Sea Mar) do not agree that the parties are at an impasse because we are willing to address any specific questions ACGME believes were not answered

- You (ACGME) do believe we are at an impasse but will consider our request for greater specificity on the questions you believe were not answered.

*Id.* at 9–10.

Counsel for ACGME responded 19 days later and stated—without any further discussion—that they would not seek further testimony on Topic 1, but the parties "remain at an impasse with respect to Topics 5 and 11." *Id.* at 7.

For Topic 5, ACGME identified *three questions* it saw as deficiently answered, only one of which actually fell within the scope of that Topic:

**Topic 5 (140:25-142:11)**
A This document says he suspected we will get, and I quote, maybe a couple of citations, end quote, from the coming site visit.
MR. NUTTER:
Q I'm asking you if you heard or read Dr. Evans say, in any capacity, that he expected you to get a couple citations?
A In my personal capacity, I recall him saying about that.
Q Okay. And did you ask him what citations he thought Sea Mar would get?
A Personally I don't recall if that was the case or not.
Q Okay.
A Or we did or didn't or maybe he did say in what he said. Again, this was two and a half years ago at this point.
Q Okay. So based on what you remember there, did you think that Sea Mar was going to get a couple citations?
A Personally?
Q Yeah.
A I'm not sure what I thought about -- I mean, I can't speculate what ACGME is going to do. Yeah, it's just I can't speculate that.
Q No, I'm asking you if you expected. It's a factual question. Did you expect to get a couple citations from the site visit?
MR. WILLIAMS: Objection asked and answered, calls for speculation.
THE WITNESS: Yeah, whether it's current me or past me, it would be speculative as to -- we can't speak what ACGME would or wouldn't do.
Q Dr. Lawrence I'm asking for all versions of you, okay? It's not past, present, whatever. Do you recall thinking at the time that Sea Mar was going to get some citations?
MR. WILLIAMS: Objection to the form of the question, asked and answered, calls for speculation.
THE WITNESS: I don't know if I recall speculating one way or another.

*Id.* (highlighting in original). On Topic 11, ACGME identified *a single question* that it saw as deficiently answered:

**Topic 11 (75:10-17; 83:22-84:14)**
Q: Were there discussions with Providence about reapplying?
A: I think this gets out the corporate topics, so again, I'll personally answer you as best I can. This might have come up with the meeting with Providence, I'm not—I'm not sure. If you could give me a document on this, which I mean, that would be helpful, we could talk further about it.
* * *
Q: Were there meetings about reapplying?. . . I'm talking about meetings with Providence about renewing the agreement if Sea Mar applied?
* * *
A: Thank you. Any discussion about reapplication would have been with, you know, with Sea Mar management would have been with counsel.
Q: Is that a no? Were there no meetings?
A: Again, the meetings would have been – Sea Mar management would have been about reapply would have been with outside counsel or with our counsel.

*Id.* at 8 (highlighting in original).



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

After waiting over two weeks to provide examples of supposedly deficient testimony, ACGME gave Sea Mar 24 hours to agree to further testimony or face a motion to compel. *Id*.

Counsel for Sea Mar asked for clarity on whether "the highlighted questions below are the ones you believe were not answered," pointed ACGME toward four pages of testimony that addressed the purportedly deficient Topic 11 answer, *id.* at 5–6; Ex. 2 at 321:3–322:5, 323:1–326:5, and noted that ACGME completed its examination with several minutes remaining on the deposition clock. Ex. 1 at 6.

ACGME's counsel responded that the highlighted questions were "reflective of questions under Topics 5 and 11 to which Mr. Lawrence provided non-responsive or evasive answers, did not answer on behalf of the entity, or simply would not answer." *Id.* at 4. ACGME's counsel also accused Sea Mar of "gamesmanship" because "Mr. Lawrence refused to answer questions when posed by the ACGME's counsel, but then seemingly understood the topic and answered the questions you asked." *Id.* at 4–5.

Counsel for Sea Mar responded, "[w]e disagree about impasse. A motion to compel because of four questions is surprising, unnecessary and wasteful." *Id.* at 3. ACGME responded that Sea Mar was "misconstru[ing] the scope of the issue, as it is obviously not limited to four exemplar questions." *Id.* at 3. However, ACGME did not identify any further testimony it considered problematic. *See id.* The parties conferred one final time on September 10, 2026. *Id.* at 1. ACGME again declined to identify further problematic testimony and, instead, simply suggested that both parties drop their respective motions to compel further 30(b)(6) testimony. *Id*. at 1–2.

Sea Mar declined, responding that "[w]e respectfully disagree with your request to have two hours of additional 30(b)(6) testimony from Sea Mar on topics 5 and 11 because our designated



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

witnesses have already provided about 21 total hours of testimony." *Id.* at 1. ACGME filed the instant motion the same day. *See generally* Dkt. 156.

## III. LEGAL STANDARD

Rule 30(b)(6) requires an organization to designate one or more persons to testify about information known or reasonably available to it. Fed. R. Civ. P. 30(b)(6). However, "a Rule 30(b)(6) deposition is not a memory test, and '[a]bsolute perfection is not required'" of a witness. *Fuentes v. Classica Cruise Operator Ltd, Inc.*, 32 F.4th 1311, 1322 (11th Cir. 2022) (citation modified).

In ruling on a motion to compel under Rule 37, "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]" *Klopman-Baerselman v. Air & Liquid Sys. Corp.*, No. 3:18-cv-05536-RJB, 2019 WL 5227332, at *2 (W.D. Wash. Oct. 16, 2019) (quoting Fed. R. Civ. P. 26(b)(2)(C)).

## IV. ARGUMENT

### A. ACGME's motion is improper because ACGME failed to confer in good faith before filing.

Rule 37 requires a party to confer in good faith prior to filing a motion to compel discovery. Fed. R. Civ. P 37(a)(1). "A good faith effort to resolve discovery disputes requires an exchange of information until no additional progress is possible." *Simkins v. N.Y. Life Ins. Co.*, C23-578-JNW, 2024 WL 3344479, at *1 (W.D. Wash. July 9, 2024) (citation omitted). Failure to make clear the areas in dispute is a sign of inadequate conferral. *See Smyth v. Merchs. Credit Corp.,* No. C11–1879RSL, 2012 WL 5914901, at *1 (W.D. Wash. 2012) ("[T]he positions of the parties were unknown when plaintiff filed her motion, a sure sign that the requirements of Rule 37(a) have not been satisfied."). Further, "[g]ood faith conferral demands not just an expression of either side's position, but affirmative suggestions and compromise aimed at achieving the sought-after relief



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

without court involvement." Judge Jamal N. Whitehead, *Chambers Procedures – Civil* § 3.1 (effective Apr. 24, 2024).

"Motions to compel are filed only as a last resort." *Ruiz v. Snohomish County*, 2019 WL 11894362, No. C19-946 MJP-MLP, at *1 (W.D. Wash. Nov. 22, 2019); *see also Brantigan v. Depuy Spine, Inc.*, No. C08-0177RSL, 2008 WL 4279405, at *1 (W.D. Wash. Sept. 12, 2008) (parties must "meet and confer to an impasse" before filing a motion to compel); *Advanced Hair Restoration, LLC v. Hair Restoration Ctrs.*, LLC, No. C17-709RSM, 2018 WL 828213, at *2 (W.D. Wash. Feb. 12, 2018) (denying motion to compel because the movant filed it before the parties reached an impasse); LCR 37(a)(1) ("If the court finds that counsel for any party . . . willfully refused to confer, [or] failed to confer in good faith . . . the court may take action as stated in CR 11 of these rules.").

Here, ACGME prematurely claimed an impasse, failed to provide notice of the areas in dispute, ignored responsive answers, and misrepresented the record. ACGME's actions are not consistent with its obligation under Rule 37 to confer in good faith before filing a motion to compel.

**1. ACGME immediately claimed an impasse.**

ACGME claimed the parties were at an impasse during the very first conferral, even as Sea Mar asked for examples of testimony ACGME found deficient and stated that "we are willing to address any specific questions ACGME believes were not answered." Ex. 1 at 10. In its next communication to Sea Mar, ACGME's counsel remained intransigent, stating "[t]he parties . . . remain at an impasse with respect to Topics 5 and 11." *Id.* at 7. Sea Mar's counsel pointed to testimony addressing ACGME's concern. *Id.* at 5–6. ACGME's counsel rejected this, replying "[a]gain, if Sea Mar is prepared to now provide a competent witness on Topics 5 and 11, please advise. Otherwise, it remains the ACGME's position that we are at an impasse." *Id.* at 4–5. Sea Mar's counsel responded, "[w]e disagree about impasse. A motion to compel because of four questions is surprising, unnecessary and wasteful. . . . We should be able to negotiate a solution



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

without seeking court intervention." *Id.* at 3. ACGME responded, [y]ou misconstrue the scope of the issue, as it is obviously not limited to four exemplar questions. Again, we are hearing no willingness from Sea Mar to remedy the issue." *Id.* ACGME never identified further areas of concern. Williams Decl. ¶ 9. ACGME's behavior is not the "affirmative suggestions and compromise" good-faith conferral demands. Whitehead Chambers Procedures § 3.1.

**2. ACGME ignored responsive answers.**

After ACGME eventually agreed to identify specific questions supporting its claim that Mr. Lawrence's testimony was inadequate, it identified exactly four: three in Topic 5 and one in Topic 11. Ex. 1 at 7–8. But Mr. Lawrence answered the first cited question *in the very email excerpt copied by ACGME*. "Q I'm asking you if you heard or read Dr. Evans say, in any capacity, that he expected you to get a couple citations? A In my personal capacity, I recall him saying about that." *Id.*; Ex. 2 at 140:25-141:4. If there was any shadow of a doubt about that answer, he repeated it a few minutes later. *See* Ex. 2 at 150:10-25.

**3. ACGME supported its claim with questions outside the scope of the 30(b)(6) Topics.**

In its correspondence, ACGME cited the following questions as deficient answers for Topic 5: "Q Okay. So based on what you remember there, did you think that Sea Mar was going to get a couple citations?" and "Q No, I'm asking you if you expected. It's a factual question. Did you expect to get a couple citations from the site visit?" Ex. 1 at 7. However, these questions deal not with communications with Mr. Evans but rather with Mr. Lawrence's own mental impressions—which are outside the scope of Topic 5.[2] *See supra* pp. 2–4 (listing relevant Topics). Mr. Lawrence therefore had no duty to prepare for these questions, and whether he answered for Sea Mar or not is irrelevant. ACGME knew this when it filed the motion, and did not act in good faith in using these questions as a basis for seeking additional testimony.

[2] What is more, ACGME had already spent 7 hours examining Mr. Lawrence in his personal capacity. Williams Decl. ¶ 6.



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**4. ACGME misrepresented the record.**

During conferral, ACGME identified a single Topic 11 question as inadequately answered: "Q: Were there meetings about reapplying? . . . I'm talking about meetings with Providence about renewing the agreement if Sea Mar applied?" In response, Sea Mar pointed to testimony making clear this question had been answered in the negative. Ex. 1 at 6. ACGME claimed the testimony was insufficient because of Sea Mar's "gamesmanship": "[Mr.] Lawrence finally admitted during your questioning that at least one meeting occurred, but when further questioned by the ACGME, could not provide any details[.]" Ex. 1 at 4–5. But Mr. Lawrence explicitly acknowledged the meeting during ACGME's examination.

> A You know, personally, you know, I recall a discussion with Providence about continuing our affiliation agreement.
> Q Okay. When was that discussion?
> A It was on -- it was ongoing. There's a --there's a -- there's at least an e-mail about it and then a meeting about it, the date of the -- those two. I don't know, there could have been more. This was, again, two and a half -- two, two and a half years ago. The best I can –
> . . .
> Q There were e-mails about this?
> A About the affiliation agreement?
> Q Yes.
> A I think there might have been.

Ex. 2 at 82:25-83:22. ACGME's counsel asked no follow-up questions about this meeting, such as what was discussed. Sea Mar's counsel did so:

> Q . . . Can you tell us what Providence had as a reaction to Sea Mar when it got notice that its accreditation was withdrawn?
> . . .
> A So at the meeting we had with Providence, they said basically they were terminating our affiliation agreement because ACGME withdrew our accreditation. And we said, you know, can we -- we even work on a proposal to renew the affiliation agreement? They said, ACGME shut you down; Nope.
> Q So Providence told you no when you went to them to see whether they would affiliate with you?
> A Correct.



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Ex. 2 at 320:11-321:12. ACGME's counsel then claimed, "Well, this is the first I'm hearing about this meeting where Providence, quote-unquote, 'shot you down,' okay? You didn't tell me about that earlier, right?" *See also* Dkt. 156 at 9–10. This is false. Mr. Lawrence told ACGME's counsel that Sea Mar had a meeting and exchanged emails with Providence regarding their affiliation agreement. Ex. 2 at 82:25-83:22. It was not Mr. Lawrence's responsibility to volunteer information about what occurred at that meeting; it was ACGME's counsel's responsibility to ask, and he failed to do so. *See id.* ACGME's claim of "gamesmanship" on Sea Mar's part misrepresents the record, and it again shows a failure to negotiate in good faith. *See* Ex. 1 at 4.[3]

**5. ACGME did not disclose all its issues with Sea Mar's testimony.**

During conferrals, ACGME vaguely claimed that "obviously" there were more questions at issue, but it never identified any. Williams Decl. ¶ 9. ACGME now claims that Mr. Lawrence provided other inadequate testimony, including about conversations between Sea Mar management and WWAMI and Ted Epperly regarding re-application for accreditation, Dkt. 156 at 10–11, and Sea Mar's preparation for the site visit. *Id.* at 11.

This motion is the first Sea Mar has heard of these additional alleged deficiencies, "a sure sign that the requirements of Rule 37(a) have not been satisfied." *See Smyth,* 2012 WL 5914901, at *1; Williams Decl. ¶ 9. ACGME ignored Sea Mar's clear offer "to address any specific questions ACGME believes were not answered." Ex. 1 at 10. Specifically regarding re-application conversations, had ACGME raised these areas in the meet-and-confer process, Sea Mar would have been willing to discuss submitting supplemental answers; quite simply, no meetings occurred between Sea Mar and either WWAMI or Ted Epperly regarding re-application for accreditation. *See* Declaration of Tyler Lawrence ("Lawrence Decl.") ¶ 3. If ACGME had exchanged information

[3] In its motion, ACGME also finds fault with Mr. Lawrence's inability to "speak for all 2500 people" who work for Sea Mar on whether there were conversations with Providence about reapplying. *See* Dkt.156 at 9. Topic 11 deals solely with any "Sea Mar *management* discussions with Providence around May 2024 regarding reapplying" (emphasis added); whether Mr. Lawrence could answer definitely regarding meetings with all 2,500 Sea Mar employees is irrelevant to his 30(b)(6) testimony. *See* Dkt 161-3 at 6.



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

"until no additional progress [was] possible," *Simkins*, 2024 WL 3344479, at *1 (citation modified), it would have spared this Court and Sea Mar time and effort.

**B. ACGME's motion is unreasonable because it seeks further testimony on Topics not mentioned in its motion and actually chastises Sea Mar's designee for preparation.**

**1. ACGME seeks to compel further testimony on Topics not mentioned in its motion.**

In a motion to compel under Rule 37, "[t]he moving party bears the burden of demonstrating that the information it seeks is relevant and that the responding party's objections lack merit." *Hancock v. Aetna Life Ins. Co.*, 321 F.R.D. 383, 390 (W.D. Wash. 2017). Further, courts require movants to state the basis for their claims clearly. *See, e.g., McKay v. Ingleson,* 558 F.3d 888, 891 n.5 (9th Cir. 2009) ("Because this argument was not raised clearly and distinctly in the opening brief, it has been waived."). Many of the purportedly deficient answers cited by ACGME are not relevant to its motion because ACGME does not seek further testimony on those Topics.

ACGME disparages Mr. Lawrence's answers regarding "changes Sea Mar planned or implemented in response to survey results or focus groups." Dkt. 156 at 11-12 (discussing "non-responsive" and "[u]npre-pared and non-responsive" testimony). However, ACGME's motion *does not even mention* the specific portion of Topic 5 that deals with "Sea Mar's actions (beyond its normal processes and procedures) between October 11, 2023 and February 20, 2024 taken to address compliance with applicable ACGME Family Medicine Program requirements in anticipation of the Site Visit." *See generally* Dkt. 156. Nor does it mention Topic 1, which includes "[c]hanges planned or implemented to address ACGME 2023 survey results, 2023 internal surveys, and 2023 internal focus groups[.]" Dkt. 161-3 at 3. ACGME's complaints are therefore irrelevant.



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**2. ACGME chastises Mr. Lawrence for his preparation and transparency.**

ACGME's motion describes Mr. Lawrence as "[e]vasive" for recounting a conversation about the use of a document in preparing for the ACGME site visit, claiming he "disclaimed the stated purpose" of the document and accusing him of "litigation spin." *Id.* at 11. ACGME's complaints are misplaced. Mr. Lawrence reviewed the document before the deposition with its author, asked the document's author specifically about its actual use, and recounted the conversation to ACGME's counsel. A corporation has a duty to provide representatives to "fully and unevasively answer questions about the designated subject matter." *Flowers v. Fred Hutchinson Cancer Rsch. Ctr.*, No. C17-1508-JCC, 2018 WL 6019276, at *3 (W.D. Wash. Nov. 16, 2018) (quoting *Starlight Int'l, Inc. v. Herlihy*, 186 F.R.D. 626, 638 (D. Kan. 1999)). This is the very definition of "fully and unevasively answer[ing] questions about the designated subject matter." *See id.*

**C. ACGME's motion is unfair because ACGME is the cause of the problems it alleges.**

**1. ACGME's questioning was oppressive.**

In ruling on a motion to compel under Rule 37, "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]" *Klopman-Baerselman v. Air & Liquid Systems Corp.*, 2019 WL 5227332, at *2 (W.D. Wash. 2019) (quoting Fed. R. Civ. P. 26(b)(2)(C)). Further, a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* (quoting Fed. R. Civ. P. 26(c)(1)).



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Mr. Lawrence was exposed to multiple rounds of annoying, repetitive, and oppressive examination by ACGME's counsel during his deposition. *See, e.g.*, Ex. 2 at 147:18-148:3

> Q Focus group notes. Okay. Did you send them to him or not?
> A He didn't ask for us, we didn't send it to him. Again, we relied on him, as the network expert, to tell us and direct us, and that's what we did.
> Q Answer my question, please.
> MR. WILLIAMS: Objection, asked and answered, for the third time.
> Q (By Mr. Nutter) Is it yes or no; did you send them to him or not?
> A He didn't ask us to, so we didn't.
> Q Okay. Thank you for answering my question. Next time, let's not have to go through that back and forth together to get a no, okay? Does that sound good?

*See also, e.g.*, *id.* at 14:8-19:10; 19:11-25:7; 31:3-37:15; 70:20-79:21; 85:8-93:8; 138:3-141:25; 144:3-147:11; 277:15-279:24. The Court should not reward ACGME's oppressive conduct and failure to confer in good faith with more time to question Mr. Lawrence.

**2. ACGME limited Mr. Lawrence's ability to answer its questions.**

"The examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence[.]" Fed. R. Civ. P. 30(c)(1). In the 30(b)(6) context, courts approve transparent use of an outline or similar aid to help a designee answer, particularly where the aid is made part of the deposition record. *See, e.g., Wausau Underwriters Ins. Co. v. Danfoss, LLC*, 310 F.R.D. 683, 688 (S.D. Fla. 2015) (approving use of an outline where the deponent "was entirely transparent about the matter" and "[t]he script/outline, itself, was made part of the deposition record").

ACGME criticizes Mr. Lawrence for stating that some questions were outside the scope of his designation. *See* Dkt. 156 at 2, 7. ACGME fails to mention that its counsel prevented Mr. Lawrence from consulting a list of the topics for which he was designated (which he allowed ACGME's counsel to inspect) for a considerable portion of the deposition. *See* Ex. 2 at 12:19-15:14; 19:11-19.

ACGME also claims Mr. Lawrence could not provide competent testimony despite having "reams of material to reference." ACGME's description omits that ACGME's counsel repeatedly



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

blocked Mr. Lawrence from consulting those documents (of which ACGME was provided copies) for several hours. *See, e.g.*, Ex. 2 at 34:12-36:18; 55:8-16; 60:17-61:2; 92:13-15; 115:20-116:12.

ACGME cannot prevent a witness from using disclosed, available materials to refresh and complete his testimony and then turn around and claim the resulting limitations as grounds for more time.

## I. CONCLUSION

For the foregoing reasons, Sea Mar respectfully requests that the Court deny ACGME's motion to compel further Rule 30(b)(6) deposition testimony.

* * *

The undersigned certifies that this motion contains 4,191 words, in compliance with the Local Civil Rules.

//

//

//



**Ashurst Perkins Coie US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Dated: September 25, 2026

By: *s/ James F. Williams*

David B. Robbins, WSBA No. 13628
James F. Williams, WSBA No. 23613
Matthew P. Gordon, WSBA No. 41128
Cara V. Wallace, WSBA No. 50111
Jonathan P. Hawley, WSBA No. 56297
Juliana L. Bennington, WSBA No. 60357
Conrad A. Sproul, WSBA No. 62885
**ASHURST PERKINS COIE US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
David.Robbins@ashurstperkins.com
James.Williams@ashurstperkins.com
Matthew.Gordon@ashurstperkins.com
Cara.Wallace@ashurstperkins.com
Jonathan.Hawley@ashurstperkins.com
Juliana.Bennington@ashurstperkins.com
Conrad.Sproul@ashurstperkins.com

David A. Perez, WSBA No. 43959
Adrianna Simonelli, WSBA No. 58472
**MORRISON & FOERSTER LLP**
925 Fourth Avenue, Floor 36
Seattle, Washington 98104
Telephone: (206) 327-6385
Facsimile: (206) 260-8813
DavidPerez@mofo.com
ASimonelli@mofo.com

*Attorneys for Plaintiff*
*Sea Mar Community Health Centers*